FIRST JUDICIAL DISTRICT COURT
STATE OF NEW MEXICO
COUNTY OF SANTA FE

ENDORSED
First Judicial District Court

APR 28 2014

Santa Fe, Rio Arriba &
Los Alamos Counties
PO Box 2268
Santa Fe, NM 87504-2268

No. D101CV 2014 00491

K.S., by and through her parents and next friends,
T.S. and A.R.,
_____
Plaintiff(s)

VS

The Santa Fe Public Schools, et al.,
_____
Defendant(s)

### CLERK'S CERTIFICATE

I, STEPHEN T. PACHECO, Clerk of the District Court of the First Judicial District within and for the County of ___Santa Fe___, State of New Mexico, do hereby certify that the attached is a full, true and correct copy of the original in the above-entitled cause, as shown from the files and records in my office.

IN WITNESS WHEREOF, I have hereunto set my hand and seal of said court this __28th__ day of __April__, 20_14_.

**STEPHEN T. PACHECO**
CLERK OF THE DISTRICT COURT

By: _____
Deputy

# EXHIBIT A

FILED IN MY OFFICE
DISTRICT COURT CLERK
2/27/2014 11:48:26 AM
STEPHEN T. PACHECO
rlr

**STATE OF NEW MEXICO**
**COUNTY OF SANTA FE**
**FIRST JUDICIAL DISTRICT COURT**

**K.S., by and through her parents and next friends,**
**T.S. and A.R.,**

     **Plaintiff,**

**vs.**                                                                Case No. D-101-CV-2014-00491

**THE SANTA FE PUBLIC SCHOOLS;**
**VICKIE L. SEWING, in her individual capacity;**
**THE ESPANOLA PUBLIC SCHOOLS;**
**RUBY E. MONTOYA, in her individual capacity;**
**GARY F. GREGOR, in his individual capacity;**

     **Defendants.**

                                        **Jury Trial Requested**

### COMPLAINT FOR CIVIL RIGHTS VIOLATIONS, TITLE IX VIOLATIONS, BATTERY, NEGLIGENCE, AND OTHER TORTIOUS CONDUCT

COMES NOW Plaintiff, by and through her counsel, Carolyn M. "Cammie" Nichols and Brendan K. Egan of Rothstein, Donatelli, Hughes, Dahlstrom, Schoenburg & Bienvenu, LLP, and brings the following causes of action pursuant to 42 U.S.C. § 1983, 20 U.S.C. § 1681, the Fourteenth Amendment of the United States Constitution, the New Mexico Tort Claims Act, NMSA 1978, §§ 41-4-1, *et seq.*, and New Mexico common law:

### PARTIES

1.     Plaintiff KS is a minor, and a resident of Santa Fe County, New Mexico.

2.     She brings this complaint through her parents, TS and AR.

3.     Defendant Santa Fe Public Schools (*hereinafter* SFPS) is a governmental entity and local public body as those terms are defined in the New Mexico Tort Claims Act,

NMSA 1978, §§ 41-4-3(B) and (C), as amended. Under NMSA 1978, § 22-5-4(E), Defendant SFPS has the capacity to sue or be sued. Defendant SFPS is responsible for the administration of public schools within its geographic boundaries. Upon information and belief, at all times material hereto, Defendant SFPS received federal funding and financial assistance. At times material hereto, Defendant SFPS employed Defendant Sewing and Defendant Gregor. Plaintiff's claims pursuant to the New Mexico Tort Claims Act against Defendant SFPS arise under NMSA 1978, § 41-4-6. Under the New Mexico Tort Claims Act, Defendant SFPS is vicariously liable for the acts and omissions of Defendant Sewing and Defendant Gregor. At all times relevant, Defendant SFPS was responsible for adopting and implementing the policies, customs, and practices of its employees and agents, including Defendant Sewing and Defendant Gregor. Defendant SFPS is a political subdivision of the State of New Mexico and a "person" under 42 U.S.C. § 1983.

4. Defendant Vickie L. Sewing (*hereinafter* Sewing) was, at all times material hereto, employed by Defendant SFPS as a principal at Agua Fria Elementary School. She was the direct supervisor of Defendant Gregor during the time that he was employed at the Agua Fria Elementary School by Defendant SFPS as a teacher. Upon information and belief, Defendant Sewing resides in Santa Fe County, New Mexico. At all times material hereto, Defendant Sewing was a public employee as those terms are defined in the New Mexico Tort Claims Act, NMSA 1978, § 41-4-3 (F), as amended. Defendant Sewing acted in the course and scope of her duties as an SFPS employee and under color of state and/or local law. She is sued in her individual capacity for purposes of Plaintiff's claims brought under 42 U.S.C. § 1983.

2

5.      Defendant Espanola Public Schools (*hereinafter* EPS) is a governmental entity and local public body as those terms are defined in the New Mexico Tort Claims Act, NMSA 1978, §§ 41-4-3(B) and (C), as amended.  Under NMSA 1978, § 22-5-4(E), Defendant EPS has the capacity to sue or be sued.  Defendant EPS is responsible for the administration of public schools within its geographic boundaries.  Upon information and belief, at all times material hereto, Defendant EPS received federal funding and financial assistance.  At times material hereto, Defendant EPS employed Defendant Montoya and Defendant Gregor.  Plaintiff's claims pursuant to the New Mexico Tort Claims Act against Defendant EPS arise under NMSA 1978, § 41-4-6.  Under the New Mexico Tort Claims Act, Defendant EPS is vicariously liable for the acts and omissions of Defendant Montoya and Defendant Gregor.  At all times relevant, Defendant EPS was responsible for adopting and implementing the policies, customs, and practices of its employees and agents, including Defendant Montoya and Defendant Gregor.  Defendant EPS is a political subdivision of the State of New Mexico and a "person" under 42 U.S.C. § 1983.

6.      Defendant Ruby E. Montoya (*hereinafter* Montoya) was, at times material hereto, employed by Defendant EPS as a principal at Fairview Elementary School.  She was the direct supervisor of Defendant Gregor during the time that he was employed at the Fairview Elementary School by Defendant EPS as a teacher.  Upon information and belief, Defendant Montoya resides in Rio Arriba County, New Mexico.  At all times material hereto, Defendant Montoya was a public employee as those terms are defined in the New Mexico Tort Claims Act, NMSA 1978, § 41-4-3 (F), as amended.  Defendant Montoya acted in the course and scope of her duties as an EPS employee and under color of state and/or

3

local law. She is sued in her individual capacity for purposes of Plaintiff's claims brought under 42 U.S.C. § 1983.

7.      Defendant Gary F. Gregor (*hereinafter* Gregor) was, at times material hereto, employed by Defendant SFPS and Defendant EPS as a teacher at Agua Fria and Fairview Elementary Schools. Upon information and belief, Defendant Gregor resides in Rio Arriba County, New Mexico.  At all times material hereto, Defendant Gregor was a public employee as those terms are defined in the New Mexico Tort Claims Act, NMSA 1978, § 41-4-3 (F), as amended.  Defendant Gregor acted in the course and scope of his duties as an SFPD and EPS employee and under color of state and/or local law.  He is sued in his individual capacity for purposes of Plaintiff's claims brought under 42 U.S.C. § 1983.

8.      With respect to Plaintiff's New Mexico Tort Claims Act claims, the acts and omissions complained of herein all constitute a basis for liability against Defendants SFPS and EPS, within the scope of the waivers of immunity proscribed by the New Mexico Tort Claims Act, NMSA 1978 §§ 41-4-1, *et seq.*

## **JURISDICTION AND VENUE**

9.      The First Judicial District Court has original jurisdiction over this matter under N.M. Const., Art. VI, § 13.

10.     Venue is proper in Rio Arriba County under NMSA 1978, § 38-3-1(G), as this is the County in which Plaintiff resides.

4

**FACTUAL ALLEGATIONS**

I.      THE CAREER AND PREDATION HISTORY OF DEFENDANT GREGOR

11.      Defendant Gregor began teaching elementary school children in Utah in the fall of 1984. He taught there continuously until the spring of 1995, according to Utah's "Verification of Teaching Service."

12.      While in Utah, he taught classes of fourth graders, fifth graders, combined fourth and fifth graders, and combined fifth and sixth graders. He taught at two different elementary schools over eleven years.

13.      In October of 1994, a concerned parent called law enforcement when her elementary school-age daughter did not come home when expected and was missing for several hours.

14.      It was discovered that Defendant Gregor had kept the girl, and another elementary school-age girl, in his classroom after the school day was over.

15.      Investigation disclosed that, while in his classroom with him, they popped popcorn, watched movies, listened to music, did gymnastics, played around, and that Defendant Gregor asked them about their brassiere sizes and their menstrual periods.

16.      The girls were alone in the classroom with Defendant Gregor for approximately four and one-half hours.

17.      The parents of both girls were upset "because there were rumors that Mr. Gregor had been accused of sexual abuse of a child in the past;" and "[b]oth sets of parents were afraid that Mr. Gregor was befriending their children in order to possibly victimize them in the future."

5

18.     Neither girl disclosed sexual touching, but it is unclear whether the girls were provided with an opportunity to discuss the case with a forensic interviewer or were just questioned by officers and parents.

19.     Defendant Gregor claimed "he just started talking to the girls and lost track of time." He was told by the school that he could no longer have students in his classroom after hours.

20.     He was not charged criminally, but police reports were generated, and those police reports are available as public records upon request.

21.     The school claimed that "the allegations about having a similar complaint against him were untrue."

22.     Actually, in January of 1994, ten months prior to the October 1994 incident, public records reveal that Defendant Gregor had, in fact, been accused of sexual misconduct with three of his female elementary school-age students.

23.     One of the girls recounted that Defendant Gregor rubbed her buttocks, hugged her, kissed her, caressed her thigh, said he loved her, and told her he wanted to take her to Montana when she turned sixteen to marry her.

24.     Another girl recounted that Defendant Gregor rubbed her thigh on numerous occasions, kissed her thigh, and hugged her.

25.     One of the girls recounted that she could feel Defendant Gregor's penis harden when he sat her in his lap, and when he hugged her tight against him.

26.     In January of 1995, criminal charges were filed against Defendant Gregor for this sexual misconduct, namely two felony counts of aggravated sex abuse of a child and one misdemeanor count of lewdness involving a child.

6

27.     The day before the criminal trial was set to begin, a Utah District Court Judge dismissed the case, "not[ing] that even assuming the truthfulness of the allegations against [Defendant] Gregor, the conduct did not rise to the level of a criminal act."

28.     On May 17, 1996, Defendant Gregor was issued a letter of reprimand by the Utah Professional Practices Advisory Commission.  The letter states that the Commission "found no evidence of immoral conduct, but did conclude that [Defendant Gregor] ha[d] been guilty of exhibiting a lack of professional judgment in some of [his] teaching activities, which [he himself] recognized and verbalized before the hearing panel."

29.     From August of 1996 through May of 1997, Defendant Gregor worked as a special education teacher and an after-school tutor on a reservation in Montana, where, he claims, he "acted as principal/superintendent on numerous occasions in the absence of the school district's principal/superintendent."

30.     Public records indicate that Defendant Gregor disclosed to Defendant PED in March of 1998 that he was "terminated by the Davis County School District for what they considered insubordination, school policy was that after school activities with students was [sic] not allowed."

## II.     DEFENDANT GREGOR'S EMPLOYMENT BY DEFENDANT SFPS

31.     On July 1, 2001, Defendant Gregor obtained two teaching licenses in the state of New Mexico, one for Level 2, Elementary K-8, and another for Special Education, K-12.

32.     Public records indicate that Defendant Gregor applied for a job with Defendant SFPS in June of 1998.

33.     Public records indicate that Defendant Gregor was officially hired by Defendant SFPS in August of 2000. Other public records indicate that Defendant Gregor may have been hired by Defendant SFPS as early as March of 1998.

34.     A simple background check by Defendant SFPS, including basic research of public records, would have revealed the criminal charges and the true facts surrounding Defendant Gregor's leaving employment as a teacher in Utah.

