145.   VS remained in Defendant Gregor's class, but after her mother reported Defendant Gregor's misconduct to Defendant Montoya, Defendant Gregor never spoke to VS again.

### B.   DEFENDANT GREGOR'S SEXUAL ABUSE OF STUDENT NH

146.   During the first month of the 2007-2008 school year, Defendant Gregor began touching NH (described as Student A during the PED hearing).

147.   NH told her friends about it, and three of them said "he did the same thing to them."

148.   Defendant Gregor told NH to stay in the classroom after the bell rang, and kept her there, alone with him. He asked NH to go into the closet with him. He said he wanted to kiss her. She said nothing, but did not go into the closet with him.

149.   Knowing she was in there alone with him, her friends would wait for her outside of the classroom door.

150.   When Defendant Gregor touched NH he told her not to tell anybody, or else. She felt scared, because it was a threat.

151.   When NH wore skirts, Defendant Gregor would touch her on her inner thighs and, apparently, her vagina.

152.   She stopped wearing skirts, but Defendant Gregor would put his hands inside her pants.

153.   NH saw him do these things to her three friends as well.

154.   Defendant Gregor gave NH lots of teddy bears, and art sets, and he gave teddy bears and art sets to the other "council" members, too.

24

155.   Defendant Gregor called NH on the telephone, once or sometimes twice a day, using her mother's cellular phone.

156.   Defendant Gregor came to her home, asked her mother if he could take NH to the store with him and buy her a cellular phone of her own, and NH's mother said "yes."

157.   Later that school year, Defendant Gregor "borrowed" her phone from her and never gave it back.

158.   Defendant Gregor invited NH to spend the night at his home, and he would ask her what she was going to wear.

159.   She slept over at his house, with her sister, and observed Defendant Gregor (who did not have any children) had a room in his home decorated as if it was a little girl's room, with a girls' blanket on the bed, along with heart-shaped pillows and teddy bears, and with a closet full of girls' toys.

160.   Defendant Gregor told NH (repeatedly), "I love you," and this made NH uncomfortable.

161.   Almost all of the students in Defendant Gregor's class knew what was happening to NH and the other three girls.

162.   At some point during the school year, one of the students reported what was happening to Defendant Montoya, according to NH, but nothing happened.

163.   Defendant Montoya never came into the classroom to investigate, and she never asked NH to come to her office, or anywhere else, to ask her any questions.

164.   Nobody ever asked NH about any of this until NH was in the seventh grade.

25

165. According to the mother of NH, Defendant Gregor would call her daughter and speak to her for fifteen or twenty minutes, while NH's mother would stand outside of her daughter's bedroom door and listen.

166. Also, according to the mother of NH, all of her daughters (including NH) spent the night at Defendant Gregor's home twice.

167. When Defendant Montoya was asked whether any parent complained about the fact that Defendant Gregor had NH (and her sisters) stay at his house overnight, Defendant Montoya replied: "No. I saw the children there myself....It was one Saturday....They were there. The children were there."

168. Defendant Montoya took no action whatsoever upon observing the children, including NH, at Defendant Gregor's home on the weekend.

## C. DEFENDANT GREGOR'S SEXUAL ABUSE OF PLAINTIFF KS

169. Plaintiff KS (described as Student B during the PED hearing) was first touched by Defendant Gregor, during her fourth grade year in 2007-2008, after she became designated as the class secretary and was assigned the seat next to Defendant Gregor.

170. Prior to that, she had been the president or the vice-president, but it was when she was designated secretary, in or near late September of 2007, that she had to sit right next to him, and he began to touch her.

171. Defendant Gregor rotated the positions of his female students every month, from one officer to another, so the girl who was secretary would be seated next to Defendant Gregor for about one month, continuously.

172. Plaintiff KS was the secretary three different times that year, or more, so sat next to Defendant Gregor for three entire months, or more.

173.   Defendant Gregor touched Plaintiff KS every single day that she was seated next to him.

174.   He touched both her legs, inside her thighs, and, apparently, her vagina; he put his thumb inside her pants to touch her on her bare skin; he put his hand up her skirt (when she wore a skirt) to touch her on her bare skin; he kissed or licked her ear; and he would hold her hands.

175.   Once when Plaintiff KS wore a skirt, and he put his hands up underneath it and pulled it up in order to touch her bare skin (apparently her inner thigh and her vagina), she told him she did not want to be the secretary, or any other officer, any longer, but he forced her to stay seated where she was, because, he told her, there were no more desks in the classroom.

176.   Once Defendant Gregor kept Plaintiff KS inside the classroom with him when all the other students left for recess.

177.   Her friends told her, before they left, that they would be waiting by the two windows.

178.   Defendant Gregor whispered in Plaintiff KS's ear and licked or kissed it while he had her alone in his classroom.

179.   One of Plaintiff KS's friends, VS, ran into the classroom and said that the principal wanted to see Plaintiff KS.

180.   VS used this subterfuge in order to get Plaintiff KS out of the room.

181.   Plaintiff KS saw Defendant Gregor putting his thumb inside the pants of VS, under the table, the same way he put his thumb inside the pants of Plaintiff KS.

