IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

K.S., and through her parents and next friends,
T.S. and A.R.,

    Plaintiff,

v.                                                  Case No. 1:14-cv-385 SCY/KBM

THE SANTA FE PUBLIC SCHOOLS;
VICKIE L. SEWING, in her individual capacity;
THE ESPANOLA PUBLIC SCHOOLS;
RUBY E. MONTOYA, in her individual capacity;
GARY F. GREGOR, in his individual capacity;

    Defendants.

## MOTION AND CONSOLIDATED MEMORANDUM
## TO DISMISS AND ASSERT THE DEFENSE OF QUALIFIED IMMUNITY

COME NOW Defendants Santa Fe Public Schools and Vickie L. Sewing, by and through their attorney of record, Brown Law Firm, Brown and Gurulé, by Desiree D. Gurulé and Keya Koul, and pursuant to Federal Rule of Civil Procedure 12(b)(6), move to dismiss the Complaint filed by Plaintiff for failure to state a claim. Defendant Sewing also asserts the defense of lack of standing and qualified immunity. Counsel for all parties have been contacted for concurrence on the motion. Their positions on the motion are as follows: Co-Defendants do not oppose this motion. Plaintiff opposes this motion.

### INTRODUCTION

Plaintiff filed her First Amended Complaint on May 5, 2014. [Doc. 7]. Defendants Santa Fe Public Schools and Vickie L. Sewing filed their Answer on May 19, 2014. [Doc. 11]. Counts II, III, and X against Defendants Santa Fe Public Schools and Vickie L. Sewing in the First Amended Complaint should be dismissed in its entirety for Plaintiff's failure to state a claim upon which relief can be granted, and the defenses of lack of standing and qualified immunity.

## LAW REGARDING 12(b)(6) MOTIONS

The Supreme Court has held that "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (citations omitted). Instead, the Court has emphasized that the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 555. Specifically, if a plaintiff "ha[s] not nudged [her] claims across the line from conceivable to plausible, [the] complaint should be dismissed." *Id.* at 570. Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has merely alleged but has not shown that the pleader is entitled to relief. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* at 1949.

The Tenth Circuit has embraced this standard. Thus, "the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Ridge at Red Hawk, LLC v. Schneider,* 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis in the original). A complaint cannot survive without "enough facts to state a claim to relief that is plausible on its face." *TON Services, Inc. v. Qwest Corp.,* 493 F.3d 1225, 1235 (10th Cir. 2007).

## LAW REGARDING QUALIFIED IMMUNITY

"[G]overnmental officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S.

808, 818 (1982). Where qualified immunity is raised as a defense to a Section 1983 claim, it is plaintiff's burden to point to particular facts that overcome the defense. *See Mitchell v. Forysthe*, 472 U.S. 511, 526 (1985). Plaintiffs' burden has been described by the Tenth Circuit as a "heavy two-part burden," entailing first a showing that defendant's actions violated a constitutional right, and second, that those rights were clearly established at the time of the conduct at issue. *Albright v. Rodriquez*, 51 F.3d 1531, 1534 (10th Cir. 1995). The Tenth Circuit has held that:

> [P]laintiff must do more than identify a clearly established legal test and then allege that the defendant has violated it. The plaintiff must demonstrate a substantial correspondence between the conduct in question and prior law allegedly establishing that the defendant's actions were clearly prohibited. The 'contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'

*Hannula v. City of Lakewood*, 907 F.2d 129, 131 (10th Cir. 1990) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). The law is clearly established when a Supreme Court or Tenth Circuit decision is on point, or if the clearly established weight of authority from other courts shows that the right must be as plaintiff maintains. *Farmer v. Perrill*, 288 F.3d 1254, 1259 (10th Cir. 2002). It is not necessary to examine this two part burden in any mandatory sequence. *Pearson v. Callahan*, 129 S. Ct. 808 (2009).

## LAW REGARDING STANDING

As courts of limited jurisdiction, federal courts may only adjudicate those cases that the United States Constitution and Congress have granted them authority to hear. *See* U.S. Const. Art. III; *Morris v. City of Hobart*, 39 F.3d 1105, 1110 (10th Cir. 1994). There are three immutable elements of constitutional standing: (1) injury in fact, (2) causation, and (3) redressability. *Steel Company v. Citizens for a Better Env't*, 523 U.S. 83, 103 (1998); *Bennett v. Spear*, 520 U.S. 154, 162 (1997); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992); *Wyoming ex rel. Crank v. United States*, 539 F.3d 1236, 1241 (10th Cir. 2008).