35.     Defendant SFPS hired Defendant Gregor to teach the school children of the district with no apparent inquiry (at least no documented inquiry as per the public record obtained to date) into Defendant Gregor's criminal background and employment history in Utah.

36.     Defendant Gregor signed a Certified (Licensed) School Instructor Contract with Defendant SFPS in December of 2000 for the 2000-2001 school year.

37.     In the 2000-2001 school year, his first year as a classroom teacher for Defendant SFPS, Defendant Gregor taught sixth grade Special Education at Ortiz Middle School.

38.     Defendant Gregor received negative evaluations at Ortiz Middle School, and was not recommended for re-hire.

39.     Yet, Defendant Gregor signed a contract to teach for the Santa Fe Public Schools again, for the 2002-2003 school year, in September of 2002.

40.     Defendant Gregor was hired by Defendant Vickie Sewing at Agua Fria Elementary in Santa Fe, and he began teaching the fourth grade there in August of 2001.

41.     Defendant Gregor received positive evaluations during his first year at Agua Fria Elementary.

8

42.    In June of 2003, Defendant Sewing gave Defendant Gregor a completely positive evaluation, rating him as meeting or exceeding expectations in every instance.

43.    On January 28, 2004, Aurelia Gonzales, Director of Education at the Museum of International Folk Art, notified Defendant Sewing, by telephone and email, that docents at the museum observed inappropriate behavior by Defendant Gregor with his students during a field trip to the museum on January 27, 2004.

44.    Docents observed and reported Defendant Gregor, while at the museum on the field trip with his students: "fondling girls," sitting with girls on his lap, and falling asleep with two of the girls sitting so close to him that he woke because they had to shift positions.

45.    Defendant Sewing spoke directly with the docents, verifying their observations.

46.    Defendant Sewing informed Diane Sparago, Chief Human Resources Officer for Defendant SFPS, and Defendant Gregor was placed on administrative leave by Defendant SFPS on February 3, 2004.

47.    Per Diane Sparago, Defendant Sewing and a staff member with Human Resources, Angela Montoya, began interviews of Defendant Gregor's students.

48.    The information relayed by the students during those interviews included: Defendant Gregor only gets mad at the boys in his class; he hugs the girls in his class 'all the time;' he sat some of the girls in his class on his lap; he tickled the girls, including tickling them on their 'stomachs,' and they would wiggle and laugh; he 'squished' the girls when he played basketball with them; he gave 'raspberries' to the kids when they were 'bad;' and he gave gifts to at least one girl in his class, including a 'heart with kisses and hugs.'

9

49.    No arrangements were made for forensic interviews of the students. None of this information was reported to the Children Youth and Families Department (CYFD) or to law enforcement by Defendant Sewing or any other representative of Defendant SFPS.

50.    Despite the fact that Defendant Sewing herself found the described behavior to be cause for "serious concerns," and "believe[d] this may well be 'grooming' behavior on the part of Dr. Gregor," she did not report any of these concerns to CYFD or to law enforcement, nor did anyone else involved in or aware of this investigation make any report to CYFD or to law enforcement.

51.    Defendant SFPS (through Superintendent Dr. Gloria Rendon) decided to serve Defendant Gregor with a notice of discharge.

52.    Subsequent to this decision, the parents of Defendant Gregor's students were notified that Defendant Gregor would not be returning to the classroom.

53.    The parents of three of the children (including two of the girls who reportedly were the objects of much touching by Defendant Gregor) "had serious concerns for their children, for their education and for their safety and mental well-being."

54.    The parents of the two girls "were also concerned that perhaps there was more happening than their children had told [Defendant Sewing] or were telling [them]."

55.    Arrangements were made for sessions with the school counselor, and a referral was provided to private counseling for one of the girls, but the girls were still not referred for a professional forensic interview and still no referral was made to CYFD or to law enforcement for further investigation.

10

56.    In March of 2004, a request was made to the Santa Fe Rape Crisis Center, not to conduct forensic interviews but to teach an instructional unit called "'Project Aware' to help students understand good touch/bad touch, and about boundaries and their bodies."

57.    On May 6, 2004, Helen Nakdimen of the Santa Fe Rape Crisis Center wrote a letter to Defendant Sewing describing what Defendant Gregor's students disclosed to her on April 13, 2004, and April 27, 2004, during the "Project Aware" presentations. Specifically, she described the students revealing to her that:

a.    Defendant Gregor would hold girls in his lap and tickle them, during which they felt his "boner," "his thing was sticking up," and it was "nasty!"

b.    Defendant Gregor would make boys wait an hour before allowing them to go to the bathroom.

c.    Defendant Gregor would threaten boys with permanent loss of recess and force them to give him their snacks.

d.    Defendant Gregor preferred two little blonde girls in particular, and asked one of them to meet him alone in the classroom; when she brought a friend with her because she felt uncomfortable, he became angry with her.

e.    Defendant Gregor would slam doors, throw papers off his desk, and verbally threaten his students.

f.    Defendant Gregor said he was an acupuncturist, brought needles to class, used them on himself, dared his students to do it to themselves, and told them to call him "Dr. Gregor."

11

58.     An interview of a parent corroborated that Defendant Gregor had female students in his class sit on his lap, that he demonstrated some kind of injections for his class, and that he favored the girls (especially the two blonde girls) to the boys in his class.

59.     Still, none of this was reported to CYFD or to law enforcement by Defendant Sewing or Defendant SFPS, and none of the students were referred for a forensic interview.

60.     On February 26, 2004, Defendant SFPS reported, in writing, to the New Mexico Public Education Department (*hereinafter* PED), that an investigation corroborated inappropriate physical contact between Defendant Gregor and his female students.

61.     Defendant Gregor responded to the allegations, and included his response in a letter to the PED on April 8, 2004, prior to his decision to agree to resign.

62.     At no time did Defendant Sewing, or any other employee of Defendant SFPS, report Defendant Gregor's alleged sexual abuse of minor students to CYFD or to law enforcement, contrary to statutory and common law obligations to report. NMSA 1978, § 32A-4-3(A) (2005); *State of New Mexico v. Strauch*, 2013 WL 5798553, *6, {19}.

63.     Upon learning of the information obtained by the Santa Fe Rape Crisis personnel, Defendant Gregor decided to forego a "due process discharge hearing," and instead "agreed to resign from his position with" Defendant SFPS.

64.     Defendant SFPS negotiated an agreement with Defendant Gregor.

65.     This agreement was executed by Defendant SFPS (through Superintended Dr. Gloria Rendon) and Defendant Gregor on June 15, 2004.

66.     The agreement was entitled "Resignation and Full and Final Agreement and Release of All Claims," and it provided:

a.     Defendant Gregor would resign his employment with Defendant SFPS.

12

b. Defendant Gregor would agree to withdraw his request for a hearing before the School Board of Defendant SFPS.

c. Defendant Gregor would "not apply for nor accept employment by [Defendant] SFPS."

d. Defendant Gregor released Defendant SFPS from any potential civil claims he might bring against it.

e. Defendant "SFPS District will give a neutral reference to all persons who make inquiry as to Mr. Gregor's employment with the District which shall consist of the dates of employment, job titles, and rates of pay."

67.    Defendant SFPS, therefore, agreed with Defendant Gregor that if any other school district contacted Defendant SFPS about hiring Defendant Gregor as a teacher, Defendant SFPS would not provide that school district with any information about Defendant Gregor's sexual abuse of his students.

68.    A review by the Educators Ethics Bureau verified inappropriate sexual contact of minor students as well as sexual harassment of minor students, along with other ethical violations, by Defendant Gregor.

69.    Based on this review, the PED executed a formal written reprimand of Defendant Gregor on May 13, 2005, to be placed permanently in Defendant Gregor's licensure file with the PED.

70.    This formal reprimand documented the Educators Ethics Bureau's findings of sexual contact and sexual harassment by Defendant Gregor towards his students, along with other ethical violations.

13

71. Information was posted on the NASDTEC Clearinghouse, providing information to potential employers that a "Public Reproval or Formal Reprimand" had been issued against Defendant Gregor; that Defendant Gregor would "retain [his] license/certificate in [New Mexico]; that the "action [was] based upon sexual misconduct that did not result in a criminal conviction;" and that "the action [was] based upon non-sex related acts or crimes committed against a child."

## III. DEFENDANT GREGOR'S EMPLOYMENT BY DEFENDANT EPS

72. Public records indicate Defendant Gregor was hired by Defendant EPS on January 10, 2005, but he did not enter a classroom or begin teaching students until the following school year.

73. Defendant Montoya was the principal at Fairview Elementary School in Espanola, where Defendant Gregor began teaching second grade in August of 2006.

74. According to Defendant Montoya, she and her husband became friends with Defendant Gregor and his wife beginning in August of 2006.

75. Defendant Montoya and her husband went to the home of Defendant Gregor and his wife for meals, and had Defendant Gregor and his wife over to their home for meals.

76. Defendant Montoya's husband and Defendant Gregor spent a great deal of time together attempting to complete a math and science master's degree program, working together after school hours and on Saturdays.

77. Defendant Montoya stated she visited Defendant Gregor's classroom about every other week, in addition to conducting three yearly in-class evaluations, and occasionally visiting his classroom to discipline students.

14

78.     According to Defendant Montoya, an art teacher named "Ms. Lorraine" reported to her, during the 2006-2007 school year, that Defendant Gregor had one of his female students, in his second grade class, sitting by him the entire time the other students were engaged in an art project, and that he would not let the little girl participate in the art activity.

79.     According to Defendant Montoya, she called her "supervisor" (who she believes was Dr. Cockerham at the time) and they conducted an investigation, during which they issued a "letter of leave" to Defendant Gregor.

80.     When the student was questioned, she reported that she was "the president and she always sat there."

81.     According to Defendant Montoya, the parents of the girl "didn't believe anything of what [she] was saying because Dr. Gregor was their friend and they have invited him into their home."

82.     Apparently, the little girl, in second grade, was not sent for a forensic interview, and Defendant Montoya did not notify CYFD or law enforcement, nor did any other employee or agent of Defendant EPS notify CYFD or law enforcement.

83.     According to Defendant Montoya, she conferred with her supervisor and brought Defendant Gregor back to the school to resume teaching the day after she talked to the parents of the little girl.

84.     Defendant Montoya claims that she told Defendant Gregor "to please stop having presidents in that classroom," to "refrain himself from any children being around his desk," and "to allow the child to participate in any activities, being art or whatever."

85.     According to Defendant Montoya, "that was the extent of that one."

15

86. Defendant Montoya testified that Defendant Gregor stopped that behavior, as requested, for the remainder of that school year, and "we didn't never have another problem in second grade with that."

87. Dr. Fidel Trujillo testified that Defendant Montoya informed him "that after she gave [Defendant Gregor] a directive not to have the officers sitting next to him, for a period of time he complied, but that she then observed that he was back in the practice of having the officers sit up next to his table."

88. Lorraine Hyde, at that time, worked for Fine Arts for Children and Teens, and through that organization taught art at Fairview Elementary School in Espanola.

89. According to Ms. Hyde, she informed Defendant Montoya, in the fall of 2006, that she had observed several things about Defendant Gregor's classroom and his conduct towards a female student which caused her great concern, including:

a. Defendant Gregor kept all the blinds in his classroom closed.

b. Defendant Gregor had a female student, J, seated in a desk located next to him, hidden from view behind his desk, leg to leg, so close that her desk touched his chair.

c. Defendant Gregor challenged Ms. Hyde when she made a move to open the blinds.

d. When Ms. Hyde asked why J was sitting so close to him, Defendant Gregor responded that J was the President, so she was required to sit next to him.

e. When Ms. Hyde gathered all the students near the blackboard to begin the art lesson, Defendant Gregor would not let J join the other children, stating that she "stays with me."