27

182.    Defendant Gregor touched Plaintiff KS in the manner she described, by her estimate, between three-hundred and five-hundred times during the 2007-2008 school year.

183.    Plaintiff KS was scared to tell her parents. She was frightened by the way he touched her, and she was frightened by the way he reacted when she asked to be moved from the secretary position.

184.    Defendant Gregor punished Plaintiff KS when she asked to be moved by giving her a 'B' instead of an 'A' on a math test, marking a question wrong which she actually answered correctly, and which she knew she answered correctly. She checked her answer with a friend, who had the same answer, and it was marked as correct. When she tried to point it out to him, he told her she was wrong.

185.    Sometimes Defendant Gregor, when he had Plaintiff KS close to him, would put a large book up, balanced on its spine, so that nobody could see them behind the book, and then talk directly into her ear, which made her uncomfortable.

186.    Plaintiff KS recalls that one of her friends, one of the other girls being touched by Defendant Gregor, went to Defendant Montoya's office to report the touching. She would make up an excuse to tell Defendant Gregor, a false reason for going to Defendant Montoya's office, then would go to Defendant Montoya and tell her about the touching. Plaintiff KS recalls this friend telling them that she was reporting the touching, during the 2007-2008 school year, to Defendant Montoya.

187.    This friend reported that she told Defendant Montoya, during the 2007-2008 school year, that Defendant Gregor had touched her inappropriately and was touching other female students inappropriately, all of whom she identified for Defendant Montoya.

28

188.   Defendant Montoya never called any of them in to her office to ask them about these reports, nor did she take any other action.

189.   Defendant Gregor asked Plaintiff KS to come over to his house to spend the night. He would ask her this at least three or four times each week, and he would give her pens which had his name and telephone number on them. She never went to his house.

190.   Plaintiff KS's father came to eat lunch with her many times during the 2007-2008 school year.

191.   On one occasion, Defendant Gregor slid her chair away from him when her father walked into the classroom. He also did that on one occasion when her mother walked into the classroom.

192.   Defendant Gregor gave Plaintiff KS gifts, including a large teddy bear holding a basketball, and coloring sets.

193.   Defendant Gregor's wife, Judith, was sometimes in his classroom. One time she saw Defendant Gregor touch Plaintiff KS, on her inner thigh, and she patted Defendant Gregor on the back and said something to him. Defendant Gregor whispered something to her, and she began to cry.

194.   At some point during the 2007-2008 school year, the students in Defendant Gregor's class "purposely and strategically elected all boys as class officers."

195.   During lunch recess, the girls who had been victimized went to the boys in the class and asked them to elect all boys, and the boys went along with the plan.

196.   Defendant Gregor refused to honor that result, claiming it was not fair, that some girls had to be elected too, and held another election.

29

197.    There were times when the only class members elected as officers were girls, but Defendant Gregor never refused to honor those results.

## D.    DEFENDANT GREGOR'S ABUSE IS REPORTED TO LAW ENFORCEMENT

198.    During the 2008-2009 school year, the year after KS had left Defendant Gregor's class, one of Plaintiff KS's friends had a younger sister in Defendant Gregor's class. Plaintiff KS found out that Defendant Gregor was doing the same things to that girl that he had done to her.

199.    Plaintiff KS told her mother and father what had happened to her when she found out it was now happening to her friend's sister.

200.    Plaintiff KS's father filed a report with law enforcement on April 14, 2009, the day after KS informed him of what had happened to her. He went to the police instead of the school because he did not want politics to get in the way of the investigation.

201.    Detective Bryan L. Martinez of the Espanola Police Department arranged for a Safehouse interview of KS on May 12, 2009, after which he reported the allegations against Defendant Gregor to Defendant EPS, through Assistant Superintendent Valdez and Superintendent Cockerham.

## IV.    POST-REPORTING BEHAVIOR OF DEFENDANT MONTOYA AND DEFENDANT EPS

202.    Defendant Gregor was not placed on administrative leave by Defendant EPS until May 15, 2009. Defendant EPS took no investigative action at that time, and made no report to the PED.

203.    On January 12, 2010, Defendant Montoya signed the "Superintendent's Recommendation Form for Continuing Licensure" on behalf of Defendant Gregor.

30

204.    Superintendent of Defendant EPS, Janette Archuleta, signed the same form on March 10, 2010, verifying Defendant Gregor's qualifications and recommending him for the renewal of his teaching license.

205.    Defendant Gregor filed an application for a renewal of his teaching license on May 27, 2010, with PED.

206.    In this application, he admitted that he had, in the past:

a.    An adverse action taken against any certificate of license in New Mexico or any other state;

b.    Been disciplined, reprimanded, suspended or discharged, from any employment because of allegations of misconduct;

c.    Resigned, entered into a settlement agreement, or otherwise left employment following an allegation of misconduct; and

d.    Been fingerprinted as a result of any arrest or detainment for any crime or violation of the law.

207.    Defendant Gregor attached an explanation to his application, stating that he was arrested in 1994 for 'inappropriate conduct' towards two girls and denying that any inappropriate conduct occurred, claiming the case was dismissed due to 'lack of evidence,' and that the girls' testimony before the Utah licensing agency 'showed deception.'