> First, the plaintiff must have suffered an injury in fact – an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of – the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Defenders of Wildlife*, 504 U.S. at 560-61 (quotations, ellipsis, brackets, and citations omitted).

**ARGUMENT**

**I.   PLAINTIFF FAILS TO STATE A SUBSTANTIVE DUE PROCESS VIOLATION BASED ON DANGER CREATION OR A SPECIAL RELATIONSHIP.**

The Due Process Clause of the Fourteenth Amendment provides that no state may "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. State actors are liable only for their own acts, and not for the violent acts of third parties. *See Liebson v. New Mexico Corrections Dep't*, 73 F.3d 274, 276 (10th Cir. 1996). There are two exceptions to this general rule. The "special relationship" doctrine exists when the state assumes control over an individual sufficient to trigger an affirmative duty to provide protection. The "danger creation" theory provides that a state may be liable for an individual's safety "if it created the danger that harmed the individual." *Id.* (quoting *Uhlrig v. Harder*, 64 F.3d 567, 572 (10th Cir. 1995); *DeShaney v. Winnebago County Dep't of Social Serv*s., 489 U.S. 189, 199-200 (1989)). Neither of the above theories apply to Plaintiff's substantive due process claims.

*DeShaney* established how the court determines the existence of a special relationship triggering an affirmative duty to protect life, liberty, and property. In *DeShaney*, a state agency received reports of abuse by a plaintiff's father, but it did not remove the child, which suffered permanent brain damage from repeated beatings. *DeShaney*, 489 U.S. at 193. The Court held that the Due Process Clause does not impose a duty on the state to protect the life, liberty, and property of citizens from deprivations by private actors. *DeShaney*, 489 U.S. at 198-99. The Court distinguished between the state's "affirmative act of restraining the individual's freedom to act on his

own behalf – through incarceration, institutionalization, or other similar restraint of personal liberty – which is the 'deprivation of liberty' triggering the protections of the Due Process Clause" and "its failure to act to protect his liberty interests against harms inflicted by other means." *DeShaney*, 489 U.S. at 200. Accordingly, the state must provide adequate medical care to prisoners, *see Robinson v. California*, 370 U.S. 660 (1962); to suspects injured while being apprehended by the police, *see City of Revere v. Massachusetts Gen. Hosp.*, 463 U.S. 239 (1983); and necessary services to ensure the reasonable safety of involuntarily committed mental patients. *See Youngberg v. Romeo*, 457 U.S. 307 (1982). The court held that a child in state custody placed in a private foster care facility is sufficiently analogous to trigger an affirmative duty. *Yvonne L. v. New Mexico Dep't of Human Servs.*, 959 F.2d 883 (10th Cir. 1992).

However, the court has distinguished between state legal and physical custody, which may create an affirmative duty pursuant to *DeShaney*, and compulsory school attendance laws, which do not create such a duty. The Court's reasoning is straightforward: the "duty to protect arises not from the State's knowledge of the individual's predicament ... but from the limitation which it has imposed on his freedom to act on his own behalf." *DeShaney*, 489 U.S. at 200; *see also Seamons v. Snow*, 84 F.3d 1226, 1235-36 (10th Cir. 1996); *Maldonado v. Josey*, 975 F.2d 727, 731 (10th Cir. 1992), cert. denied, 507 U.S. 914 (1993). Compulsory education laws "do not alter the fact that parents retain ultimate responsibility for their child's food, shelter, clothing, medical care, and reasonable safety." *Id.* at 732-33.

Because parents, and not school officials, have an affirmative duty to ensure a child's safety, mere "inaction by the state, in the face of a known danger, is not enough to trigger a constitutional duty to protect unless the state has a custodial or other 'special relationship' with the victim." *Armijo By and Through Chavez v. Wagon Mound Public Schools*, 159 F.3d 1253, 1261 (10th Cir. 1998); *accord*, *Castaldo v. Stone*, 192 F.Supp.2d 1124, 1155 (D. Colo. 2001). In-school detention might present a

5

higher level of restraint than compulsory education laws, but it is not a restraint of liberty on par with incarceration or institutionalization, so as to create a special relationship triggering an affirmative duty to protect. *O'Hayre v. Board of Educ. for Jefferson County School Dist. R-1*, 109 F. Supp.2d 1284 (D. Colo. 2000).