16

f.      Ms. Hyde protested that J needed to join the others to participate in the lesson, and eventually Defendant Gregor relented.

g.      J briefly joined the other students, then returned to her seat next to Defendant Gregor after the demonstration.

h.      The students then gathered around tables to work on art projects, and, again, Defendant Gregor refused to let J leave his side, stating "she can't do that she sits by me."

i.      Again, Ms. Hyde insisted, and J came out from behind Defendant Gregor's desk, but she seemed to be cowering and reluctant to do so.

j.      The other students seemed to be afraid for J, and began explaining to Ms. Hyde that J had to stay behind the desk, next to Defendant Gregor, because she was the President.

k.      J sat down, but she sat down facing Defendant Gregor and put her feet up on her chair, with her knees bent. She was wearing a dress.

l.      Defendant Gregor then came directly over to J, put his body up against hers, and began speaking to her about what she was going to do.

m.      Observing sexualized behavior on the part of J, and the possessive, sexual, and utterly inappropriate conduct of Defendant Gregor towards J, Ms. Hyde tried to defuse the situation by moving J to a different part of the table.

n.      Defendant Gregor continued to stand near J, repeatedly touching her, placing his hands on her arms and shoulders, as J behaved in a way that seemed unwell, and repeatedly showed Defendant Gregor her art work.

17

90.     According to Ms. Hyde, she reported all of these observations, immediately following her instruction in Defendant Gregor's classroom, to Defendant Montoya.

91.     According to Ms. Hyde, Defendant Montoya told her that she had previously "warned [Defendant Gregor] that if he kept closing the blinds and keeping that student's desk behind his that people would ask questions."

92.     Ms. Hyde was so disturbed by this and by what she observed that she told Defendant Montoya that Defendant Montoya needed to call law enforcement and the parents of J immediately.

93.     When Ms. Hyde returned to Defendant Gregor's classroom the following week, she observed that the blinds were still closed; J's desk was still next to Defendant Gregor's chair, behind his desk; and that the behaviors between J and Defendant Gregor were similar to the behaviors from her first experience in his classroom.

94.     Defendant Montoya then called Ms. Hyde into her office, with Defendant Gregor present, and told Ms. Hyde that she had informed Defendant Gregor about Ms. Hyde's concerns.

95.     Defendant Gregor then challenged Ms. Hyde, and told her that he was good friends with J's parents, so Ms. Hyde had nothing to worry about.

96.     Ms. Hyde felt like she was in jeopardy, and she stated to both Defendant Gregor and Defendant Montoya that she wanted the police to be called, and that she wanted her report to Defendant Montoya to be documented and dated.

97.     No one from law enforcement or CYFD ever contacted Ms. Hyde.

98.     Defendant Gregor continued the practice of closing his blinds and seating female students next to him during and throughout the 2007-2008 school year, during which he taught fourth grade at Fairview Elementary School.

99.     Jennifer Chavez was an Educational Assistant who worked at the Fairview Elementary School in Espanola contemporaneously with Defendant Gregor.

100.    During the 2007-2008 school year, she observed Defendant Gregor routinely sitting between two girls in the cafeteria, with his hands constantly underneath the table.

101.    Plaintiff KS, female student VS, and female student NH were the three girls who he sat next to in the cafeteria, placing himself between two of them.

102.    Ms. Chavez also observed that Defendant Gregor would hold the hands of two of those same three girls as he traveled between the cafeteria and his classroom with his students.

103.    Ms. Chavez found this behavior disturbing and reported it to Defendant Montoya within a few days of observing the behavior.

104.    Defendant Montoya said she would talk to Defendant Gregor.

105.    Defendant Montoya claims that if Ms. Chavez reported to her that Defendant Gregor held the hands of female students walking to and from the cafeteria, or sat next to his female students in the cafeteria with his hands constantly under the table, she has forgotten about that report.

106.    Defendant Montoya acknowledges she received "one complaint about [Defendant Gregor] always sitting on the side of the girls" when eating with his students in the cafeteria, and stated she "did ask him not to sit on the side of the girls so there wouldn't be any problem."

19

107.    While Defendant Montoya denies that Ms. Chavez reported to her that Defendant Gregor held the hands of female students while walking to and from the cafeteria, Defendant Montoya clarifies that she in fact knew that Defendant Gregor held the hands of female students walking to and from the cafeteria, based on her own observations.

108.    Defendant Montoya testified that she "told him to stop it, and he did."

109.    During the 2007-2008 school year, Ms. Chavez's daughter was a student in June Madrid's Fourth Grade class at Fairview Elementary.

110.    Ms. Madrid's students would go to Defendant Gregor's classroom for science lessons.

111.    Defendant Gregor's students would come to Ms. Madrid's classroom for Spanish lessons.

112.    One day, Ms. Chavez's daughter reported that Defendant Gregor told her "it's OK for an older man to marry a 12-year old girl," and that it was also acceptable for a man "to have more than one wife."

113.    Ms. Chavez in turn reported these statements by Defendant Gregor to Ms. Madrid.

114.    Ms. Madrid said she had "heard things too," and that she was going to inform Defendant Montoya that she was not going to exchange students with Defendant Gregor any longer.

115.    Ms. Chavez also reported these concerning comments to Defendant Montoya the day after her daughter told her about them.

116.    Defendant Montoya responded that she would talk to Defendant Gregor.

117. Defendant Montoya acknowledges that Ms. Chavez came to her with a complaint about Defendant Gregor, but she claims that Ms. Chavez reported Defendant Gregor had told his class that, during war, "the women stayed behind to have babies."

118. Ms. Madrid later reported to Ms. Chavez that Defendant Montoya stated the exchange of classes had to continue "because of bilingual."

119. However, at some point that year, the exchange of students between Ms. Madrid and Defendant Gregor ceased.

120. Ms. Chavez's daughter also reported to her mother that Defendant Gregor would throw unwrapped candy to the girls in class and tell them to "come sit by me."

121. Ms. Chavez reported this concerning behavior to Defendant Montoya.

122. Defendant Montoya responded that she would talk to Defendant Gregor.

123. Sometime after Ms. Chavez expressed her concerns to Defendant Montoya, Defendant Gregor stopped speaking to Ms. Chavez.

124. This was approximately two months or so prior to school personnel engaging in preparations for the winter break during the 2007-2008 school year.

125. According to Ms. Chavez, Defendant Montoya was not responsive to the concerns she expressed about Defendant Gregor.

126. There is no record of Defendant Montoya taking any action whatsoever with respect to this information, except, perhaps, discussing the matter with Defendant Gregor.

127. Defendant Montoya never reported any of these concerns to CYFD or to law enforcement, contrary to her statutory and common law obligation to do so. NMSA 1978, § 32A-4-3(A) (2005); *State of New Mexico v. Strauch*, 2013 WL 5798553, *6, {19}.

21

128.    During the 2007-2008 school year, Defendant Gregor had Plaintiff KS in his fourth grade class, along with at least two other girls whom he victimized, namely VS and NH.

### A.    DEFENDANT GREGOR'S SEXUAL ABUSE OF STUDENT VS

129.    According to VS (described as Student C during the PED hearing) and her mother, VS's mother discovered Defendant Gregor was calling her daughter, from a telephone with a long-distance (310) area code, on a daily basis, sometimes many times a day.

130.    Once VS's mother became aware of this, she would answer the telephone when Defendant Gregor called.

131.    Defendant Gregor offered to buy VS her own cellular telephone, but the mother of VS refused this offer.

132.    Also during that year, the mother of VS discovered that Defendant Gregor was giving her daughter gifts, such as candy, art supplies, teddy bears, and a large pillow book.

133.    At some point during that year, VS's mother became aware that Defendant Gregor had twice, to her knowledge, asked VS to spend the night at his home.

134.    During (or proximate to) April of 2008, VS came home crying. Her mother asked her what was wrong and observed that VS was very scared. She told her mother "she had to tell [her] something, but that it was very ugly." After much persuasion, VS told her mother that Defendant Gregor had been touching her "in her private parts," and that he had been doing this for a long time.

135.    VS went on to tell her mother that Defendant Gregor was also touching her friends, including Plaintiff KS.

136.    That same day, VS's mother went to Defendant Montoya about this, reported all of the misconduct, including the gifts, the invitations, the telephone calls, and the touching, and told Defendant Montoya that she was going to go to the police.

137.    Defendant Montoya acknowledged that the mother of VS (Student C) reported to her, in April of 2008, "that Dr. G. [Defendant Gregor] had touched her [VS] in her private parts."

138.    According to the mother of VS, Defendant Montoya told her not to report Defendant Gregor's actions to the police because she, Defendant Montoya, would "take care of it."

139.    Defendant Montoya acknowledges that the mother of VS "said that if [Defendant Montoya] didn't do something about it, [the mother of VS] would go to the police."

140.    Defendant Montoya denies telling the mother of VS not to go to the police.

141.    At that time, nobody reported anything to the police, or to CYFD.  Defendant Montoya did not report these allegations to CYFD, and neither did any other employee of Defendant EPS.

142.    Defendant Montoya told the mother of VS that other students had also complained that Defendant Gregor had touched them.

143.    Defendant Montoya told the mother of VS that she would report this to the Superintendent of Defendant EPS.

144.    There is no record of Defendant Montoya taking any action whatsoever with respect to these allegations, except, perhaps, talking to Defendant Gregor.

23

145. VS remained in Defendant Gregor's class, but after her mother reported Defendant Gregor's misconduct to Defendant Montoya, Defendant Gregor never spoke to VS again.

**B.   DEFENDANT GREGOR'S SEXUAL ABUSE OF STUDENT NH**

146. During the first month of the 2007-2008 school year, Defendant Gregor began touching NH (described as Student A during the PED hearing).

147. NH told her friends about it, and three of them said "he did the same thing to them."

148. Defendant Gregor told NH to stay in the classroom after the bell rang, and kept her there, alone with him. He asked NH to go into the closet with him. He said he wanted to kiss her. She said nothing, but did not go into the closet with him.

149. Knowing she was in there alone with him, her friends would wait for her outside of the classroom door.

150. When Defendant Gregor touched NH he told her not to tell anybody, or else. She felt scared, because it was a threat.

151. When NH wore skirts, Defendant Gregor would touch her on her inner thighs and, apparently, her vagina.

152. She stopped wearing skirts, but Defendant Gregor would put his hands inside her pants.

153. NH saw him do these things to her three friends as well.

154. Defendant Gregor gave NH lots of teddy bears, and art sets, and he gave teddy bears and art sets to the other "council" members, too.

24

155.   Defendant Gregor called NH on the telephone, once or sometimes twice a day, using her mother's cellular phone.

156.   Defendant Gregor came to her home, asked her mother if he could take NH to the store with him and buy her a cellular phone of her own, and NH's mother said "yes."

157.   Later that school year, Defendant Gregor "borrowed" her phone from her and never gave it back.

158.   Defendant Gregor invited NH to spend the night at his home, and he would ask her what she was going to wear.

159.   She slept over at his house, with her sister, and observed Defendant Gregor (who did not have any children) had a room in his home decorated as if it was a little girl's room, with a girls' blanket on the bed, along with heart-shaped pillows and teddy bears, and with a closet full of girls' toys.

160.   Defendant Gregor told NH (repeatedly), "I love you," and this made NH uncomfortable.

161.   Almost all of the students in Defendant Gregor's class knew what was happening to NH and the other three girls.

162.   At some point during the school year, one of the students reported what was happening to Defendant Montoya, according to NH, but nothing happened.

163.   Defendant Montoya never came into the classroom to investigate, and she never asked NH to come to her office, or anywhere else, to ask her any questions.

164.   Nobody ever asked NH about any of this until NH was in the seventh grade.

25

165.    According to the mother of NH, Defendant Gregor would call her daughter
and speak to her for fifteen or twenty minutes, while NH's mother would stand outside of her
daughter's bedroom door and listen.

166.    Also, according to the mother of NH, all of her daughters (including NH)
spent the night at Defendant Gregor's home twice.

167.    When Defendant Montoya was asked whether any parent complained about
the fact that Defendant Gregor had NH (and her sisters) stay at his house overnight,
Defendant Montoya replied: "No. I saw the children there myself....It was one
Saturday....They were there. The children were there."

168.    Defendant Montoya took no action whatsoever upon observing the children,
including NH, at Defendant Gregor's home on the weekend.

## C.   DEFENDANT GREGOR'S SEXUAL ABUSE OF PLAINTIFF KS

169.    Plaintiff KS (described as Student B during the PED hearing) was first touched
by Defendant Gregor, during her fourth grade year in 2007-2008, after she became
designated as the class secretary and was assigned the seat next to Defendant Gregor.