208.    Months after agreeing to recommend to the PED that it renew Defendant Gregor's license, Defendant EPS finally began its own investigation, in May of 2010, into the allegations of sexual abuse against Defendant Gregor for which Defendant EPS had placed him on administrative leave approximately one year prior.

31

209.    During that investigation, Defendant Montoya recalled:

a.      receiving a complaint from a parent about the manner in which Defendant
        Gregor restrained one of his female students on the playground during school
        year 2007-2008;

b.      hearing concerns that Defendant Gregor was having students sleep over at his
        house during the school year 2007-2008; and

c.      discussing with Defendant Gregor a complaint she had received concerning his
        inappropriate discussions with students in his classroom during the school year
        2007-2008 about older men having young and multiple wives.

210.    During that investigation, Defendant Gregor stated that Defendant Montoya
had "always been very supportive of him."

211.    With respect to his practice of having students sit at his desk next to him, he
informed the investigator that "Ms. Montoya fully supports me."

212.    Defendant Montoya testified that she did not know why Defendant Gregor was
placed on administrative leave in May of 2009.

213.    Rather than renewing Defendant Gregor's license, PED filed a Notice of
Contemplated Action against Defendant Gregor in August of 2010, seeking to refuse to
renew Defendant Gregor's license.

214.    PED ultimately prevailed, and Defendant Gregor's license to teach in New
Mexico has never been renewed.

32

## COUNT I

**(Plaintiff's Claims Against Defendant Gregor Under 42 U.S.C. § 1983)**

215. Plaintiff incorporates all of the preceding paragraphs as if fully stated herein.

216. Plaintiff KS has a right to bodily integrity under the Fourteenth Amendment to the U.S. Constitution.

217. Defendant Gregor deprived KS of her substantive due process right to bodily integrity under the Fourteenth Amendment to the U.S. Constitution.

218. Defendant Gregor deprived KS of her Fourteenth Amendment right to substantive due process by physically, sexually, mentally, and emotionally abusing her, repeatedly.

219. As a state actor, Defendant Gregor carried out, in an impermissible manner, the functions assigned to him by Defendant EPS.

220. Defendant Gregor engaged in actions and omissions which were egregious, outrageous, or fraught with unreasonable risk. Such actions harmed KS, who was a member of a particular, limited, closed group, namely, female students at Fairview Elementary School.

221. Defendant Gregor was not involved in a situation demanding split-second judgments. Instead, Defendant Gregor had time for thoughtful deliberation.

222. Defendant Gregor's conduct shocks the conscience.

223. Defendant Gregor's conduct was a direct and proximate cause of KS' injuries and resultant damages.

224. Defendant Gregor's conduct was intentional, reckless, willful, and done with callous disregard for KS' constitutional rights. As Defendant Gregor's conduct was

33

motivated by malice or evil intent, Plaintiff is entitled to recover awards of punitive and exemplary damages against Defendant Gregor in an amount to be determined at trial.

225. The constitutional rights of AS violated by Defendant Gregor were clearly established prior to Defendant Gregor's arrival in the State of New Mexico, and any reasonable school administrator, teacher, or staff member would have been aware that the conduct described herein would violate KS' constitutional rights.

## COUNT II

### (Plaintiff's Claim Against Defendants SFPS and EPS Under 42 U.S.C. § 1983)

226. Plaintiff incorporates all of the preceding paragraphs as if fully stated herein.

227. Defendants SFPS and EPS had a duty to exercise due care in the supervision of their staff, teachers, and contractors. In addition, Defendants SFPS and EPS had a duty to properly screen, license, hire, train, monitor, supervise, and discipline staff, teachers, and contractors employed or licensed by Defendants.

228. Defendants SFPS and EPS failed to adequately screen Defendant Gregor prior to his licensing and employment, and failed to take necessary actions with respect to his licensure and employment during his tenure as a teacher, licensed and employed by Defendants. Defendants SFPS and EPS also failed to adequately train and supervise Defendant Gregor during his tenure as a teacher licensed and employed by Defendants.

229. These failures caused KS to be subjected to the physical, sexual, mental, and emotional abuse described above. Defendants SFPS and EPS, because they knew or should have known of the predatory actions of Defendant Gregor prior to and during his employment with the Defendants, were deliberately indifferent to the constitutional rights of

34

AS as exemplified by their utter failure to protect AS, causing AS to suffer injuries and resultant damages.

230. The actions and deliberate omissions of Defendants SFPS and EPS were the result of a custom or policy which permitted or condoned (reflecting deliberate indifference to AS and other female elementary school students) Defendant Gregor's physical, sexual, mental, and emotional abuse of AS.

231. As a consequence of Defendants SFPS and EPS's defective licensing and hiring, defective supervision, and custom or policy, AS has been deprived under color of law of the rights, privileges, and immunities secured by the Constitution and the laws of the United States, including the right under the Fourteenth Amendment to be free from intrusions into her bodily integrity.

232. As a direct and proximate consequence of the deprivation of her rights, AS suffered the resultant injuries and damages described herein.