In the Complaint the allegations regarding Defendant Gregor's employment with the Santa Fe Public Schools are contained in paragraphs 31-71. [Doc. No. 7 at pp. 7-14]. It is alleged that an improper background check was performed by the Santa Fe Public Schools prior to Gregor's employment. [Doc. No. 7 at p. 8, ¶¶ 34-35]. It is further alleged that after the 2000-01 school year, Gregor was not recommended for rehire at Ortiz Middle School. [Doc. No. 7 at p. 8, ¶ 38]. It is then alleged that Defendant Sewing hired Gregor as a fourth grade teacher at Agua Fria in September 2001. [Doc. No. 7 at p. 8, ¶ 40]. It is then alleged that on January 28, 2004, Sewing was notified of inappropriate behavior by Gregor while on a field trip to a museum. [Doc. No. 7 at p. 9, ¶ 43]. This behavior included "fondling girls". [Doc. No. 7 at p. 9, ¶ 44]. Sewing then notified Human Resources and Gregor was placed on administrative leave on February 3, 2004. [Doc. No. 7 at p. 9, ¶ 46]. It is alleged that Sewing did not report the incidents to CYFD. [Doc. No. 7 at p. 10, ¶ 49]. Gregor was served with a Notice of Discharge. [Doc. No. 7 at p. 10, ¶ 51]. On February 26, 2004, the Santa Fe Public Schools reported the matter to the New Mexico Public Education Department. [Doc. No. 7 at p. 12, ¶ 60]. It is alleged that a negotiated settlement was entered into between Gregor and the Santa Fe Public Schools, and Gregor was allowed to resign from his position. [Doc. No. 7 at pp. 12-13, ¶¶ 64-67]. As a term of the agreement, "SFPS District will give a neutral reference to all persons who make inquiry as to Mr. Gregor's employment with the District which shall consist of dates of employment, job titles, and rates of pay." [Doc. No. 7 at pp. 13, ¶ 66e]. A formal reprimand, which included findings of sexual contact toward students, was placed in Gregor's licensing file with PED. [Doc. No. 7 at pp. 13, ¶ 69]. Based upon these allegations, a 1983

substantive due process claim is brought against the Santa Fe Public Schools and Sewing for the alleged sexual abuse of K.S. by Gregor in the 2007-08 school year while he was employed at the Española Public Schools.

Defendant Santa Fe Public Schools is a governmental entity and local public body as those terms are defined in the New Mexico Tort Claims Act, NMSA 1978, §§ 41-4-3(B) and (C), as amended. While it is not clear whether Plaintiff intends to proceed under a danger creation or special relationship theory, the allegations cannot sustain an action under the latter theory, because, as described above, the Tenth Circuit has held that compulsory school attendance laws do not create a duty to protect under *DeShaney* and the claims fail as a matter of law as to the Defendants Santa Fe Public Schools and Sewing. *DeShaney v. Winnebago County Dep't of Social Servs.*, 489 U.S. 189, 199-200 (1989); *see also Seamons v. Snow*, 84 F.3d 1226, 1235-36 (10th Cir. 1996); *Maldonado v. Josey*, 975 F.2d 727, 731 (10th Cir. 1992), cert. denied, 507 U.S. 914 (1993).

Plaintiff fails to state a claim under the "danger creation" theory, which requires a plaintiff to show *all* of the following: (1) her membership in a limited and specifically definable group; (2) a defendant's conduct which put her at substantial risk of serious, immediate and proximate harm; (3) that the risk was obvious or known; (4) that the defendant acted recklessly in conscious disregard of that risk; *and* that (5) such conduct, when viewed in total, was truly conscience-shocking. *Armijo By and Through Chavez v. Wagon Mound Pub. Sch.*, 159 F.3d 1253, 1262-63 (10th Cir. 1998) (citing *Uhlrig*, 64 F.3d at 572, and *DeShaney*, 489 U.S. at 201). Also, in the wake of *DeShaney*, a sixth factor requires that a plaintiff must "show that the charged state entity and the charged individual defendant actors created the danger or increased the plaintiff's vulnerability to the danger in some way." *Armijo*, 159 F.3d at 1263-64. The court has noted that:

> [t]he key to the state-created danger cases lies in the state actors' culpable knowledge and conduct in *affirmatively placing* an individual in a position of danger, effectively stripping a person of his ability to defend himself, or cutting off potential sources of private aid. Thus

7

> the environment created by the state actors must be dangerous; they must know it is dangerous; and, to be liable, *they must have used their authority* to create an opportunity that would not otherwise have existed for the third party's [acts] to occur.

*Id.* (quoting *Johnson v. Dallas Ind. Sch. Dist.*, 38 F.3d 198, 201 (5th Cir.1994) (quotation marks omitted) (emphasis added). Since the court's multi-prong test is not disjunctive, this Court need only consider Plaintiff's failure to satisfy the second or sixth prong.