170.    Prior to that, she had been the president or the vice-president, but it was when
she was designated secretary, in or near late September of 2007, that she had to sit right next
to him, and he began to touch her.

171.    Defendant Gregor rotated the positions of his female students every month,
from one officer to another, so the girl who was secretary would be seated next to Defendant
Gregor for about one month, continuously.

172.    Plaintiff KS was the secretary three different times that year, or more, so sat
next to Defendant Gregor for three entire months, or more.

173.   Defendant Gregor touched Plaintiff KS every single day that she was seated next to him.

174.   He touched both her legs, inside her thighs, and, apparently, her vagina; he put his thumb inside her pants to touch her on her bare skin; he put his hand up her skirt (when she wore a skirt) to touch her on her bare skin; he kissed or licked her ear; and he would hold her hands.

175.   Once when Plaintiff KS wore a skirt, and he put his hands up underneath it and pulled it up in order to touch her bare skin (apparently her inner thigh and her vagina), she told him she did not want to be the secretary, or any other officer, any longer, but he forced her to stay seated where she was, because, he told her, there were no more desks in the classroom.

176.   Once Defendant Gregor kept Plaintiff KS inside the classroom with him when all the other students left for recess.

177.   Her friends told her, before they left, that they would be waiting by the two windows.

178.   Defendant Gregor whispered in Plaintiff KS's ear and licked or kissed it while he had her alone in his classroom.

179.   One of Plaintiff KS's friends, VS, ran into the classroom and said that the principal wanted to see Plaintiff KS.

180.   VS used this subterfuge in order to get Plaintiff KS out of the room.

181.   Plaintiff KS saw Defendant Gregor putting his thumb inside the pants of VS, under the table, the same way he put his thumb inside the pants of Plaintiff KS.

27

182.    Defendant Gregor touched Plaintiff KS in the manner she described, by her estimate, between three-hundred and five-hundred times during the 2007-2008 school year.

183.    Plaintiff KS was scared to tell her parents. She was frightened by the way he touched her, and she was frightened by the way he reacted when she asked to be moved from the secretary position.

184.    Defendant Gregor punished Plaintiff KS when she asked to be moved by giving her a 'B' instead of an 'A' on a math test, marking a question wrong which she actually answered correctly, and which she knew she answered correctly. She checked her answer with a friend, who had the same answer, and it was marked as correct. When she tried to point it out to him, he told her she was wrong.

185.    Sometimes Defendant Gregor, when he had Plaintiff KS close to him, would put a large book up, balanced on its spine, so that nobody could see them behind the book, and then talk directly into her ear, which made her uncomfortable.

186.    Plaintiff KS recalls that one of her friends, one of the other girls being touched by Defendant Gregor, went to Defendant Montoya's office to report the touching. She would make up an excuse to tell Defendant Gregor, a false reason for going to Defendant Montoya's office, then would go to Defendant Montoya and tell her about the touching. Plaintiff KS recalls this friend telling them that she was reporting the touching, during the 2007-2008 school year, to Defendant Montoya.

187.    This friend reported that she told Defendant Montoya, during the 2007-2008 school year, that Defendant Gregor had touched her inappropriately and was touching other female students inappropriately, all of whom she identified for Defendant Montoya.

28

188.    Defendant Montoya never called any of them in to her office to ask them about these reports, nor did she take any other action.

189.    Defendant Gregor asked Plaintiff KS to come over to his house to spend the night. He would ask her this at least three or four times each week, and he would give her pens which had his name and telephone number on them. She never went to his house.

190.    Plaintiff KS's father came to eat lunch with her many times during the 2007-2008 school year.

191.    On one occasion, Defendant Gregor slid her chair away from him when her father walked into the classroom. He also did that on one occasion when her mother walked into the classroom.

192.    Defendant Gregor gave Plaintiff KS gifts, including a large teddy bear holding a basketball, and coloring sets.

193.    Defendant Gregor's wife, Judith, was sometimes in his classroom. One time she saw Defendant Gregor touch Plaintiff KS, on her inner thigh, and she patted Defendant Gregor on the back and said something to him. Defendant Gregor whispered something to her, and she began to cry.

194.    At some point during the 2007-2008 school year, the students in Defendant Gregor's class "purposely and strategically elected all boys as class officers."

195.    During lunch recess, the girls who had been victimized went to the boys in the class and asked them to elect all boys, and the boys went along with the plan.

196.    Defendant Gregor refused to honor that result, claiming it was not fair, that some girls had to be elected too, and held another election.

29

197.    There were times when the only class members elected as officers were girls, but Defendant Gregor never refused to honor those results.

### D.    DEFENDANT GREGOR'S ABUSE IS REPORTED TO LAW ENFORCEMENT

198.    During the 2008-2009 school year, the year after KS had left Defendant Gregor's class, one of Plaintiff KS's friends had a younger sister in Defendant Gregor's class. Plaintiff KS found out that Defendant Gregor was doing the same things to that girl that he had done to her.

199.    Plaintiff KS told her mother and father what had happened to her when she found out it was now happening to her friend's sister.

200.    Plaintiff KS's father filed a report with law enforcement on April 14, 2009, the day after KS informed him of what had happened to her. He went to the police instead of the school because he did not want politics to get in the way of the investigation.

201.    Detective Bryan L. Martinez of the Espanola Police Department arranged for a Safehouse interview of KS on May 12, 2009, after which he reported the allegations against Defendant Gregor to Defendant EPS, through Assistant Superintendent Valdez and Superintendent Cockerham.

### IV.    POST-REPORTING BEHAVIOR OF DEFENDANT MONTOYA AND DEFENDANT EPS

202.    Defendant Gregor was not placed on administrative leave by Defendant EPS until May 15, 2009. Defendant EPS took no investigative action at that time, and made no report to the PED.

203.    On January 12, 2010, Defendant Montoya signed the "Superintendent's Recommendation Form for Continuing Licensure" on behalf of Defendant Gregor.

30

204.    Superintendent of Defendant EPS, Janette Archuleta, signed the same form on March 10, 2010, verifying Defendant Gregor's qualifications and recommending him for the renewal of his teaching license.

205.    Defendant Gregor filed an application for a renewal of his teaching license on May 27, 2010, with PED.

206.    In this application, he admitted that he had, in the past:

a.    An adverse action taken against any certificate of license in New Mexico or any other state;

b.    Been disciplined, reprimanded, suspended or discharged, from any employment because of allegations of misconduct;

c.    Resigned, entered into a settlement agreement, or otherwise left employment following an allegation of misconduct; and

d.    Been fingerprinted as a result of any arrest or detainment for any crime or violation of the law.

207.    Defendant Gregor attached an explanation to his application, stating that he was arrested in 1994 for 'inappropriate conduct' towards two girls and denying that any inappropriate conduct occurred, claiming the case was dismissed due to 'lack of evidence,' and that the girls' testimony before the Utah licensing agency 'showed deception.'

208.    Months after agreeing to recommend to the PED that it renew Defendant Gregor's license, Defendant EPS finally began its own investigation, in May of 2010, into the allegations of sexual abuse against Defendant Gregor for which Defendant EPS had placed him on administrative leave approximately one year prior.

31

209. During that investigation, Defendant Montoya recalled:

a. receiving a complaint from a parent about the manner in which Defendant Gregor restrained one of his female students on the playground during school year 2007-2008;

b. hearing concerns that Defendant Gregor was having students sleep over at his house during the school year 2007-2008; and

c. discussing with Defendant Gregor a complaint she had received concerning his inappropriate discussions with students in his classroom during the school year 2007-2008 about older men having young and multiple wives.

210. During that investigation, Defendant Gregor stated that Defendant Montoya had "always been very supportive of him."

211. With respect to his practice of having students sit at his desk next to him, he informed the investigator that "Ms. Montoya fully supports me."

212. Defendant Montoya testified that she did not know why Defendant Gregor was placed on administrative leave in May of 2009.

213. Rather than renewing Defendant Gregor's license, PED filed a Notice of Contemplated Action against Defendant Gregor in August of 2010, seeking to refuse to renew Defendant Gregor's license.

214. PED ultimately prevailed, and Defendant Gregor's license to teach in New Mexico has never been renewed.

## COUNT I

### (Plaintiff's Claims Against Defendant Gregor Under 42 U.S.C. § 1983)

215.  Plaintiff incorporates all of the preceding paragraphs as if fully stated herein.

216.  Plaintiff KS has a right to bodily integrity under the Fourteenth Amendment to the U.S. Constitution.

217.  Defendant Gregor deprived KS of her substantive due process right to bodily integrity under the Fourteenth Amendment to the U.S. Constitution.

218.  Defendant Gregor deprived KS of her Fourteenth Amendment right to substantive due process by physically, sexually, mentally, and emotionally abusing her, repeatedly.

219.  As a state actor, Defendant Gregor carried out, in an impermissible manner, the functions assigned to him by Defendant EPS.

220.  Defendant Gregor engaged in actions and omissions which were egregious, outrageous, or fraught with unreasonable risk. Such actions harmed KS, who was a member of a particular, limited, closed group, namely, female students at Fairview Elementary School.

221.  Defendant Gregor was not involved in a situation demanding split-second judgments. Instead, Defendant Gregor had time for thoughtful deliberation.

222.  Defendant Gregor's conduct shocks the conscience.

223.  Defendant Gregor's conduct was a direct and proximate cause of KS' injuries and resultant damages.

224.  Defendant Gregor's conduct was intentional, reckless, willful, and done with callous disregard for KS' constitutional rights. As Defendant Gregor's conduct was

33

motivated by malice or evil intent, Plaintiff is entitled to recover awards of punitive and exemplary damages against Defendant Gregor in an amount to be determined at trial.

225. The constitutional rights of AS violated by Defendant Gregor were clearly established prior to Defendant Gregor's arrival in the State of New Mexico, and any reasonable school administrator, teacher, or staff member would have been aware that the conduct described herein would violate KS' constitutional rights.

## COUNT II

### (Plaintiff's Claim Against Defendants SFPS and EPS Under 42 U.S.C. § 1983)

226. Plaintiff incorporates all of the preceding paragraphs as if fully stated herein.

227. Defendants SFPS and EPS had a duty to exercise due care in the supervision of their staff, teachers, and contractors. In addition, Defendants SFPS and EPS had a duty to properly screen, license, hire, train, monitor, supervise, and discipline staff, teachers, and contractors employed or licensed by Defendants.

228. Defendants SFPS and EPS failed to adequately screen Defendant Gregor prior to his licensing and employment, and failed to take necessary actions with respect to his licensure and employment during his tenure as a teacher, licensed and employed by Defendants. Defendants SFPS and EPS also failed to adequately train and supervise Defendant Gregor during his tenure as a teacher licensed and employed by Defendants.

229. These failures caused KS to be subjected to the physical, sexual, mental, and emotional abuse described above. Defendants SFPS and EPS, because they knew or should have known of the predatory actions of Defendant Gregor prior to and during his employment with the Defendants, were deliberately indifferent to the constitutional rights of

34

AS as exemplified by their utter failure to protect AS, causing AS to suffer injuries and resultant damages.

230.    The actions and deliberate omissions of Defendants SFPS and EPS were the result of a custom or policy which permitted or condoned (reflecting deliberate indifference to AS and other female elementary school students) Defendant Gregor's physical, sexual, mental, and emotional abuse of AS.

231.    As a consequence of Defendants SFPS and EPS's defective licensing and hiring, defective supervision, and custom or policy, AS has been deprived under color of law of the rights, privileges, and immunities secured by the Constitution and the laws of the United States, including the right under the Fourteenth Amendment to be free from intrusions into her bodily integrity.

232.    As a direct and proximate consequence of the deprivation of her rights, AS suffered the resultant injuries and damages described herein.

## COUNT III

### (Plaintiff's Claims Against Defendant Sewing Under 42 U.S.C. § 1983)

233.    Plaintiff incorporates all of the preceding paragraphs as if fully stated herein.

234.    Plaintiff KS has a right to bodily integrity under the Fourteenth Amendment to the U.S. Constitution.

235.    Defendant Sewing deprived KS of her substantive due process right to bodily integrity under the Fourteenth Amendment to the U.S. Constitution.