## COUNT III

### (Plaintiff's Claims Against Defendant Sewing Under 42 U.S.C. § 1983)

233. Plaintiff incorporates all of the preceding paragraphs as if fully stated herein.

234. Plaintiff KS has a right to bodily integrity under the Fourteenth Amendment to the U.S. Constitution.

235. Defendant Sewing deprived KS of her substantive due process right to bodily integrity under the Fourteenth Amendment to the U.S. Constitution.

236. Defendant Sewing deprived KS of her Fourteenth Amendment right to substantive due process by failing to act to report Defendant Gregor's physical and sexual abuse of female students to law enforcement or to CYFD, thereby enabling Defendant

35

Gregor to continue to seek employment as a teacher and to continue to physically, sexually, mentally, and emotionally abusing female students, including KS, repeatedly.

237. As a state actor, Defendant Sewing carried out, in an impermissible manner, the functions assigned to her by Defendant SFPS.

238. Defendant Sewing engaged in actions and omissions which were egregious, outrageous, or fraught with unreasonable risk. Such actions harmed KS, who was a member of a particular, limited, closed group, namely, female students at Fairview Elementary School.

239. Defendant Sewing was not involved in a situation demanding split-second judgments. Instead, Defendant Sewing had time for thoughtful deliberation.

240. Defendant Sewing's conduct shocks the conscience.

241. Defendant Sewing's conduct was a direct and proximate cause of KS' injuries and resultant damages.

242. Defendant Sewing's conduct was intentional, reckless, willful, and done with callous disregard for KS' constitutional rights. As such, Plaintiff is entitled to recover awards of punitive and exemplary damages against Defendant Sewing in an amount to be determined at trial.

243. The constitutional rights of AS violated by Defendant Sewing were clearly established prior to Defendant Gregor's arrival in the State of New Mexico, and any reasonable school administrator, teacher, or staff member would have been aware that the conduct described herein would violate KS' constitutional rights.

36

## COUNT IV

### (Plaintiff's Claims Against Defendant Montoya Under 42 U.S.C. § 1983)

244.   Plaintiff incorporates all of the preceding paragraphs as if fully stated herein.

245.   Plaintiff KS has a right to bodily integrity under the Fourteenth Amendment to the U.S. Constitution.

246.   Defendant Montoya deprived KS of her substantive due process right to bodily integrity under the Fourteenth Amendment to the U.S. Constitution.

247.   Defendant Montoya deprived KS of her Fourteenth Amendment right to substantive due process by purposefully protecting Defendant Gregor; by not taking action to stop his sexual abuse of female students after having actual knowledge of inappropriate behavior, both reported to her and actually observed by her; and by failing to report Defendant Gregor's inappropriate conduct and sexual abuse of female students to law enforcement or to CYFD; thereby enabling Defendant Gregor to continue to sexually, physically, mentally and emotionally abuse female students, repeatedly, including Plaintiff KS, at Fairview Elementary School.

248.   As a state actor, Defendant Montoya carried out, in an impermissible manner, the functions assigned to her by Defendant EPS.

249.   Defendant Montoya engaged in actions and omissions which were egregious, outrageous, or fraught with unreasonable risk. Such actions harmed KS, who was a member of a particular, limited, closed group, namely, female students at Fairview Elementary School.

250.   Defendant Montoya was not involved in a situation demanding split-second judgments. Instead, Defendant Montoya had time for thoughtful deliberation.

251.    Defendant Montoya's conduct shocks the conscience.

252.    Defendant Montoya's conduct was a direct and proximate cause of KS' injuries and resultant damages.

253.    Defendant Montoya's conduct was intentional, reckless, willful, and done with callous disregard for KS' constitutional rights. As such, Plaintiff is entitled to recover awards of punitive and exemplary damages against Defendant Montoya in an amount to be determined at trial.

254.    The constitutional rights of AS violated by Defendant Montoya were clearly established prior to Defendant Gregor's arrival in the State of New Mexico, and any reasonable school administrator, teacher, or staff member would have been aware that the conduct described herein would violate KS' constitutional rights.

## COUNT V

### (Plaintiff's Claims Against Defendant EPS Under Title IX, 20 U.S.C. §§ 1681-1688, for Sexual Abuse)

255.    Plaintiff incorporates all of the preceding paragraphs as if fully stated herein.

256.    At all times material hereto, AS was a student at Fairview Elementary School, owned, controlled, operated, and administered by Defendant EPS.

257.    The sexual abuse perpetrated by Defendant Gregor against AS was so severe, pervasive, and objectively offensive that it deprived her of access to the educational opportunities or benefits provided by the school.

258.    Defendant EPS had actual or constructive knowledge that Defendant Gregor was sexually harassing and abusing female students, including AS.

38

259. Defendant EPS was deliberately indifferent to the inappropriate relationship and illegal conduct that Defendant Gregor imposed upon AS.

260. Defendant EPS had the authority and power to remedy the hostile environment facing AS, during the entire school year during which she was subjected to Defendant Gregor's sexual abuse, but failed to do so.

261. Upon information and belief, Defendant EPS had not provided adequate instruction or education to Fairview Elementary School students, faculty, or staff about sexual abuse, or enforced any policies to prohibit or discourage the sexually abusive hostile environment facing KS at the hands of Defendant Gregor.