It is alleged that Sewing's failure to report Gregor to CYFD in 2004 violated KS' constitutional rights when she was sexually abused by Gregor during the 2007-08 school year. This is insufficient to create liability under the danger creation test. As to the second prong, Sewing's actions did not create a risk of immediate harm as the alleged abuse occurred over three years after her alleged inaction. As to the fourth and fifth prongs, Gregor was placed on administrative leave and a complaint was filed with PED. A formal reprimand, which included findings of sexual contact toward students, was placed in Gregor's licensing file with PED. These allegations do not meet the reckless standard and do not rise to the level of shocking the conscience of the court. Finally, Sewing's alleged failure in not reporting the incident to CYFD did not increase the danger to KS for an incident which occurred over three years later.

Count III of the complaint should be dismissed because a substantive due process claim has not been stated and Defendant Sewing is entitled to qualified immunity.

## II.    PLAINTIFF FAILS TO STATE ANY *MONELL* CLAIMS

A municipality may be held liable under 42 U.S.C. § 1983 only for its own unconstitutional or illegal policies and not for the tortious acts of its employees. *Monell v. Dept of Soc. Servs. of City of N. Y.*, 436 U. S. 658, 694 (1978); *Barney v. Pulsipher*, 143 F. 3d 1299, 1307 (10th Cir. 1998). In order to prevail on a claim of municipal liability, a plaintiff must prove that the constitutional injury was inflicted pursuant to government policy or custom. *Monell*, 436 U. S. at 691. In particular, a plaintiff must show the existence of a municipal custom or policy,

and a direct causal link between the custom or policy and the alleged violation. *City of Canton v. Harris,* 489 U. S. 378, 385 (1989); *City of Oklahoma City v. Tuttle,* 471 U. S. 808, 823 (1985). The acts must be officially sanctioned or ordered by the final, policy-making authority. *Pembaur v. City of Cincinnati,* 475 U. S. 469, 480-81 (1986). Where a plaintiff seeks to establish municipal liability on the theory that a facially lawful municipal action has led an employee to violate plaintiff's rights, she also must demonstrate that the municipal action was taken with deliberate indifference to its known or obvious consequences. *Bd. of County Commrs of Bryan County v. Brown,* 520 U. S. 397, 407 (1997).

A causal connection between the unconstitutional act and the authorized decision makers may be established when the governing body has exercised its decision-making authority with deliberate indifference to the constitutional rights of those affected by its decisions. *Ware v. Unified Sch. Dist. No. 492,* 902 F. 2d 815, 819 (10th Cir. 1990). To establish deliberate indifference, plaintiff must demonstrate that the municipality was the moving force behind the injury alleged by proving a direct causal link between the municipal action and the deprivation of federal rights. *Brown,* 520 U.S. at 404. Therefore, in order to sustain a constitutional claim against Santa Fe Public Schools or employees in their official capacity, Plaintiff must show both that "a constitutional violation occurred, and that some municipal policy was the moving force behind the violation." *DeAnzona v. City and County of Denver,* 222 F.3d 1229, 1236 (10th Cir. 2000). A municipality cannot be held liable unless a constitutional or statutory violation occurred. *Trigalet v. City of Tulsa,* 239 F.3d 1150, 1154 (10th Cir. 2001); *City of Los Angeles v. Heller,* 475 U.S. 796, 799 (1986).

These allegations do not establish an affirmative act by school personnel which either created the danger or increased plaintiff's vulnerability to it and lacking this showing, there is not a constitutional violation. *Gonzales v. City of Castle Rock,* 307 F.3d 1258, 1263 (10th Cir. 2002) (citing *Armijo v. Wagon Mound Public Schools,* 159 F.3d 1253, 1263 (10th Cir. 1998). The allegations are also

insufficient to establish a constitutional violation by any school employee and any *Monell* claim based upon these allegations should be dismissed under FRCP 12(b)(6).

Count II of the complaint should be dismissed as to the Santa Fe Public Schools as a claim has not been stated under *Monell*.