236.    Defendant Sewing deprived KS of her Fourteenth Amendment right to substantive due process by failing to act to report Defendant Gregor's physical and sexual abuse of female students to law enforcement or to CYFD, thereby enabling Defendant

35

Gregor to continue to seek employment as a teacher and to continue to physically, sexually, mentally, and emotionally abusing female students, including KS, repeatedly.

237.    As a state actor, Defendant Sewing carried out, in an impermissible manner, the functions assigned to her by Defendant SFPS.

238.    Defendant Sewing engaged in actions and omissions which were egregious, outrageous, or fraught with unreasonable risk.  Such actions harmed KS, who was a member of a particular, limited, closed group, namely, female students at Fairview Elementary School.

239.    Defendant Sewing was not involved in a situation demanding split-second judgments.  Instead, Defendant Sewing had time for thoughtful deliberation.

240.    Defendant Sewing's conduct shocks the conscience.

241.    Defendant Sewing's conduct was a direct and proximate cause of KS' injuries and resultant damages.

242.    Defendant Sewing's conduct was intentional, reckless, willful, and done with callous disregard for KS' constitutional rights.  As such, Plaintiff is entitled to recover awards of punitive and exemplary damages against Defendant Sewing in an amount to be determined at trial.

243.    The constitutional rights of AS violated by Defendant Sewing were clearly established prior to Defendant Gregor's arrival in the State of New Mexico, and any reasonable school administrator, teacher, or staff member would have been aware that the conduct described herein would violate KS' constitutional rights.

36

## COUNT IV

### (Plaintiff's Claims Against Defendant Montoya Under 42 U.S.C. § 1983)

244. Plaintiff incorporates all of the preceding paragraphs as if fully stated herein.

245. Plaintiff KS has a right to bodily integrity under the Fourteenth Amendment to the U.S. Constitution.

246. Defendant Montoya deprived KS of her substantive due process right to bodily integrity under the Fourteenth Amendment to the U.S. Constitution.

247. Defendant Montoya deprived KS of her Fourteenth Amendment right to substantive due process by purposefully protecting Defendant Gregor; by not taking action to stop his sexual abuse of female students after having actual knowledge of inappropriate behavior, both reported to her and actually observed by her; and by failing to report Defendant Gregor's inappropriate conduct and sexual abuse of female students to law enforcement or to CYFD; thereby enabling Defendant Gregor to continue to sexually, physically, mentally and emotionally abuse female students, repeatedly, including Plaintiff KS, at Fairview Elementary School.

248. As a state actor, Defendant Montoya carried out, in an impermissible manner, the functions assigned to her by Defendant EPS.

249. Defendant Montoya engaged in actions and omissions which were egregious, outrageous, or fraught with unreasonable risk. Such actions harmed KS, who was a member of a particular, limited, closed group, namely, female students at Fairview Elementary School.

250. Defendant Montoya was not involved in a situation demanding split-second judgments. Instead, Defendant Montoya had time for thoughtful deliberation.

251.    Defendant Montoya's conduct shocks the conscience.

252.    Defendant Montoya's conduct was a direct and proximate cause of KS' injuries and resultant damages.

253.    Defendant Montoya's conduct was intentional, reckless, willful, and done with callous disregard for KS' constitutional rights. As such, Plaintiff is entitled to recover awards of punitive and exemplary damages against Defendant Montoya in an amount to be determined at trial.

254.    The constitutional rights of AS violated by Defendant Montoya were clearly established prior to Defendant Gregor's arrival in the State of New Mexico, and any reasonable school administrator, teacher, or staff member would have been aware that the conduct described herein would violate KS' constitutional rights.

## COUNT V

### (Plaintiff's Claims Against Defendant EPS Under Title IX, 20 U.S.C. §§ 1681-1688, for Sexual Abuse)

255.    Plaintiff incorporates all of the preceding paragraphs as if fully stated herein.

256.    At all times material hereto, AS was a student at Fairview Elementary School, owned, controlled, operated, and administered by Defendant EPS.

257.    The sexual abuse perpetrated by Defendant Gregor against AS was so severe, pervasive, and objectively offensive that it deprived her of access to the educational opportunities or benefits provided by the school.

258.    Defendant EPS had actual or constructive knowledge that Defendant Gregor was sexually harassing and abusing female students, including AS.

38

259. Defendant EPS was deliberately indifferent to the inappropriate relationship and illegal conduct that Defendant Gregor imposed upon AS.

260. Defendant EPS had the authority and power to remedy the hostile environment facing AS, during the entire school year during which she was subjected to Defendant Gregor's sexual abuse, but failed to do so.

261. Upon information and belief, Defendant EPS had not provided adequate instruction or education to Fairview Elementary School students, faculty, or staff about sexual abuse, or enforced any policies to prohibit or discourage the sexually abusive hostile environment facing KS at the hands of Defendant Gregor.

262. Defendant EPS acted with deliberate indifference and recklessness with respect to the sexually abusive hostile environment facing KS.

263. Upon information and belief, at all times material hereto, Defendant EPS received federal funding and financial assistance.

264. Defendant EPS had a duty under Title IX, 20 U.S.C. § 1681, to provide an educational environment in which no student, including KS, should be excluded from education, denied the benefits of education, or discriminated against on the basis of sex.

265. At all times material hereto, Defendant EPS, acting through and as officials, administrators, and employees, maintained customs and policies which permitted or condoned sexual abuse of students by staff and teachers during school hours and school activities.

266. As a result of these customs and policies, KS was subjected to invasive, severe, and objectively offensive sexual, physical, emotional, and mental abuse by Defendant Gregor during school hours and official school activities. The sexual assaults and batteries

39

upon KS were the natural and inevitable consequence of effectively unsupervised classroom and on-campus activities.

267. Upon information and belief, Defendant EPS failed to properly and adequately instruct administrators, supervisors, employees, and contractors as to how to respond to inappropriate behavior, including sexual abuse, by EPS employees towards students enrolled in Fairview Elementary School. Defendant EPS has not developed or promulgated adequate polices addressing issues of sexual abuse by a teacher or staff member against a student or students. The deliberate indifference of Defendant EPS, and its officials, administrators, and employees, to the acts of sexual abuse, as well as its failure to adopt, publish, and inculcate appropriate policies concerning such abuse and harassment, deprived KS of benefits under Title IX, and subjected her to discrimination on the basis of her sex, female, in violation of Title IX. It further caused Plaintiff to be excluded from participation in, denied the benefits of, and be subjected to discrimination on the basis of sex under an education program or activity receiving federal financial assistance.

268. As a direct and proximate consequence of the discrimination and violation of Title IX, KS suffered the resultant injuries and damages described herein.

## COUNT VI

### (Plaintiff's Claim Against Defendant EPS Under the New Mexico Tort Claims Act, NMSA 1978, § 41-4-6)

269. Plaintiff incorporates all of the preceding paragraphs as if fully stated herein.

270. At all times material hereto, Defendant EPS operated Fairview Elementary School, which KS attended, as well as other public schools in Espanola.

40

271.    Defendants EPS and Gregor, who was acting in the scope of his employment with Defendant EPS, had the duty in any activity actually undertaken to exercise for the safety of others, including KS, that care ordinarily exercised by a reasonable, prudent, and qualified person in their position in light of the nature of what was being done.

272.    Defendant EPS had a duty to KS to exercise reasonable care in the maintenance and operation of Fairview Elementary School and the other Espanola public schools, and to keep all of their educational campuses and premises in a safe condition.

273.    Defendant EPS had a further duty to supervise its employees, contractors, and agents in order to ensure that they did not act negligently in the operation or maintenance of their buildings.

274.    Supervision includes the obligation to adopt and inculcate reasonable and proper operational policies and procedures concerning the safe operation of Defendant EPS' educational facilities, including appropriate policies and procedures concerning employee training, adequate monitoring and regulation of their employee's activities, and other such policies and procedures as are reasonably necessary to ensure adequate safety in the operation and maintenance of Defendant EPS' educational facilities, such as Fairview Elementary School, in order to avoid unsafe, dangerous, or defective conditions on the premises.

275.    Defendant EPS, in maintaining and operating its premises in a safe condition, has a duty to supervise its teachers and other employees and to protect its minor students, including KS, from sexual assaults, batteries, abuse, or harassment from other persons, including Defendant Gregor.

41

276.   Defendant EPS, acting through its administrators, supervisors, employees, and contractors, had the duty to adopt and implement proper safety policies and procedures to protect its minor students, including KS, from sexual assaults, batteries, abuse, or harassment from other persons, including Defendant Gregor.

277.   Defendant EPS, acting through its administrators, supervisors, employees, and contractors, had a duty to investigate and act upon any suspicions or reports of improper sexual assaults, batteries, abuse, or harassment by EPS employees or agents against any student attending Defendant EPS' schools.

278.   Defendant EPS failed to exercise reasonable care in the maintenance of the premises in a safe condition, because it repeatedly ignored the warning signs and the readily observable (and reported) inappropriate behavior of Defendant Gregor toward female students, including KS.

279.   Defendant EPS failed to use ordinary care to protect KS from the danger posed to her by Defendant Gregor.

280.   Defendant EPS breached its duties of care towards KS.

281.   Defendant EPS further breached its duties of care by failing to properly screen, hire, train, monitor, supervise and discipline employees of Fairview Elementary School, such as Defendant Gregor, as well as by failing to enact or enforce appropriate policies, procedures and protocols concerning safety in student-teacher interactions, and by otherwise failing to take appropriate and reasonable supervisory actions to correct the potential problems and prevent the harm and injuries incurred by KS.

42

282.    Defendant EPS is jointly and severally liable for all injuries and damages caused KS by the actions of its administrators and employees, including Defendant Gregor, pursuant to the doctrines of vicarious liability and *respondeat superior*.

283.    The above-described conduct of Defendant EPS was a direct and proximate cause of the injuries to KS and the resultant damages described herein.

## COUNT VII

### (Plaintiff's Common Law Battery Claim Against Defendant Gregor)

284.    Plaintiff incorporates all of the preceding paragraphs as if fully stated herein.

285.    The conduct of Defendant Gregor, the sexual abuse described in this complaint, constituted battery upon KS.

286.    Defendant Gregor had a duty to refrain from engaging in battery upon KS.

287.    Defendant Gregor breached this duty by engaging in the conduct and performing the actions he perpetrated upon KS, as described in this complaint.

288.    The conduct of Defendant Gregor was, at a minimum, negligent, willful, malicious, grossly negligent, or indifferent.

289.    As a direct and proximate result of the actions of Defendant Gregor, KS suffered repeated batteries which were the cause of the injuries and resultant damages described herein.

## COUNT VIII

### (Plaintiff's Common Law Negligence Per Se Claim Against Defendant Gregor)

290.    Plaintiff incorporates all of the preceding paragraphs as if fully stated herein.

291.    There were in force at the time of the events described herein statutes which provided that it was a crime to commit criminal sexual contact of a minor or to engage in

43

sexual exploitation of a minor. The conduct of Defendant Gregor, described herein, violated

these statutes. These statutory violations were neither excused nor justified.

292.    The conduct on the part of Defendant Gregor constituted negligence per se.

293.    As a direct and proximate result of the negligence per se of Defendant Gregor,

KS suffered the injuries and resultant damages described herein.

## COUNT IX

### (Plaintiff's Common Law Intentional Infliction of Emotional Distress/Outrage Against Defendant Gregor)

294.    Plaintiff incorporates all of the preceding paragraphs as if fully stated herein.

295.    The conduct of Defendant Gregor, described above, was intentional or in

reckless disregard of KS and her well-being.

296.    As a result of the conduct of Defendant Gregor, KS' mental distress was

extreme and severe.

297.    As a direct and proximate result of the actions of Defendant Gregor, KS

suffered severe emotional distress as well as the injuries and damages described herein.