262. Defendant EPS acted with deliberate indifference and recklessness with respect to the sexually abusive hostile environment facing KS.

263. Upon information and belief, at all times material hereto, Defendant EPS received federal funding and financial assistance.

264. Defendant EPS had a duty under Title IX, 20 U.S.C. § 1681, to provide an educational environment in which no student, including KS, should be excluded from education, denied the benefits of education, or discriminated against on the basis of sex.

265. At all times material hereto, Defendant EPS, acting through and as officials, administrators, and employees, maintained customs and policies which permitted or condoned sexual abuse of students by staff and teachers during school hours and school activities.

266. As a result of these customs and policies, KS was subjected to invasive, severe, and objectively offensive sexual, physical, emotional, and mental abuse by Defendant Gregor during school hours and official school activities. The sexual assaults and batteries

39

upon KS were the natural and inevitable consequence of effectively unsupervised classroom and on-campus activities.

267. Upon information and belief, Defendant EPS failed to properly and adequately instruct administrators, supervisors, employees, and contractors as to how to respond to inappropriate behavior, including sexual abuse, by EPS employees towards students enrolled in Fairview Elementary School. Defendant EPS has not developed or promulgated adequate polices addressing issues of sexual abuse by a teacher or staff member against a student or students. The deliberate indifference of Defendant EPS, and its officials, administrators, and employees, to the acts of sexual abuse, as well as its failure to adopt, publish, and inculcate appropriate policies concerning such abuse and harassment, deprived KS of benefits under Title IX, and subjected her to discrimination on the basis of her sex, female, in violation of Title IX. It further caused Plaintiff to be excluded from participation in, denied the benefits of, and be subjected to discrimination on the basis of sex under an education program or activity receiving federal financial assistance.

268. As a direct and proximate consequence of the discrimination and violation of Title IX, KS suffered the resultant injuries and damages described herein.

## COUNT VI

### (Plaintiff's Claim Against Defendant EPS Under the New Mexico Tort Claims Act, NMSA 1978, § 41-4-6)

269. Plaintiff incorporates all of the preceding paragraphs as if fully stated herein.

270. At all times material hereto, Defendant EPS operated Fairview Elementary School, which KS attended, as well as other public schools in Espanola.

271.   Defendants EPS and Gregor, who was acting in the scope of his employment
with Defendant EPS, had the duty in any activity actually undertaken to exercise for the
safety of others, including KS, that care ordinarily exercised by a reasonable, prudent, and
qualified person in their position in light of the nature of what was being done.

272.   Defendant EPS had a duty to KS to exercise reasonable care in the
maintenance and operation of Fairview Elementary School and the other Espanola public
schools, and to keep all of their educational campuses and premises in a safe condition.

273.   Defendant EPS had a further duty to supervise its employees, contractors, and
agents in order to ensure that they did not act negligently in the operation or maintenance of
their buildings.

274.   Supervision includes the obligation to adopt and inculcate reasonable and
proper operational policies and procedures concerning the safe operation of Defendant EPS'
educational facilities, including appropriate policies and procedures concerning employee
training, adequate monitoring and regulation of their employee's activities, and other such
policies and procedures as are reasonably necessary to ensure adequate safety in the
operation and maintenance of Defendant EPS' educational facilities, such as Fairview
Elementary School, in order to avoid unsafe, dangerous, or defective conditions on the
premises.

275.   Defendant EPS, in maintaining and operating its premises in a safe condition,
has a duty to supervise its teachers and other employees and to protect its minor students,
including KS, from sexual assaults, batteries, abuse, or harassment from other persons,
including Defendant Gregor.

41

276. Defendant EPS, acting through its administrators, supervisors, employees, and contractors, had the duty to adopt and implement proper safety policies and procedures to protect its minor students, including KS, from sexual assaults, batteries, abuse, or harassment from other persons, including Defendant Gregor.

277. Defendant EPS, acting through its administrators, supervisors, employees, and contractors, had a duty to investigate and act upon any suspicions or reports of improper sexual assaults, batteries, abuse, or harassment by EPS employees or agents against any student attending Defendant EPS' schools.

278. Defendant EPS failed to exercise reasonable care in the maintenance of the premises in a safe condition, because it repeatedly ignored the warning signs and the readily observable (and reported) inappropriate behavior of Defendant Gregor toward female students, including KS.

279. Defendant EPS failed to use ordinary care to protect KS from the danger posed to her by Defendant Gregor.

280. Defendant EPS breached its duties of care towards KS.

281. Defendant EPS further breached its duties of care by failing to properly screen, hire, train, monitor, supervise and discipline employees of Fairview Elementary School, such as Defendant Gregor, as well as by failing to enact or enforce appropriate policies, procedures and protocols concerning safety in student-teacher interactions, and by otherwise failing to take appropriate and reasonable supervisory actions to correct the potential problems and prevent the harm and injuries incurred by KS.

42

282. Defendant EPS is jointly and severally liable for all injuries and damages caused KS by the actions of its administrators and employees, including Defendant Gregor, pursuant to the doctrines of vicarious liability and *respondeat superior*.

283. The above-described conduct of Defendant EPS was a direct and proximate cause of the injuries to KS and the resultant damages described herein.