### III. PLAINTIFF LACKS STANDING

In this case, in Count X, Plaintiff alleges a claim of common law negligence per se against Defendant Sewing. Plaintiff alleges that Defendant Sewing violated a statutory duty to report suspected child abuse to law enforcement or to CYFD. The test for negligence per se is the following: (1) there must be a statute which prescribes certain actions or defines a standard of conduct, either explicitly or implicitly; (2) the defendant must violate the statute; (3) the plaintiff must be in the class of persons sought to be protected by the statute and (4) the harm or injury to the plaintiff must generally be of the type of harm or injury the legislature, through the statute, sought to prevent. *Archibeque v. Homrich*, 88 N.M. 527, 543 P.2d 820 (1975). The Complaint fails to assert facts sufficient to demonstrate a violation of the statute by Defendant Sewing. Also, Plaintiff has failed to establish a waiver for negligence per se in the New Mexico Tort Claims Act.

As a threshold issue, before even contemplating the aforementioned arguments for dismissal of this claim against Defendant Sewing, Plaintiff has failed to establish standing to bring this claim. It is the plaintiff, the "party invoking federal jurisdiction," who bears the burden to prove standing. *Defenders of Wildlife*, 504 U.S. at 561; *Renne v. Geary*, 501 U.S. 312, 316 (1991); *Marcus v. Kansas Dept. of Revenue*, 170 F.3d 1305, 1309 (10th Cir. 1999) ("Because the jurisdiction of federal courts is limited, there is a presumption against our jurisdiction, and the party invoking federal jurisdiction bears the burden of proof." (internal quotations omitted)). The Tenth Circuit requires that a plaintiff "com[e] forward with evidence of specific facts which prove standing." *Bear Lodge Multiple Use Ass'n v. Babbit*, 175 F.3d 814, 821 (10th Cir. 1999).

Plaintiff presents no evidence to support this allegation. First, without any factual support, Plaintiff's allegation is pure conjecture. The first requirement of standing is that Plaintiff demonstrates an injury-in-fact "which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Defenders of Wildlife*, 504 U.S. at 560–61 (internal quotations and citations omitted). Standing is not "an ingenious academic exercise in the conceivable"; rather, it minimally requires "a factual showing of perceptible harm." *Id.* at 566. Plaintiff has failed to allege the kind of concrete and particularized injuries that may satisfy constitutional standing requirements.

Second, even assuming, arguendo, that Plaintiff could establish an injury-in-fact, there is still the issue of causation, the second prong of Article III's standing test. To satisfy the causation prong of standing, Plaintiff's alleged injuries must be "fairly traceable" to Defendant's actions. *Defenders of Wildlife*, 504 U.S. at 560; *Friends of the Earth*, 204 F.3d at 161. In order for the plaintiff's injuries to be "fairly traceable" to a particular defendant's actions, the plaintiff cannot be so far downstream that their injuries cannot be fairly traced to that defendant. *Id.* Plaintiff's allegation that Defendant Sewing did not report in 2004 is disputed, but assuming arguendo that Defendant Sewing did not report in 2004, Plaintiff must prove with concrete factual support that Plaintiff's alleged injuries in 2007 in Española are "fairly traceable" to Defendant Sewing's alleged actions in 2004 in Santa Fe.

Third, in order to satisfy the final prong of the Article III standing test, Plaintiff must demonstrate that the alleged injuries are likely to be redressed by a favorable decision. "[I]t must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Defenders of Wildlife*, 504 U.S. at 561 (internal quotations and citation omitted). As Plaintiff bears the burden of establishing all three elements of standing, *Defenders of Wildlife*, 504 U.S. at 561, the fact that Plaintiff can possibly satisfy one prong, does not confer standing. Therefore, Count X against Defendant Sewing should be dismissed with prejudice.

## CONCLUSION

As shown above, Plaintiff fails to state a substantive due process violation based on danger creation or a special relationship. Furthermore, Plaintiff fails to state any *Monell* claims. Finally, Plaintiff lacks standing. WHEREFORE, the Defendants Santa Fe Public Schools and Sewing pray that Counts II, III, and X of the Complaint be dismissed with prejudice.

Respectfully submitted,

*BROWN LAW FIRM*
*BROWN & GURULÉ*


*/s/Keya Koul 06/05/14*
KEYA KOUL
Attorney for Defendants
Santa Fe Public Schools
Vickie L. Sewing
2901 Juan Tabo NE, Suite 208
Albuquerque, New Mexico 87112
(505) 292-9677
keya@brownlawnm.com

I HEREBY CERTIFY that on this 5th day of June, 2014, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Carolyn M. "Cammie" Nichols
cmnichols@rothsteinlaw.com

Brendan K. Egan
bkegan@rothsteinlaw.com

Jerry A. Walz
jerryawalz@walzandassociates.com

Henry Narvaez
hnarvaez@narvaezlawfirm.com


*/s/Keya Koul*

Keya Koul