## COUNT X

### (Plaintiff's Common Law Negligence Per Se Claim Against Defendants Sewing and Montoya)

298.    Plaintiff incorporates all of the preceding paragraphs as if fully stated herein.

299.    There was in force at the time of the events described herein a statute which

provided that it was a crime for certain persons, including school officials, with knowledge

or reasonable suspicion that a child is abused to fail report that information to law

enforcement or to CYFD. The conduct of Defendants Sewing and Montoya, described

herein, violated these statutes. These statutory violations were neither excused nor justified.

44

300.    The conduct on the part of Defendants Sewing and Montoya constituted negligence per se.

301.    As a direct and proximate result of the negligence per se of Defendants Sewing and Montoya, KS suffered the injuries and resultant damages described herein.

## PRAYER FOR RELIEF

302.    Plaintiff incorporates all of the preceding paragraphs as if fully stated herein.

303.    As a direct and proximate result of the wrongful and unlawful acts and omissions of all Defendants, as described above, KS was injured and has suffered and continues to suffer damages, including, but not limited to: severe emotional distress, anguish, suffering, humiliation, psychological injuries, indignities, loss of enjoyment of life, deprivation of constitutional rights, invasion of bodily integrity, and other incidental, consequential, and special damages.

304.    As a result of the above-described damages and injuries, Plaintiff KS is entitled to recover an award of full compensatory damages against all Defendants in amounts to be determined at the trial of this cause.

305.    Plaintiff KS requests damages in an amount sufficient to compensate her for all injuries and harm she suffered, as well as punitive damages as provided by law, along with costs of this action, pre- and post- judgment interest as provided by law, reasonable attorneys' fees as provided by law, and such other and further relief as proves just.

306.    Plaintiff KS requests a trial by jury on all issues so triable.

Respectfully submitted,

ROTHSTEIN, DONATELLI, HUGHES,
  DAHLSTROM, SCHOENBURG & BIENVENU, LLP

/s/ Carolyn M. "Cammie" Nichols 2/27/2014
CAROLYN M. "CAMMIE" NICHOLS
BRENDAN K. EGAN
500 4th St., NW, Suite 400
Albuquerque, New Mexico 87102
(505) 243-1443
cmnichols@rothsteinlaw.com
bkegan@rothsteinlaw.com

*Attorneys for Plaintiff KS*

FILED IN MY OFFICE
DISTRICT COURT CLERK
2/27/2014 4:27:53 PM
STEPHEN T. PACHECO

LMP

**STATE OF NEW MEXICO**
**COUNTY OF SANTA FE**
**FIRST JUDICIAL DISTRICT COURT**

**K.S., by and through her parents and next friends,**
**T.S. and A.R.,**

      **Plaintiff,**

**vs.**                                                    **Case No.  D-101-CV-2014-00491**

**THE SANTA FE PUBLIC SCHOOLS;**
**VICKIE L. SEWING, in her individual capacity;**
**THE ESPANOLA PUBLIC SCHOOLS;**
**RUBY E. MONTOYA, in her individual capacity;**
**GARY F. GREGOR, in his individual capacity;**

**Defendants.**

## DEMAND FOR TRIAL BY JURY

      COMES NOW the Plaintiff, K.S., by and through the undersigned counsel, and

hereby requests a trial by six-person jury on all claims referenced in the Civil Complaint

filed on February 27, 2014, pursuant to Rule 1-038(A) NMRA.

                  Respectfully submitted,

                  ROTHSTEIN, DONATELLI, HUGHES,
                    DAHLSTROM, SCHOENBURG & BIENVENU, LLP

                  By: /s/ Carolyn M. "Cammie" Nichols 2/27/2014
                    CAROLYN M. "CAMMIE" NICHOLS
                    BRENDAN K. EGAN
                    500 4th Street, N.W., Suite 400
                    Albuquerque, NM 87102
                    (505) 243-1443

                    *Attorneys for Plaintiff K.S.*

**ISSUED**

| SUMMONS | FILED IN MY OFFICE<br>DISTRICT COURT CLERK<br>3/13/2014 8:26:12 AM<br>STEPHEN T. PACHECO |
|---|---|
| District Court: FIRST JUDICIAL<br>Santa Fe County, New Mexico<br>Court Address:<br>Post Office Box 2268 / 100 S. Catron<br>Santa Fe, New Mexico 87504 / 87501<br>Court Telephone No.: 505-455-8250 | Case Number: D-101-CV-2014-00491<br><br>Assigned Judge: Sarah M. Singleton<br><br>JLG |
| Plaintiff(s): K.S., by and through her parents and next friends, T.S. and A.R.,<br>v.<br>Defendant(s): THE SANTA FE PUBLIC SCHOOLS; VICKIE L. SEWING, in her individual capacity; THE ESPANOLA PUBLIC SCHOOLS; RUBY E. MONTOYA, in her individual capacity; GARY F. GREGOR, in his individual capacity. | Defendant<br>Name: Ruby E. Montoya<br>Address: 853 S. 3rd Street<br>       Santa Rosa, NM 88435 |

**TO THE ABOVE NAMED DEFENDANT(S)**: Take notice that

**1.**     A lawsuit has been filed against you. A copy of the lawsuit is attached. The Court issued this Summons.

**2.**     You must respond to this lawsuit in writing. You must file your written response with the Court no later than thirty (30) days from the date you are served with this Summons. (The date you are considered served with the Summons is determined by Rule 1-004 NMRA) The Court's address is listed above.

**3.**     You must file (in person or by mail) your written response with the Court. When you file your response, you must give or mail a copy to the person who signed the lawsuit.

**4.**     If you do not respond in writing, the Court may enter judgment against you as requested in the lawsuit.

**5.**     You are entitled to a jury trial in most types of lawsuits. To ask for a jury trial, you must request one in writing and pay a jury fee.

**6.**     If you need an interpreter, you must ask for one in writing.

**7.**     You may wish to consult a lawyer. You may contact the State Bar of New Mexico for help finding a lawyer at www.nmbar.org; 1-800-876-6657; or 1-505-797-6066.

Dated at Santa Fe, New Mexico, this 13th day of March, 2014.

STEPHEN T. PACHECO
CLERK OF THE DISTRICT COURT

BY: _____
      Deputy

/s/ Carolyn M. "Cammie" Nichols
   CAROLYN M. "CAMMIE" NICHOLS
   BRENDAN K. EGAN
   500 4th Street NW, Suite 400
   Albuquerque, NM 87102
   (505) 243-1443
     cmnichols@rothsteinlaw.com
     bkegan@rothsteinlaw.com

THIS SUMMONS IS ISSUED PURSUANT TO RULE 1-004 OF THE NEW MEXICO
RULES OF CIVIL PROCEDURE FOR DISTRICT COURTS.

**RETURN[1]**

STATE OF NEW MEXICO    )
                             )ss
COUNTY OF GUADALUPE   )

I, being duly sworn, on oath, state that I am over the age of eighteen (18) years and not a party to this lawsuit, and that I served this summons in _____ county on the _____ day of _____, _____, by delivering a copy of this summons, with a copy of complaint attached, in the following manner:

**(check one box and fill in appropriate blanks)**

[ ]     to the defendant _____ (*used when defendant accepts a copy of summons and complaint or refuses to accept the summons and complaint*)

[ ]     to the defendant by [mail] [courier service] as provided by Rule 1-004 NMRA (*used when service is by mail or commercial courier service*).

After attempting to serve the summons and complaint on the defendant by personal service or by mail or commercial courier service, by delivering a copy of this summons, with a copy of complaint attached, in the following manner:

[ ]     to _____, a person over fifteen (15) years of age and residing at the usual place of abode of defendant _____, (*used when the defendant is not presently at place of abode*) and by mailing by first class mail to the defendant at _____ (*insert defendant's last known mailing address*) a copy of the summons and complaint.

[ ]     to _____, the person apparently in charge at the actual place of business or employment of the defendant and by mailing by first class mail to the defendant at _____ (*insert defendant's business address*) and by mailing the summons and complaint by first class mail to the defendant at _____ (*insert defendant's last known mailing address*).

[ ]     to _____, an agent authorized to receive service of process for defendant _____.

[ ]     to _____, [parent] [guardian] [custodian] [conservator] [guardian ad litem] of defendant _____ (*used when defendant is a minor or an incompetent person*).

[ ]     to _____ (*name of person*), _____, (*title of person authorized to receive service. Use this alternative when the defendant is a corporation or an association subject to a suit under a common name, a land grant board of trustees, the State of New Mexico or any political subdivision*).

Fees: _____

_____
Signature of person making service

_____
Title (*if any*)

Subscribed and sworn to before me this _____ day of _____, _____[2]

_____
Judge, notary or other officer
authorized to administer oaths

_____
Official title

**ISSUED**

<table>
<tr><td rowspan="2"><b>SUMMONS</b></td><td>FILED IN MY OFFICE<br>DISTRICT COURT CLERK<br>3/13/2014 8:26:12 AM<br>STEPHEN T. PACHECO</td></tr>
</table>

| | |
|---|---|
| District Court: FIRST JUDICIAL<br>Santa Fe County, New Mexico<br>Court Address:<br>Post Office Box 2268 / 100 S. Catron<br>Santa Fe, New Mexico 87504 / 87501<br>Court Telephone No.: 505-455-8250 | Case Number: D-101-CV-2014-00491<br><br>Assigned Judge: Sarah M. Singleton     JLG |
| Plaintiff(s): K.S., by and through her parents and next friends, T.S. and A.R.,<br>v.<br>Defendant(s): THE SANTA FE PUBLIC SCHOOLS; VICKIE L. SEWING, in her individual capacity; THE ESPANOLA PUBLIC SCHOOLS; RUBY E. MONTOYA, in her individual capacity; GARY F. GREGOR, in his individual capacity. | Defendant<br>Name: Vickie L. Sewing<br>Address: 110 La Joya Road<br>       Santa Fe, NM 87501 |

**TO THE ABOVE NAMED DEFENDANT(S)**: Take notice that

1. A lawsuit has been filed against you. A copy of the lawsuit is attached. The Court issued this Summons.

2. You must respond to this lawsuit in writing. You must file your written response with the Court no later than thirty (30) days from the date you are served with this Summons. (The date you are considered served with the Summons is determined by Rule 1-004 NMRA) The Court's address is listed above.

3. You must file (in person or by mail) your written response with the Court. When you file your response, you must give or mail a copy to the person who signed the lawsuit.

4. If you do not respond in writing, the Court may enter judgment against you as requested in the lawsuit.

5. You are entitled to a jury trial in most types of lawsuits. To ask for a jury trial, you must request one in writing and pay a jury fee.

6. If you need an interpreter, you must ask for one in writing.

7. You may wish to consult a lawyer. You may contact the State Bar of New Mexico for help finding a lawyer at www.nmbar.org; 1-800-876-6657; or 1-505-797-6066.

Dated at Santa Fe, New Mexico, this 13th day of March, 2014.

STEPHEN T. PACHECO
CLERK OF THE DISTRICT COURT

BY: _____
Deputy

/s/ Carolyn M. "Cammie" Nichols
CAROLYN M. "CAMMIE" NICHOLS
BRENDAN K. EGAN
500 4th Street NW, Suite 400
Albuquerque, NM 87102
(505) 243-1443
cmnichols@rothsteinlaw.com
bkegan@rothsteinlaw.com

THIS SUMMONS IS ISSUED PURSUANT TO RULE 1-004 OF THE NEW MEXICO
RULES OF CIVIL PROCEDURE FOR DISTRICT COURTS.

## RETURN[1]

STATE OF NEW MEXICO      )
                         )ss
COUNTY OF GUADALUPE      )

I, being duly sworn, on oath, state that I am over the age of eighteen (18) years and not a party to this lawsuit, and that I served this summons in _____ county on the _____ day of _____, _____, by delivering a copy of this summons, with a copy of complaint attached, in the following manner:

**(check one box and fill in appropriate blanks)**

[ ]     to the defendant _____ (*used when defendant accepts a copy of summons and complaint or refuses to accept the summons and complaint*)

[ ]     to the defendant by [mail] [courier service] as provided by Rule 1-004 NMRA (*used when service is by mail or commercial courier service*).