## COUNT VII

### (Plaintiff's Common Law Battery Claim Against Defendant Gregor)

284. Plaintiff incorporates all of the preceding paragraphs as if fully stated herein.

285. The conduct of Defendant Gregor, the sexual abuse described in this complaint, constituted battery upon KS.

286. Defendant Gregor had a duty to refrain from engaging in battery upon KS.

287. Defendant Gregor breached this duty by engaging in the conduct and performing the actions he perpetrated upon KS, as described in this complaint.

288. The conduct of Defendant Gregor was, at a minimum, negligent, willful, malicious, grossly negligent, or indifferent.

289. As a direct and proximate result of the actions of Defendant Gregor, KS suffered repeated batteries which were the cause of the injuries and resultant damages described herein.

## COUNT VIII

### (Plaintiff's Common Law Negligence Per Se Claim Against Defendant Gregor)

290. Plaintiff incorporates all of the preceding paragraphs as if fully stated herein.

291. There were in force at the time of the events described herein statutes which provided that it was a crime to commit criminal sexual contact of a minor or to engage in

43

sexual exploitation of a minor. The conduct of Defendant Gregor, described herein, violated

these statutes. These statutory violations were neither excused nor justified.

292.    The conduct on the part of Defendant Gregor constituted negligence per se.

293.    As a direct and proximate result of the negligence per se of Defendant Gregor,

KS suffered the injuries and resultant damages described herein.

## COUNT IX

### (Plaintiff's Common Law Intentional Infliction of Emotional Distress/Outrage Against Defendant Gregor)

294.    Plaintiff incorporates all of the preceding paragraphs as if fully stated herein.

295.    The conduct of Defendant Gregor, described above, was intentional or in

reckless disregard of KS and her well-being.

296.    As a result of the conduct of Defendant Gregor, KS' mental distress was

extreme and severe.

297.    As a direct and proximate result of the actions of Defendant Gregor, KS

suffered severe emotional distress as well as the injuries and damages described herein.

## COUNT X

### (Plaintiff's Common Law Negligence Per Se Claim Against Defendants Sewing and Montoya)

298.    Plaintiff incorporates all of the preceding paragraphs as if fully stated herein.

299.    There was in force at the time of the events described herein a statute which

provided that it was a crime for certain persons, including school officials, with knowledge

or reasonable suspicion that a child is abused to fail report that information to law

enforcement or to CYFD. The conduct of Defendants Sewing and Montoya, described

herein, violated these statutes. These statutory violations were neither excused nor justified.

300.    The conduct on the part of Defendants Sewing and Montoya constituted negligence per se.

301.    As a direct and proximate result of the negligence per se of Defendants Sewing and Montoya, KS suffered the injuries and resultant damages described herein.

## PRAYER FOR RELIEF

302.    Plaintiff incorporates all of the preceding paragraphs as if fully stated herein.

303.    As a direct and proximate result of the wrongful and unlawful acts and omissions of all Defendants, as described above, KS was injured and has suffered and continues to suffer damages, including, but not limited to: severe emotional distress, anguish, suffering, humiliation, psychological injuries, indignities, loss of enjoyment of life, deprivation of constitutional rights, invasion of bodily integrity, and other incidental, consequential, and special damages.

304.    As a result of the above-described damages and injuries, Plaintiff KS is entitled to recover an award of full compensatory damages against all Defendants in amounts to be determined at the trial of this cause.

305.    Plaintiff KS requests damages in an amount sufficient to compensate her for all injuries and harm she suffered, as well as punitive damages as provided by law, along with costs of this action, pre- and post- judgment interest as provided by law, reasonable attorneys' fees as provided by law, and such other and further relief as proves just.

306.    Plaintiff KS requests a trial by jury on all issues so triable.

45

Respectfully submitted,

ROTHSTEIN, DONATELLI, HUGHES,
 DAHLSTROM, SCHOENBURG & BIENVENU, LLP

/s/ Carolyn M. "Cammie" Nichols 2/27/2014
CAROLYN M. "CAMMIE" NICHOLS
BRENDAN K. EGAN
500 4th St., NW, Suite 400
Albuquerque, New Mexico 87102
(505) 243-1443
cmnichols@rothsteinlaw.com
bkegan@rothsteinlaw.com

*Attorneys for Plaintiff KS*

46

## SUMMONS

| | |
|---|---|
| District Court: FIRST JUDICIAL<br>Santa Fe County, New Mexico<br>Court Address:<br>Post Office Box 2268 / 100 S. Catron<br>Santa Fe, New Mexico  87504 / 87501<br>Court Telephone No.: 505-455-8250 | Case Number: D-101-CV-2014-00491<br><br>Assigned Judge: Sarah M. Singleton |
| Plaintiff(s):  K.S., by and through her parents<br>and next friends, T.S. and A.R.,<br>v.<br>Defendant(s):     THE  SANTA  FE  PUBLIC<br>SCHOOLS;  VICKIE  L.  SEWING,  in  her<br>individual capacity; THE ESPANOLA PUBLIC<br>SCHOOLS;  RUBY  E.  MONTOYA,  in  her<br>individual capacity; GARY F. GREGOR, in his<br>individual capacity. | Defendant<br>Name:     Espanola Public Schools<br>Address: 714 Calle Don Diego<br>            Espanola, NM 87532 |

**TO THE ABOVE NAMED DEFENDANT(S)**: Take notice that

1.      A lawsuit has been filed against you.  A copy of the lawsuit is attached.  The Court issued this Summons.

2.      You must respond to this lawsuit in writing.  You must file your written response with the Court no later than thirty (30) days from the date you are served with this Summons.  (The date you are considered served with the Summons is determined by Rule 1-004 NMRA)  The Court's address is listed above.