After attempting to serve the summons and complaint on the defendant by personal service or by mail or commercial courier service, by delivering a copy of this summons, with a copy of complaint attached, in the following manner:

[ ]     to _____, a person over fifteen (15) years of age and residing at the usual place of abode of defendant _____, (*used when the defendant is not presently at place of abode*) and by mailing by first class mail to the defendant at _____ (*insert defendant's last known mailing address*) a copy of the summons and complaint.

[ ]     to _____, the person apparently in charge at the actual place of business or employment of the defendant and by mailing by first class mail to the defendant at _____ (*insert defendant's business address*) and by mailing the summons and complaint by first class mail to the defendant at _____ (*insert defendant's last known mailing address*).

[ ]     to _____, an agent authorized to receive service of process for defendant _____.

[ ]     to _____, [parent] [guardian] [custodian] [conservator] [guardian ad litem] of defendant _____ (*used when defendant is a minor or an incompetent person*).

[ ]     to _____ (*name of person*), _____, (*title of person authorized to receive service. Use this alternative when the defendant is a corporation or an association subject to a suit under a common name, a land grant board of trustees, the State of New Mexico or any political subdivision*).

Fees: _____

_____
Signature of person making service

_____
Title (*if any*)

Subscribed and sworn to before me this _____ day of _____, _____[2]

_____
Judge, notary or other officer
authorized to administer oaths

_____
Official title

**ISSUED**

| | |
|---|---|
| **SUMMONS** | FILED IN MY OFFICE<br>DISTRICT COURT CLERK<br>3/13/2014 8:26:12 AM<br>STEPHEN T. PACHECO |
| District Court: FIRST JUDICIAL<br>Santa Fe County, New Mexico<br>Court Address:<br>Post Office Box 2268 / 100 S. Catron<br>Santa Fe, New Mexico  87504 / 87501<br>Court Telephone No.: 505-455-8250 | Case Number: D-101-CV-2014-00491          JLG<br><br>Assigned Judge: Sarah M. Singleton |
| Plaintiff(s):  K.S., by and through her parents and next friends, T.S. and A.R.,<br>v.<br>Defendant(s):     THE  SANTA  FE  PUBLIC SCHOOLS; VICKIE L. SEWING, in her individual capacity; THE ESPANOLA PUBLIC SCHOOLS; RUBY E. MONTOYA, in her individual capacity; GARY F. GREGOR, in his individual capacity. | Defendant<br>Name:     Gary F. Gregor<br>Address:  1617 N. Prince Drive<br>              Espanola, NM 87532 |

**TO THE ABOVE NAMED DEFENDANT(S)**: Take notice that

1.      A lawsuit has been filed against you.  A copy of the lawsuit is attached.  The Court issued this Summons.

2.      You must respond to this lawsuit in writing.  You must file your written response with the Court no later than thirty (30) days from the date you are served with this Summons.  (The date you are considered served with the Summons is determined by Rule 1-004 NMRA) The Court's address is listed above.

3.      You must file (in person or by mail) your written response with the Court.  When you file your response, you must give or mail a copy to the person who signed the lawsuit.

4.      If you do not respond in writing, the Court may enter judgment against you as requested in the lawsuit.

5.      You are entitled to a jury trial in most types of lawsuits.  To ask for a jury trial, you must request one in writing and pay a jury fee.

6.      If you need an interpreter, you must ask for one in writing.

7.      You may wish to consult a lawyer.  You may contact the State Bar of New Mexico for help finding a lawyer at www.nmbar.org; 1-800-876-6657; or 1-505-797-6066.

Dated at Santa Fe, New Mexico, this 13th day of March, 2014.

STEPHEN T. PACHECO
CLERK OF THE DISTRICT COURT

BY: _____
      Deputy

/s/ Carolyn M. "Cammie" Nichols
    CAROLYN M. "CAMMIE" NICHOLS
    BRENDAN K. EGAN
    500 4th Street NW, Suite 400
Albuquerque, NM 87102
    (505) 243-1443
        cmnichols@rothsteinlaw.com
        bkegan@rothsteinlaw.com

THIS SUMMONS IS ISSUED PURSUANT TO RULE 1-004 OF THE NEW MEXICO
RULES OF CIVIL PROCEDURE FOR DISTRICT COURTS.

**RETURN**[1]

STATE OF NEW MEXICO )
                         )ss
COUNTY OF GUADALUPE )

I, being duly sworn, on oath, state that I am over the age of eighteen (18) years and not a party to this lawsuit, and that I served this summons in _____ county on the _____ day of _____, _____, by delivering a copy of this summons, with a copy of complaint attached, in the following manner:

**(check one box and fill in appropriate blanks)**

[ ]    to the defendant _____ (*used when defendant accepts a copy of summons and complaint or refuses to accept the summons and complaint*)

[ ]    to the defendant by [mail] [courier service] as provided by Rule 1-004 NMRA (*used when service is by mail or commercial courier service*).

After attempting to serve the summons and complaint on the defendant by personal service or by mail or commercial courier service, by delivering a copy of this summons, with a copy of complaint attached, in the following manner:

[ ]    to _____, a person over fifteen (15) years of age and residing at the usual place of abode of defendant _____, (*used when the defendant is not presently at place of abode*) and by mailing by first class mail to the defendant at _____ (*insert defendant's last known mailing address*) a copy of the summons and complaint.

[ ]    to _____, the person apparently in charge at the actual place of business or employment of the defendant and by mailing by first class mail to the defendant at _____ (*insert defendant's business address*) and by mailing the summons and complaint by first class mail to the defendant at _____ (*insert defendant's last known mailing address*).

[ ]    to _____, an agent authorized to receive service of process for defendant _____.

[ ]    to _____, [parent] [guardian] [custodian] [conservator] [guardian ad litem] of defendant _____ (*used when defendant is a minor or an incompetent person*).

[ ]    to _____ (*name of person*), _____, (*title of person authorized to receive service. Use this alternative when the defendant is a corporation or an association subject to a suit under a common name, a land grant board of trustees, the State of New Mexico or any political subdivision*).

Fees: _____

_____
Signature of person making service

_____
Title (*if any*)

Subscribed and sworn to before me this _____ day of _____, _____[2]

_____
Judge, notary or other officer
authorized to administer oaths

_____
Official title

ISSUED

FILED IN MY OFFICE
DISTRICT COURT CLERK
3/13/2014 8:26:12 AM
STEPHEN T. PACHECO
JLG

| | |
|---|---|
| **SUMMONS** | |
| District Court: FIRST JUDICIAL<br>Santa Fe County, New Mexico<br>Court Address:<br>Post Office Box 2268 / 100 S. Catron<br>Santa Fe, New Mexico 87504 / 87501<br>Court Telephone No.: 505-455-8250 | Case Number: D-101-CV-2014-00491<br><br>Assigned Judge: Sarah M. Singleton |
| Plaintiff(s): K.S., by and through her parents and next friends, T.S. and A.R.,<br><br>v.<br><br>Defendant(s): THE SANTA FE PUBLIC SCHOOLS; VICKIE L. SEWING, in her individual capacity; THE ESPANOLA PUBLIC SCHOOLS; RUBY E. MONTOYA, in her individual capacity; GARY F. GREGOR, in his individual capacity. | Defendant<br>Name: Santa Fe Public Schools<br>Address: 610 Alta Vista Street<br>Santa Fe, NM 87505 |

**TO THE ABOVE NAMED DEFENDANT(S)**: Take notice that

1.    A lawsuit has been filed against you. A copy of the lawsuit is attached. The Court issued this Summons.

2.    You must respond to this lawsuit in writing. You must file your written response with the Court no later than thirty (30) days from the date you are served with this Summons. (The date you are considered served with the Summons is determined by Rule 1-004 NMRA) The Court's address is listed above.

3.     You must file (in person or by mail) your written response with the Court. When you file your response, you must give or mail a copy to the person who signed the lawsuit.

4.    If you do not respond in writing, the Court may enter judgment against you as requested in the lawsuit.

5.    You are entitled to a jury trial in most types of lawsuits. To ask for a jury trial, you must request one in writing and pay a jury fee.

6.    If you need an interpreter, you must ask for one in writing.

7.    You may wish to consult a lawyer. You may contact the State Bar of New Mexico for help finding a lawyer at www.nmbar.org; 1-800-876-6657; or 1-505-797-6066.

Dated at Santa Fe, New Mexico, this 13th day of March, 2014.

STEPHEN T. PACHECO
CLERK OF THE DISTRICT COURT

BY: _____
Deputy

/s/ Carolyn M. "Cammie" Nichols
CAROLYN M. "CAMMIE" NICHOLS
BRENDAN K. EGAN
500 4th Street NW, Suite 400
Albuquerque, NM 87102
(505) 243-1443
cmnichols@rothsteinlaw.com
bkegan@rothsteinlaw.com

THIS SUMMONS IS ISSUED PURSUANT TO RULE 1-004 OF THE NEW MEXICO
RULES OF CIVIL PROCEDURE FOR DISTRICT COURTS.

**RETURN[1]**

STATE OF NEW MEXICO )
                            )ss
COUNTY OF GUADALUPE )

I, being duly sworn, on oath, state that I am over the age of eighteen (18) years and not a party to this lawsuit, and that I served this summons in _____ county on the _____ day of _____, _____, by delivering a copy of this summons, with a copy of complaint attached, in the following manner:

**(check one box and fill in appropriate blanks)**

[ ]     to the defendant _____ (*used when defendant accepts a copy of summons and complaint or refuses to accept the summons and complaint*)

[ ]     to the defendant by [mail] [courier service] as provided by Rule 1-004 NMRA (*used when service is by mail or commercial courier service*).

After attempting to serve the summons and complaint on the defendant by personal service or by mail or commercial courier service, by delivering a copy of this summons, with a copy of complaint attached, in the following manner:

[ ]     to _____, a person over fifteen (15) years of age and residing at the usual place of abode of defendant _____, (*used when the defendant is not presently at place of abode*) and by mailing by first class mail to the defendant at _____ (*insert defendant's last known mailing address*) a copy of the summons and complaint.

[ ]     to _____, the person apparently in charge at the actual place of business or employment of the defendant and by mailing by first class mail to the defendant at _____ (*insert defendant's business address*) and by mailing the summons and complaint by first class mail to the defendant at _____ (*insert defendant's last known mailing address*).

[ ]     to _____, an agent authorized to receive service of process for defendant _____.

[ ]     to _____, [parent] [guardian] [custodian] [conservator] [guardian ad litem] of defendant _____ (*used when defendant is a minor or an incompetent person*).

[ ]     to _____ (*name of person*), _____, (*title of person authorized to receive service. Use this alternative when the defendant is a corporation or an association subject to a suit under a common name, a land grant board of trustees, the State of New Mexico or any political subdivision*).

Fees: _____

_____
Signature of person making service

_____
Title (*if any*)

Subscribed and sworn to before me this _____ day of _____, _____[2]

_____
Judge, notary or other officer
authorized to administer oaths

_____
Official title

ISSUED

| | |
|---|---|
| **SUMMONS** | FILED IN MY OFFICE<br>DISTRICT COURT CLERK<br>3/13/2014 8:26:12 AM<br>STEPHEN T. PACHECO |
| District Court: FIRST JUDICIAL<br>Santa Fe County, New Mexico<br>Court Address:<br>Post Office Box 2268 / 100 S. Catron<br>Santa Fe, New Mexico 87504 / 87501<br>Court Telephone No.: 505-455-8250 | Case Number: D-101-CV-2014-00491    JLG<br><br>Assigned Judge: Sarah M. Singleton |
| Plaintiff(s): K.S., by and through her parents and next friends, T.S. and A.R.,<br>v.<br>Defendant(s): THE SANTA FE PUBLIC SCHOOLS; VICKIE L. SEWING, in her individual capacity; THE ESPANOLA PUBLIC SCHOOLS; RUBY E. MONTOYA, in her individual capacity; GARY F. GREGOR, in his individual capacity. | Defendant<br>Name: Espanola Public Schools<br>Address: 714 Calle Don Diego<br>Espanola, NM 87532 |

**TO THE ABOVE NAMED DEFENDANT(S)**: Take notice that

1.    A lawsuit has been filed against you. A copy of the lawsuit is attached. The Court issued this Summons.

2.    You must respond to this lawsuit in writing. You must file your written response with the Court no later than thirty (30) days from the date you are served with this Summons. (The date you are considered served with the Summons is determined by Rule 1-004 NMRA) The Court's address is listed above.