3.      You must file (in person or by mail) your written response with the Court.  When you file your response, you must give or mail a copy to the person who signed the lawsuit.

4.      If you do not respond in writing, the Court may enter judgment against you as requested in the lawsuit.

5.      You are entitled to a jury trial in most types of lawsuits.  To ask for a jury trial, you must request one in writing and pay a jury fee.

6.      If you need an interpreter, you must ask for one in writing.

7.      You may wish to consult a lawyer.  You may contact the State Bar of New Mexico for help finding a lawyer at www.nmbar.org; 1-800-876-6657; or 1-505-797-6066.

Dated at Santa Fe, New Mexico, this 13th day of March, 2014.



STEPHEN T. PACHECO
CLERK OF THE DISTRICT COURT

BY: _____
      Deputy

                          /s/ Carolyn M. "Cammie" Nichols
                          CAROLYN M. "CAMMIE" NICHOLS
                          BRENDAN K. EGAN
                          500 4th Street NW, Suite 400
                          Albuquerque, NM 87102
                          (505) 243-1443
                            cmnichols@rothsteinlaw.com
                            bkegan@rothsteinlaw.com

THIS SUMMONS IS ISSUED PURSUANT TO RULE 1-004 OF THE NEW MEXICO
RULES OF CIVIL PROCEDURE FOR DISTRICT COURTS.

**RETURN[1]**

STATE OF NEW MEXICO )
                         )ss
COUNTY OF GUADALUPE )

I, being duly sworn, on oath, state that I am over the age of eighteen (18) years and not a party to this lawsuit, and that I served this summons in _____ county on the _____ day of _____, _____, by delivering a copy of this summons, with a copy of complaint attached, in the following manner:

**(check one box and fill in appropriate blanks)**

[ ]    to the defendant _____ (*used when defendant accepts a copy of summons and complaint or refuses to accept the summons and complaint*)

[ ]    to the defendant by [mail] [courier service] as provided by Rule 1-004 NMRA (*used when service is by mail or commercial courier service*).

After attempting to serve the summons and complaint on the defendant by personal service or by mail or commercial courier service, by delivering a copy of this summons, with a copy of complaint attached, in the following manner:

[ ]    to _____, a person over fifteen (15) years of age and residing at the usual place of abode of defendant _____, (*used when the defendant is not presently at place of abode*) and by mailing by first class mail to the defendant at _____ (*insert defendant's last known mailing address*) a copy of the summons and complaint.

[ ]    to _____, the person apparently in charge at the actual place of business or employment of the defendant and by mailing by first class mail to the defendant at _____ (*insert defendant's business address*) and by mailing the summons and complaint by first class mail to the defendant at _____ (*insert defendant's last known mailing address*).

[ ]    to _____, an agent authorized to receive service of process for defendant _____.

[ ]    to _____, [parent] [guardian] [custodian] [conservator] [guardian ad litem] of defendant _____ (*used when defendant is a minor or an incompetent person*).

[ ]    to _____ (*name of person*), _____, (*title of person authorized to receive service. Use this alternative when the defendant is a corporation or an association subject to a suit under a common name, a land grant board of trustees, the State of New Mexico or any political subdivision*).

Fees: _____

_____
Signature of person making service

_____
Title (*if any*)

Subscribed and sworn to before me this _____ day of _____, _____[2]

_____
Judge, notary or other officer
authorized to administer oaths

_____
Official title

## SUMMONS

| | |
|---|---|
| District Court: FIRST JUDICIAL<br>Santa Fe County, New Mexico<br>Court Address:<br>Post Office Box 2268 / 100 S. Catron<br>Santa Fe, New Mexico 87504 / 87501<br>Court Telephone No.: 505-455-8250 | Case Number: D-101-CV-2014-00491<br><br>Assigned Judge: Sarah M. Singleton |
| Plaintiff(s): K.S., by and through her parents<br>and next friends, T.S. and A.R.,<br>v.<br>Defendant(s): THE SANTA FE PUBLIC<br>SCHOOLS; VICKIE L. SEWING, in her<br>individual capacity; THE ESPANOLA PUBLIC<br>SCHOOLS; RUBY E. MONTOYA, in her<br>individual capacity; GARY F. GREGOR, in his<br>individual capacity. | Defendant<br>Name: Ruby E. Montoya<br>Address: 853 S. 3rd Street<br>Santa Rosa, NM 88435 |

**TO THE ABOVE NAMED DEFENDANT(S)**: Take notice that

1.     A lawsuit has been filed against you. A copy of the lawsuit is attached. The Court issued this Summons.

2.     You must respond to this lawsuit in writing. You must file your written response with the Court no later than thirty (30) days from the date you are served with this Summons. (The date you are considered served with the Summons is determined by Rule 1-004 NMRA) The Court's address is listed above.