3.    You must file (in person or by mail) your written response with the Court. When you file your response, you must give or mail a copy to the person who signed the lawsuit.

4.    If you do not respond in writing, the Court may enter judgment against you as requested in the lawsuit.

5.    You are entitled to a jury trial in most types of lawsuits. To ask for a jury trial, you must request one in writing and pay a jury fee.

6.    If you need an interpreter, you must ask for one in writing.

7.    You may wish to consult a lawyer. You may contact the State Bar of New Mexico for help finding a lawyer at www.nmbar.org; 1-800-876-6657; or 1-505-797-6066.

Dated at Santa Fe, New Mexico, this 13th day of March, 2014.

STEPHEN T. PACHECO
CLERK OF THE DISTRICT COURT

BY: _Jill Jekl_
    Deputy

/s/ Carolyn M. "Cammie" Nichols
    CAROLYN M. "CAMMIE" NICHOLS
    BRENDAN K. EGAN
    500 4th Street NW, Suite 400
    Albuquerque, NM 87102
    (505) 243-1443
        cmnichols@rothsteinlaw.com
        bkegan@rothsteinlaw.com

THIS SUMMONS IS ISSUED PURSUANT TO RULE 1-004 OF THE NEW MEXICO
RULES OF CIVIL PROCEDURE FOR DISTRICT COURTS.

**RETURN[1]**

STATE OF NEW MEXICO       )
                                    )ss
COUNTY OF GUADALUPE     )

I, being duly sworn, on oath, state that I am over the age of eighteen (18) years and not a party to this lawsuit, and that I served this summons in _____ county on the _____ day of _____, _____, by delivering a copy of this summons, with a copy of complaint attached, in the following manner:

**(check one box and fill in appropriate blanks)**

[ ]     to the defendant _____ (*used when defendant accepts a copy of summons and complaint or refuses to accept the summons and complaint*)

[ ]     to the defendant by [mail] [courier service] as provided by Rule 1-004 NMRA (*used when service is by mail or commercial courier service*).

After attempting to serve the summons and complaint on the defendant by personal service or by mail or commercial courier service, by delivering a copy of this summons, with a copy of complaint attached, in the following manner:

[ ]     to _____, a person over fifteen (15) years of age and residing at the usual place of abode of defendant _____, (*used when the defendant is not presently at place of abode*) and by mailing by first class mail to the defendant at _____ (*insert defendant's last known mailing address*) a copy of the summons and complaint.

[ ]     to _____, the person apparently in charge at the actual place of business or employment of the defendant and by mailing by first class mail to the defendant at _____ (*insert defendant's business address*) and by mailing the summons and complaint by first class mail to the defendant at _____ (*insert defendant's last known mailing address*).

[ ]     to _____, an agent authorized to receive service of process for defendant _____.

[ ]     to _____, [parent] [guardian] [custodian] [conservator] [guardian ad litem] of defendant _____ (*used when defendant is a minor or an incompetent person*).

[ ]     to _____ (*name of person*), _____, (*title of person authorized to receive service. Use this alternative when the defendant is a corporation or an association subject to a suit under a common name, a land grant board of trustees, the State of New Mexico or any political subdivision*).

Fees: _____

_____
Signature of person making service

_____
Title (*if any*)

Subscribed and sworn to before me this _____ day of _____, _____[2]

_____
Judge, notary or other officer
authorized to administer oaths

_____
Official title

FILED IN MY OFFICE
DISTRICT COURT CLERK
4/1/2014 4:07:03 PM
STEPHEN T. PACHECO
MRN

STATE OF NEW MEXICO
COUNTY OF SANTA FE
FIRST JUDICIAL DISTRICT COURT

K.S., by and through her parents and next friends,
T.S. and A.R.,

     Plaintiff,

vs.                        Case No.  D-101-CV-2014-00491

THE SANTA FE PUBLIC SCHOOLS;
VICKIE L. SEWING, in her individual capacity;
THE ESPANOLA PUBLIC SCHOOLS;
RUBY E. MONTOYA, in her individual capacity;
GARY F. GREGOR, in his individual capacity;

Defendants.

## ACCEPTANCE OF SERVICE

     I HEREBY accept service on behalf of Defendants Ruby E. Montoya and Espanola Public

Schools, of the Summons, Complaint, and Demand for Trial by Jury, in the above-entitled matter.

     Dated:   April 1, 2014

                            JERRY A. WALZ, ESQ.
                            133 Eubank Blvd NE
                            Albuquerque, NM 87123
                            (505) 275-1800
                            jerryawalz@walzandassociates.com

                            *Attorney for Defendants Ruby E. Montoya and*
                            *Espanola Public Schools*

Respectfully submitted,

ROTHSTEIN, DONATELLI, HUGHES,
DAHLSTROM, SCHOENBURG & BIENVENU, LLP

By: _____
CAROLYN M. "CAMMIE" NICHOLS
BRENDAN K. EGAN
MAGGIE H. LANE
500 4th Street, N.W., Suite 400
Albuquerque, NM 87102
(505) 243-1443
*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 1st day of April, 2014, I emailed and mailed a true and

correct copy of the foregoing to the following counsel of record:

Jerry A. Walz, Esq.
133 Eubank Blvd NE
Albuquerque, NM 87123
(505) 275-1800
jerryawalz@walzandassociates.com
*Attorney for Defendants Ruby E. Montoya*
 *and Espanola Public Schools*

HENRY NARVAEZ
Narvaez Law Firm, P.A.
601 Rio Grande Blvd NW
P.O. Box 25967
Albuquerque, NM 87125-0967
(505) 247-1344
hnarvaez@narvaezlawfirm.com
*Attorneys for Defendant Gary F. Gregor*

2

KEVIN M. BROWN
DESIREE GURULE
Brown Law Firm
2901 Juan Tabo Blvd NE, #208
Albuquerque, NM   87112-1885
kevin@brownlawnm.com
desiree@brownlawnm.com
*Attorneys for Vickie L. Sewing*
*and Santa Fe Public Schools*

ROTHSTEIN, DONATELLI, HUGHES,
DAHLSTROM, SCHOENBURG & BIENVENU, LLP

2

FILED IN MY OFFICE
DISTRICT COURT CLERK
4/1/2014 4:24:14 PM
STEPHEN T. PACHECO

ANO

STATE OF NEW MEXICO
COUNTY OF SANTA FE
FIRST JUDICIAL DISTRICT COURT

K.S., by and through her parents and next friends,
T.S. and A.R.,

     Plaintiff,

vs.                               Case No.  D-101-CV-2014-00491

THE SANTA FE PUBLIC SCHOOLS;
VICKIE L. SEWING, in her individual capacity;
THE ESPANOLA PUBLIC SCHOOLS;
RUBY E. MONTOYA, in her individual capacity;
GARY F. GREGOR, in his individual capacity;

Defendants.

## ACCEPTANCE OF SERVICE

     I HEREBY accept service on behalf of Defendant Gary F. Gregor, of the Summons,

Complaint, and Demand for Trial by Jury, in the above-entitled matter.

Dated:    April 1, 2014

                                        Henry F. Narvaez

                                        HENRY NARVAEZ
                                        Narvaez Law Firm, P.A.
                                        601 Rio Grande Blvd NW
                                        P.O. Box 25967
                                        Albuquerque, NM 87125-0967
                                        (505) 247-1344
                                        hnarvaez@narvaezlawfirm.com

                                        *Attorney for Defendant Gary F. Gregor*

Respectfully submitted,

ROTHSTEIN, DONATELLI, HUGHES,
  DAHLSTROM, SCHOENBURG & BIENVENU, LLP

By: _____
    CAROLYN M. "CAMMIE" NICHOLS
    BRENDAN K. EGAN
    MAGGIE H. LANE
    500 4th Street, N.W., Suite 400
    Albuquerque, NM 87102
    (505) 243-1443

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 1st day of April, I emailed and mailed a true and

correct copy of the foregoing to the following counsel of record:

Jerry A. Walz, Esq.
133 Eubank Blvd NE
Albuquerque, NM 87123
(505) 275-1800
jerryawalz@walzandassociates.com
*Attorney for Defendants Ruby E. Montoya*
  *and Espanola Public Schools*

HENRY NARVAEZ
Narvaez Law Firm, P.A.
601 Rio Grande Blvd NW
P.O. Box 25967
Albuquerque, NM 87125-0967
(505) 247-1344
hnarvaez@narvaezlawfirm.com
*Attorneys for Defendant Gary F. Gregor*

2

KEVIN M. BROWN
DESIREE GURULE
Brown Law Firm
2901 Juan Tabo Blvd NE, #208
Albuquerque, NM   87112-1885
kevin@brownlawnm.com
desiree@brownlawnm.com
*Attorneys for Vickie L. Sewing and*
*   Santa Fe Public Schools*

ROTHSTEIN, DONATELLI, HUGHES,
DAHLSTROM, SCHOENBURG & BIENVENU, LLP

3

FILED IN MY OFFICE
DISTRICT COURT CLERK
4/3/2014 3:00:42 PM
STEPHEN T. PACHECO
ANO

**STATE OF NEW MEXICO**
**COUNTY OF SANTA FE**
**FIRST JUDICIAL DISTRICT COURT**

**K.S., by and through her parents and next friends,**
**T.S. and A.R.,**

    **Plaintiff,**

**vs.**                  **Case No.  D-101-CV-2014-00491**

**THE SANTA FE PUBLIC SCHOOLS;**
**VICKIE L. SEWING, in her individual capacity;**
**THE ESPANOLA PUBLIC SCHOOLS;**
**RUBY E. MONTOYA, in her individual capacity;**
**GARY F. GREGOR, in his individual capacity;**

**Defendants.**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 3rd day of April, 2014 Plaintiffs' First Initial

Disclosures were mailed to Defendants Gary F. Gregor, Espanola Public Schools and Ruby E.

Montoya through their counsel of record via regular U.S. Mail, and were mailed to Mr. Brown

and Ms. Gurule as Plaintiffs understand they will be counsel of record for Defendants Vickie

Sewing and Santa Fe Public Schools:

    JERRY A. WALZ
    133 Eubank Blvd NE
    Albuquerque, NM 87123
    (505) 275-1800
    jerryawalz@walzandassociates.com
    *Attorney for Defendants Ruby E. Montoya*
    *and Espanola Public Schools*

    HENRY NARVAEZ
    Narvaez Law Firm, P.A.
    601 Rio Grande Blvd NW
    P.O. Box 25967
    Albuquerque, NM 87125-0967

(505) 247-1344
hnarvaez@narvaezlawfirm.com
*Attorneys for Defendant Gary F. Gregor*

KEVIN M. BROWN
DESIREE GURULE
Brown Law Firm
2901 Juan Tabo Blvd NE, #208
Albuquerque, NM  87112-1885
kevin@brownlawnm.com
desiree@brownlawnm.com
*Attorneys for Vickie L. Sewing*
 *and Santa Fe Public Schools*

Respectfully submitted,

/s/ Carolyn M. "Cammie" Nichols 4/3/14
CAROLYN M. "CAMMIE" NICHOLS
BRENDAN K. EGAN
Rothstein, Donatelli, Hughes, Dahlstrom,
 Schoenburg & Bienvenu, LLP
500 4th Street NW, Suite 400
Albuquerque, NM  87102
505-243-1443
cnichols@rothsteinlaw.com
bkegan@rothsteinlaw.com

*Attorney for Plaintiffs*

I HEREBY CERTIFY that on the 4th day of April, 2014, I filed the foregoing pleading electronically through the efile system for the State of New Mexico, which caused counsel for Defendants to be served by electronic means, as more fully reflected on the Notice of Electronic Filing.

/s/ Carolyn M. "Cammie" Nichols 4/3/14
ROTHSTEIN, DONATELLI, HUGHES
DAHLSTROM, SCHOENBURG & BIENVENU, LLP