3.     You must file (in person or by mail) your written response with the Court. When you file your response, you must give or mail a copy to the person who signed the lawsuit.

4.     If you do not respond in writing, the Court may enter judgment against you as requested in the lawsuit.

5.     You are entitled to a jury trial in most types of lawsuits. To ask for a jury trial, you must request one in writing and pay a jury fee.

6.     If you need an interpreter, you must ask for one in writing.

7.     You may wish to consult a lawyer. You may contact the State Bar of New Mexico for help finding a lawyer at www.nmbar.org; 1-800-876-6657; or 1-505-797-6066.

Dated at Santa Fe, New Mexico, this 13th day of March, 2014.

STEPHEN T. PACHECO
CLERK OF THE DISTRICT COURT

BY: _____
          Deputy

/s/ Carolyn M. "Cammie" Nichols
       CAROLYN M. "CAMMIE" NICHOLS
       BRENDAN K. EGAN
       500 4th Street NW, Suite 400
Albuquerque, NM 87102
       (505) 243-1443
            cmnichols@rothsteinlaw.com
            bkegan@rothsteinlaw.com

THIS SUMMONS IS ISSUED PURSUANT TO RULE 1-004 OF THE NEW MEXICO
RULES OF CIVIL PROCEDURE FOR DISTRICT COURTS.

## RETURN[1]

STATE OF NEW MEXICO    )
                       )ss
COUNTY OF GUADALUPE    )

I, being duly sworn, on oath, state that I am over the age of eighteen (18) years and not a party to this lawsuit, and that I served this summons in _____ county on the _____ day of _____, _____, by delivering a copy of this summons, with a copy of complaint attached, in the following manner:

**(check one box and fill in appropriate blanks)**

[ ]    to the defendant _____ (*used when defendant accepts a copy of summons and complaint or refuses to accept the summons and complaint*)

[ ]    to the defendant by [mail] [courier service] as provided by Rule 1-004 NMRA (*used when service is by mail or commercial courier service*).

After attempting to serve the summons and complaint on the defendant by personal service or by mail or commercial courier service, by delivering a copy of this summons, with a copy of complaint attached, in the following manner:

[ ]    to _____, a person over fifteen (15) years of age and residing at the usual place of abode of defendant _____, (*used when the defendant is not presently at place of abode*) and by mailing by first class mail to the defendant at _____ (*insert defendant's last known mailing address*) a copy of the summons and complaint.

[ ]    to _____, the person apparently in charge at the actual place of business or employment of the defendant and by mailing by first class mail to the defendant at _____ (*insert defendant's business address*) and by mailing the summons and complaint by first class mail to the defendant at _____ (*insert defendant's last known mailing address*).

[ ]    to _____, an agent authorized to receive service of process for defendant _____.

[ ]    to _____, [parent] [guardian] [custodian] [conservator] [guardian ad litem] of defendant _____ (*used when defendant is a minor or an incompetent person*).

[ ]    to _____ (*name of person*), _____, (*title of person authorized to receive service. Use this alternative when the defendant is a corporation or an association subject to a suit under a common name, a land grant board of trustees, the State of New Mexico or any political subdivision*).

Fees: _____ _____

_____
Signature of person making service

_____
Title (*if any*)

Subscribed and sworn to before me this _____ day of _____, _____[2]

_____
Judge, notary or other officer
authorized to administer oaths

_____
Official title

FILED IN MY OFFICE
DISTRICT COURT CLERK
2/27/2014 4:27:53 PM
STEPHEN T. PACHECO

**STATE OF NEW MEXICO**
**COUNTY OF SANTA FE**
**FIRST JUDICIAL DISTRICT COURT**

LMP

**K.S., by and through her parents and next friends,**
**T.S. and A.R.,**

     **Plaintiff,**

vs.                              **Case No.  D-101-CV-2014-00491**

**THE SANTA FE PUBLIC SCHOOLS;**
**VICKIE L. SEWING, in her individual capacity;**
**THE ESPANOLA PUBLIC SCHOOLS;**
**RUBY E. MONTOYA, in her individual capacity;**
**GARY F. GREGOR, in his individual capacity;**

**Defendants.**

## DEMAND FOR TRIAL BY JURY

     COMES NOW the Plaintiff, K.S., by and through the undersigned counsel, and

hereby requests a trial by six-person jury on all claims referenced in the Civil Complaint

filed on February 27, 2014, pursuant to Rule 1-038(A) NMRA.

                     Respectfully submitted,

                     ROTHSTEIN, DONATELLI, HUGHES,
                      DAHLSTROM, SCHOENBURG & BIENVENU, LLP


                   By: /s/ Carolyn M. "Cammie" Nichols 2/27/2014
                     CAROLYN M. "CAMMIE" NICHOLS
                     BRENDAN K. EGAN
                     500 4th Street, N.W., Suite 400
                     Albuquerque, NM 87102
                     (505) 243-1443

                   *Attorneys for Plaintiff K.S.*