# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

K.S., by and through her parents and next friends,
T.S. and A.R.,

       **Plaintiff,**

vs.                             **Case No. 2014-CV-00385 SCY/KBM**

THE SANTA FE PUBLIC SCHOOLS;
VICKIE L. SEWING, in her individual capacity;
THE ESPANOLA PUBLIC SCHOOLS;
RUBY E. MONTOYA, in her individual capacity;
GARY F. GREGOR, in his individual capacity;

       **Defendants.**

## PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISMISS AND ASSERT THE DEFENSE OF QUALIFIED IMMUNITY (Doc. 19)

Plaintiff KS submits this response to Defendants Santa Fe Public School's ("SFPS") and Vickie L. Sewing's June 5, 2014 *Motion and Consolidated Memorandum To Dismiss and Assert the Defense of Qualified Immunity* ("*Motion to Dismiss*"). Doc. 19. For the reasons below, Plaintiff KS provided sufficient factual allegations within her May 5, 2014 *First Amended Complaint for Civil Rights Violations* ("Complaint") (Doc. 7) to state claims for relief under 42 U.S.C. § 1983 against Defendants SFPS and Sewing, and common law negligence per se against Sewing. Additionally, for the reasons below, Defendant Sewing is not entitled to qualified immunity. Defendants' *Motion to Dismiss* should be denied.

## I.    INTRODUCTION

### A.  Defendant Gary F. Gregor's Sexual Abuse of Plaintiff KS

Plaintiff KS was sexually abused by her fourth grade teacher at Fairview Elementary School, in Espanola, New Mexico. Roughly one month into the 2007-2008 school year, her

teacher, Defendant Gary F. Gregor, made her the "secretary" of the class so that she had to sit right next to Defendant Gregor in the classroom. Doc. 7 at ¶ 174. That is when the sexual abuse, which would last until Plaintiff KS moved to the next grade, began. *Id.*; *see id.* at ¶ 203. The sexual abuse included touching Plaintiff KS on her upper legs, inside her thighs, and on her vagina. Doc. 7 at ¶ 179. Defendant Gregor would put his hand up KS' skirt to touch her bare skin in those areas. Doc. 7 at ¶ 180. Defendant Gregor licked and kissed her ears, held her hands, and kept her alone in the classroom while the other students were at recess. Doc. 7 at ¶ 179, 180.

Plaintiff KS estimates she was touched inappropriately between three-hundred and five-hundred times by Defendant Gregor. Doc. 7 at ¶ 187. Once, when Plaintiff KS asked to move seats in order to get away from Defendant Gregor, Defendant Gregor punished her by giving her an inaccurately low grade on a math test. Doc. 7 at ¶ 189. Defendant Gregor repeatedly asked Plaintiff KS to spend the night at his house, sometimes asking her three or four times a week. Doc. 7 at ¶ 194. Due to implicit and explicit threats by Defendant Gregor, Plaintiff KS was scared to tell her parents of the sexual abuse. Doc. 7 at ¶ 188.

Plaintiff KS was not the only young girl in Defendant Gregor's class who was sexually abused during the 2007-2008 school year. At least two other students in the same class were groomed and sexually abused in a similar fashion. Doc. 7 at ¶ 133. While the details of the sexual abuse against Plaintiff KS's classmates are too lengthy to rehash for purposes of this response, the abuse included grooming behavior and the touching of the other girls' private parts. Defendant Gregor successfully invited one of the girls over for a sleepover at his home. Doc. 7 at ¶ 139, 164. Defendant Gregor, who did not have children, had a room in his home decorated as a little girl's room, complete with toys Doc. 7 at ¶ 164. Defendant Gregor bought the girls

gifts, including a cellular telephone for one of the girls (which he used to talk to her outside of school hours), and Defendant Gregor told one of the girls that he loved her. Doc. 7 at ¶ 159 – 162; 165.

Not surprisingly, this was not the first time Defendant Gregor preyed on young female students. Defendant Gregor was terminated from his position as a classroom teacher in Utah in 1998 for similar behavior. Doc. 7 at ¶ 30. Although ultimately dismissed on questionable grounds, public records reveal that criminal charges were filed against Gregor for sexual abuse against his female students in Utah. Doc. 7 at ¶ 26-27.

**B.     Defendant Gregor's work for SFPS and Defendant Vickie L. Sewing**

Defendant Gregor applied for a job with Defendant SFPS the same year he was formally terminated from his teaching position in Utah. Doc. 7 at ¶ 32. Gregor was officially hired either that same year or in the year 2000. Doc. 7 at ¶ 33. This hire appears to have been made absent inquiry into Gregor's criminal background or employment history. Doc. 7 at ¶ 35. The principal at the first school within SFPS where Defendant Gregor taught gave him negative evaluations. Despite these negative evaluations, Defendant Sewing, the principal of an SFPS elementary school, Agua Fria, hired Gregor in 2001. Doc. 7 at ¶ 37-40.

In 2004, the director of a local museum notified Defendant Sewing by phone and email that Defendant Gregor had behaved inappropriately with young female students during a fieldtrip. Doc. 7 at ¶ 43. This inappropriate behavior included fondling the girls, sitting with the girls on his lap, and falling asleep with the girls held closely to his body. Doc. 7 at ¶ 45. Defendant Sewing conducted internal school interviews of Defendant Gregor's students in light of this report, and was informed by the interviews that Defendant Gregor hugged the girls in his class all the time, regularly sat some of the female students on his lap, tickled female students on

their stomachs, "squished" female students when playing with them, and gave gifts to one of the girls in his class.  Doc. 7 at ¶ 48.

Although Defendant Sewing found this behavior raised "serious concerns," articulated that this behavior may be "grooming behavior," she did not report this sexual abuse to either law enforcement or CYFD.  Neither did anyone else within SFPS, in flagrant disregard of statutory obligations to do so. Doc. 7 at ¶ 49-50.  *See* NMSA 1978, § 32A-4-3(A).  After the parents of Defendant Gregor's students were notified that he would not be returning to the classroom, several parents came forward and informed Defendant Sewing that they had concerns for their children's safety and mental health, and that they believed more happened with Defendant Gregor than they felt comfortable sharing at that time. Doc. 7 at ¶ 10.  Defendant Sewing again failed to refer these concerns, concerns clearly indicating possible sexual abuse of female students by Defendant Gregor, to CYFD or law enforcement.  Doc. 7 at ¶ 55.  *See* NMSA 1978, § 32A-4-3(A).  Instead of setting in motion the process of professional forensic interviews of the female students, Defendant Sewing made arrangements for in-school counseling and instructional classes to be taught by the Santa Fe Rape Crisis Center for Gregor's students. Doc. 7 at ¶ 55-56.

One of the Santa Fe Rape Crisis Center instructors contacted Defendant Sewing after a presentation made to Defendant Gregor's students.  Doc. 7 at ¶ 57.  This instructor informed Defendant Sewing that, among other troubling disclosures made during the presentation, Defendant Gregor's students disclosed that Gregor would hold female students in his lap and tickle them, and that the female students could feel Defendant Gregor's "boner" while he did so. Doc. 7 at ¶ 57(a).  The instructor also informed Defendant Sewing that Gregor preferred particular little blonde female students, and that he asked one specific female student to meet him

alone in the classroom. According to the report, when that female student brought a friend with her because she felt uncomfortable meeting him alone, Defendant Gregor reacted with anger. Doc. 7 at ¶ 57(b). Defendant Sewing also received information from a parent corroborating that Gregor often had female students sit on his lap. Doc. 7 at 58. Again Defendant Sewing made the choice not to provide this information to CYFD or to law enforcement, despite her statutory obligation to do so. *See* NMSA 1978, § 32A-4-3(A). Neither did anyone else within SFPS.

Defendant SFPS subsequently negotiated an agreement with Defendant Gregor, whereby he would be allowed to resign from employment with SFPS without a hearing if he would agree not to reapply or accept another position from SFPS, and if he agreed to release SFPS from any future civil liability arising from his position at Agua Fria Elementary School. Doc. 7 at 66. As part of this agreement, Defendant SFPS agreed to provide Defendant Gregor with a neutral reference for future prospective employers, meaning that Defendant SFPS would not provide the prospective employer with any information concerning Defendant Gregor's sexual abuse of students. *Id.*

## II.    PROCEDURAL BACKGROUND

Plaintiff KS filed her *First Amended Complaint for Civil Rights Violations* on May 5, 2014, naming SFPS and Vickie L. Sewing, in her individual capacity, as defendants. *See* Doc. 7.[1] SFPS and Sewing subsequently filed their *Motion and Consolidated Memorandum to Dismiss and Assert the Defense of Qualified Immunity* on June 5, 2014. Doc. 19. Plaintiff KS filed a *Notice of Agreed-Upon Extension* on June 20, 2014, Doc. 25, making Plaintiff KS's response timely filed on today's date.

---

[1]    Defendants SFPS and Sewing also filed a *Motion to Stay Discovery on the Basis of Qualified Immunity* and *Memorandum in Support* on June 5, 2014. *See* Docs. 20 & 21. The *Motion to Stay Discovery* is addressed within a freestanding response, filed this same day.

### III.    FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)

Under Rule 12(b)(6), a complaint may be dismissed if it fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Motions to dismiss for failure to state a claim are "viewed with disfavor" and "rarely granted." *See Lone Star Indus., Inc. v. Horman Family Trust,* 960 F.2d 917, 920 (10th Cir.1992). *See also Duran v. Carris*, 238 F.3d 1268, 1270 (10th Cir. 2001) (holding that dismissal under Rule 12(b)(6) "is a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice.") (internal quotation marks and citation omitted).

This inquiry, necessarily deferential to the complainant, requires the Court, accepting all factual allegations within the complaint to be true, to determine "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'" *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007)). Importantly, as *Bell Atl. Corp. v. Twombly* instructs, for a complaint to state a "plausible" claim for relief, it need not contain "detailed factual allegations." *Twombly* 550 U.S. at 555.

The term "plausibility," as used in the Supreme Court's *Twombly* analysis, has been interpreted by the Tenth Circuit as going to the scope of the allegations themselves, rather than an analysis into whether the allegations are "likely to be true." *See Robbins v. Okla. ex rel. Okla. Dep't of Human Servs*., 519 F.3d 1242, 1247 (10th Cir. 2008). This "plausibility" requirement "serves not only to weed out claims that do not (in the absence of additional allegations) have a reasonable prospect of success, but also to inform the defendants of the actual grounds of the claim against them."). *Id.* at 1248. "[T]he degree of specificity necessary to establish plausibility and fair notice . . . depends on context." *Id.*

In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the United States Supreme Court, basing its 12(b)(6) analysis on *Twombly*, clarified the pleading standard. Published on the heels of *Twombly*, *Iqbal* identified a complaint containing sufficiently "plausible" factual allegations as one that creates a reasonable inference that the facts as alleged, if taken as true, support an actionable claim. *Iqbal*, 129, S. Ct. at 1949. The Tenth Circuit has since held that while *Iqbal* "establishes the importance of context to a plausibility determination," the "plausibility" standard must be applied in the specific context from which a suit arises and must equitably consider the ability of the plaintiff to reasonably access the necessary factual allegations. *Gee v. Pacheco*, 627 F.3d 1178, 1185 (10th Cir. 2010).[2] In this matter, public records requests have allowed Plaintiff KS some access to the facts underlying her causes of action, but the access is still limited without discovery, which the Court should take into account when assessing the inferences generated by the Complaint.

## IV. THE COMPLAINT CONTAINS SUFFICIENT FACTUAL ALLEGATIONS TO SUPPORT A 42 U.S.C. § 1983 DANGER CREATION CLAIM AGAINST DEFENDANT SEWING

Defendants argue that Count III of Plaintiff KS's complaint should be dismissed. Not so. State actors, like Defendant Sewing, can be held liable for harm when they create or increase the underlying danger leading to the harm. *See Christiansen v. City of Tulsa*, 332 F.3d 1270, 1280 (10th Cir. 2003).[3] A danger creation claim is grounded in the right to substantive due process, and is "predicated on reckless or intentional injury-causing state action which shocks the

---

[2] The *Gee* Court acknowledged that *Iqbal* has received criticism for placing an unfair burden on plaintiffs without the benefit of discovery, but defended its plausibility standard to the extent it is applied in the context of prisons. *See id.* at 1185. Even in the prison context, however, the *Gee* Court sustained various claims, acknowledging that the plaintiff's "allegations may be improbable, but they are not implausible. Accordingly, they state a claim for relief, and they should have been allowed to proceed beyond the pleading stage." *Id.* at 1189.

[3] While Defendants' *Motion to Dismiss* extensively argues that Plaintiff KS's Complaint fails to state a claim under a Special Relationship theory, that argument will not be addressed herein as Plaintiff did not seek relief under this theory for recovery within the Complaint. A simple reading of the allegations set forth within Count III, which mirror the required elements of a danger creation claim, cited above, demonstrates that recovery is sought under a Danger Creation, and not Special Relationship, theory. *See* Doc. 7, at ¶¶ 239 to 248.

conscience." *Armijo Ex Rel. Chavez v. Wagon Mound Pub. Sch.*, 159 F.3d 1253, 1262 (10th Cir. 1998)(quoting *Uhlrig v. Harder*, 64 F.3d 567, 572 (10th Cir. 1995) (internal quotation marks omitted). The environment the state actors create must thus "be dangerous; they must know it is dangerous; and, to be liable, they must have used their authority to create an opportunity that would not otherwise have existed for the third party's acts to occur." *Id.* at 1263 (internal quotation marks and citation omitted).

Danger Creation claims are governed by a six part test:

To state a prima facie case, the plaintiff must show that (1) state actors created the danger or increased the plaintiff's vulnerability to the danger in some way, (2) the plaintiff was a member of a limited and specifically definable group, (3) the defendants' conduct put the plaintiff at substantial risk of serious, immediate, and proximate harm, (4) the risk was obvious or known, (5) the defendants acted recklessly in conscious disregard of that risk, and (6) the conduct, when viewed in total, shocks the conscious.

*Robbins v. Oklahoma*, 519 F.3d at 1251.

The allegations set forth in Plaintiff KS's Complaint, accepted as true, satisfy the elements of this test. Within the four corners of Plaintiff KS's complaint, facts satisfying the elements of danger creation claims are identified. Defendants' *Motion to Dismiss* fails because Plaintiff KS is not required to do more under a Rule 12(b)(6) analysis.

### A. Defendant Sewing created a dangerous situation for Plaintiff KS and increased her vulnerability to Defendant Gary Gregor.

In addition to meeting the requirements set forth in *Robbins*, the Tenth Circuit also requires demonstration of "affirmative conduct on the part of the state in placing the plaintiff in danger." *Graham v. Indep. Schl. Dist. No. I-89*, 22 F.3d 991, 995 (10th Cir. 1994) (internal citation omitted). *See also Briggs v. Johnson*, 274 Fed. Appx. 730, 734 (10th Cir. 2008) (unpublished decision) (noting that the "actions must involve affirmative conduct; the failure to act, even in the face of a known risk, is insufficient."). By purposefully failing to report to law

enforcement or CYFD the copious amount of information Defendant Sewing received from numerous sources concerning Defendant Gregor's sexual abuse of young female students, and supporting the decision to allow Defendant Gregor to leave her school with a neutral recommendation,[4] thereby in no way warning future potential employers of Defendant Gregor's systematic abuse of young female students, Defendant Sewing participated in affirmative and deliberate conduct that created the danger to Plaintiff KS.

Defendant Gregor was fired from a previous teaching position and criminally charged for the sexual abuse of female students, and he received negative evaluations during his first position as a classroom teacher at another SFPS school, yet Defendant Sewing, the principal of Agua Fria Elementary School, hired Gregor in 2001. Doc. 7 at ¶ 37-40. In 2004, Defendant Sewing learned of Defendant Gregor's inappropriate behavior with young female students during a fieldtrip. Doc. 7 at ¶ 43. The inappropriate behavior included fondling girls, sitting with girls on his lap, and falling asleep with girls held close against him. Doc. 7 at ¶ 45. Defendant Sewing also received independent information from Gregor's students during subsequent interviews that he hugged the girls in his class all the time, regularly sat some of the female students on his lap, tickled female students on their stomachs, "squished" the girls when playing with them, and gave gifts to one of the girls in the class. Doc. 7 at ¶ 48.

Defendant Sewing herself articulated that this behavior caused "serious concerns" and appeared to be "grooming behavior," yet she did not report this sexual abuse to CYFD or law enforcement, contrary to statutory requirements. Doc. 7 at ¶ 49-50. *See* NMSA 1978, § 32A-4-3(A). Parents of Gregor's students also came forward and informed Defendant Sewing that they had concerns for their children's safety and mental health, and that they believed more happened

---

[4]      From the facts in the complaint, a reasonable inference can be drawn that Defendant Sewing, as Defendant Gregor's immediate supervisor, participated in the decision to allow a resignation with a neutral recommendation.

with Defendant Gregor than they felt comfortable sharing at that time.   Doc. 7 at ¶ 10. Defendant Sewing chose not to refer these facts, facts illustrating probable sexual abuse of female students, to either CYFD or law enforcement.  Doc. 7 at ¶ 55.  *See* NMSA 1978, § 32A-4-3(A).

Instead of professional forensic interviews of the girls, Defendant Sewing made arrangements for in-school counseling and an instructional class to be taught by the Santa Fe Rape Crisis Center for Gregor's students. Doc. 7 at ¶ 55-56.  Defendant Sewing learned from an instructor that Defendant Gregor would hold girls in his lap and tickle them, and that the girls could feel Defendant Gregor's "boner" when he did this to them.  Doc. 7 at ¶ 57(a).  The instructor informed Defendant Sewing that Gregor preferred certain female students and asked one of them to meet him alone in the classroom, and that when she brought a friend because she felt uncomfortable with the situation, he got mad at her.  Doc. 7 at ¶ 57(b).  Defendant Sewing received more information from a parent corroborating that Gregor often had female students sit on his lap. Doc. 7 at 58.  Again, neither Defendant Sewing nor anyone else at SFPS referred these concerns to CYFD or law enforcement as required by law.  *See* NMSA 1978, § 32A-4-3(A).

Thus Defendant Sewing hired a teacher previously charged with sexual abuse, and who left his previous school (in the same school district) after negative evaluations.  After learning of Defendant Gregor's sexual abuse of young female students, she requested an instructional course be given to the students, rather than bringing in CYFD or law enforcement and initiating a process involving professional forensic interviews.  Defendant Sewing affirmatively gathered information from parents and students concerning the sexual abuse, thereby giving the parents the impression that something would be done about the abusive conduct, when in fact,

essentially, nothing was done except for removal of Defendant Gregor from SFPS. Defendant Sewing, Gregor's immediate supervisor, presumably agreed to provide Defendant Gregor with a neutral recommendation moving forward, one that would not include information concerning the substantiated sexual abuse against young female students. Doc 7 at ¶¶ 66, 67.

Defendant Sewing violated Plaintiff KS's substantive due process rights. Doc 7 at ¶¶ 43 – 50. The information Defendant Sewing received from the above sources included the fondling and tickling of young girls, sitting with young girls on his lap, sometimes with an erection that the young girls reported feeling, and falling asleep with girls in intimate positions during a fieldtrip. *See id*. These choices made by Defendant Sewing, to affirmatively create the appearance of proactive investigation of Gregor, while simultaneously deciding not to report him to law enforcement or to CYFD, and to further bury the information by agreeing to neutral recommendations for any future teaching employment (so long as it was outside SFPS), constitute affirmative conduct.[5] Defendant Sewing clearly took affirmative actions to place Plaintiff KS, a student in the next school district to hire Defendant Gregor, in danger of sexual abuse.

### B. Plaintiff KS is a member of a limited and specifically definable group.

Plaintiff KS is a member of a limited group, namely, she was one of Defendant Gregor's young female students. Doc 7 at ¶ 174. Indeed, Defendants appear to concede that Plaintiff KS has satisfied this element of the danger creation test, as the *Motion to Dismiss* contains no

---

[5]     The Tenth Circuit in *Armijo ex rel. Chavez*, 159 F.3d at 1264, concluded that based on the knowledge the defendants possessed concerning the plaintiff's emotional condition, his propensity for violence, and his access to firearms, a triable issue of fact existed regarding whether the defendants' affirmative acts increased the risk of danger to the plaintiff. "The danger creation theory . . . focuses on the affirmative actions of the state in placing . . . [an individual] in harm's way." *Currier v. Doran*, 242 F.3d 905, 919 (10th Cir. 2001). *See also Munger v. City of Glasgow Police Dept.*, 227 F.3d 1082, 1086 (9th Cir. 2000) ("In examining whether an officer affirmatively places an individual in danger, we do not look solely to the agency of the individual, nor do we rest our opinion on what options may or may not have been available to the individual. Instead, we examine whether the officers left the person in a situation that was more dangerous than the one in which they found him.").

challenge to her membership in the requisite limited group. *See* Doc. 19, at pp. 8. All of the information Defendant Sewing received concerning Defendant Gregor and the underlying sexual abuse, Doc. 7 at ¶¶ 43 – 50, clearly indicated that Defendant Gregor targeted the young girls within his classroom. Plaintiff KS, as a student in his fourth grade classroom, is a member of a limited and specifically definable group. Doc. 7 at ¶ 243. The fact that Defendant Sewing herself described some of the conduct of Defendant Gregor as "grooming" behavior predicating sexual abuse indicates that she saw the pattern as it pertained to young female students.

## C. Defendant Sewing's conduct placed Plaintiff KS at risk of serious, immediate, and proximate harm.

Despite learning of the numerous instances of sexual abuse against Defendant Gregor's female students, described above and within the Complaint, Defendant Sewing knowingly placed this specific group of future victims, namely Defendant Gregor's future young female students, at risk of serious, immediate, and proximate harm. The fact that Defendant Sewing articulated this behavior as "grooming behavior," clearly indicates that she was aware of Defendant Gregor's ritualistic targeting and conditioning of young female students.

Defendant Sewing placed Plaintiff KS in danger of sexual abuse by Defendant Gregor when she affirmatively gathered information concerning the criminal sexual conduct of Defendant Gregor, only to fail to report it to law enforcement or CYFD, and then cooperated in sending Defendant Gregor off with a free pass to repeat the same conduct in another school district. Defendant Sewing was fully aware that the combination of leaving CYFD and law enforcement out of the investigation while agreeing to provide Defendant Gregor with a neutral recommendation would likely result in Defendant Gregor finding another position as a classroom teacher, where he would proceed to groom and abuse young female students in the manner he did at Agua Fria. *See Currier v. Doran*, 242 F.3d 905, 919-20 (10th Cir. 2001) ("By failing to

investigate the allegations of child abuse and by recommending that [the children's father] assume legal custody, [CYFD social worker] conduct put [children] at obvious risk of serious, immediate, and proximate harm, a harm that Doran recklessly and consciously disregarded."). Therefore, Defendant Sewing's conduct placed Plaintiff KS, a young female student in the next school district where Defendant Gregor found employment, at Fairview Elementary School in Espanola, New Mexico, Doc. 7 at ¶ 72, at substantial risk of serious, immediate, and proximate harm.[6]

> **D.  Defendant Gary Gregor's dangerousness was known and obvious to Defendant Sewing.**

Defendant Sewing, with the copious amount of information she received concerning Defendant Gregor's sexual abuse of students at Agua Fria Elementary School, as described above and within the Complaint, cannot seriously contend that Defendant Gregor's dangerousness was not known or obvious to her. Indeed, Defendants appear to concede the satisfaction of this element, as nowhere in the *Motion to Dismiss* is it argued that the risk Defendant Gregor posed to young female students was not obvious to and known by Defendant Sewing.

---

[6] The danger creation "serious, immediate, and proximate harm" element is an inquiry into foreseeability, in order to ensure that defendants are not held accountable for unforeseeable injuries. Other jurisdictions have more simply discussed this element in terms of foreseeability. *See, e.g., Kneipp v. Tedder*, 95 F.3d 1199, 1208 (3d Cir. 1996) (requiring that "the harm ultimately caused was foreseeable and fairly direct"); *Watson v. Methacton Sch. Dist.*, 513 F. Supp. 2d 360, 373 (E.D. Pa. 2007) (noting that "[A] harm is foreseeable when a state actor has actual awareness, based on concrete information, of a risk of harm to an individual or class of individuals such that the actor is on notice that his or her act or failure to act significantly enhances that risk of harm."); *Johnson v. Dallas Indep. Sch. Dist.*, 38 F.3d 198, 201 (5th Cir. 1994) (noting that "the environment created by the state actors must be dangerous; they must know it is dangerous; and, to be liable, they must have used their authority to create an opportunity that would not otherwise have existed for the third party's crime to occur. Put otherwise, the defendants must have been at least deliberately indifferent to the plight of the plaintiff.").

**E.     Defendant Sewing acted recklessly and in conscious disregard of that risk.**

The Tenth Circuit has held "that an act is reckless when it reflects a wanton or obdurate disregard or complete indifference to risk, and that reckless intent is established if the state actor was aware of a known or obvious risk that was so great that it was highly probable that serious harm would follow and he or she proceeded in conscious and unreasonable disregard of the consequences." *See Sutton v. Utah State School for Deaf and Blind*, 173 F.3d 1226, 1238 (10th Cir. 1999) (internal quotation marks and citation omitted).  As described above and within the Complaint, Defendant Sewing acted recklessly and in conscious disregard of the dangers facing Plaintiff KS, a young female student in the very next school district where Defendant Gregor would teach.

By choosing not to contact CYFD or law enforcement about Defendant Gregor's conduct, and by at least consenting to a neutral recommendation, Defendant Sewing affirmatively created the opportunity for Defendant Gregor to find another teaching job and to commit revolting acts of abuse against Plaintiff KS and other young girls.  Defendant Sewing acted with complete indifference to Defendant Gregor's known risk to Plaintiff KS.  In light of the grooming behavior Sewing identified, and the pattern of sexual abuse against young female students she was undeniably aware of, Defendant Sewing acted in complete disregard to the future risk to Plaintiff KS.  See Doc. 7 at ¶¶ 43 – 50.

**F.     Defendant Sewing's conduct, as described within the Complaint and when viewed in total, shocks the conscience.**

In order for Plaintiff KS to demonstrate that Defendant Sewing's actions were "conscience shocking," she "must demonstrate a degree of outrageousness and a magnitude of potential of actual harm that is truly conscience shocking."  *Uhlrig v. Harder*, 64 F.3d 567, 574 (10th Cir. 1995).  Courts are clear that the affirmative conduct of defendants should be viewed in total when determining whether the conduct rises to the level of "conscience-shocking." *Robbins*, 519 F.3d at 1251.  The Tenth Circuit recognizes a difference between decisions made in

emergency situations, however, which are given great deference by courts, and decisions (such as the decisions of Defendant Sewing) made when the governmental actor had ample time to deliberate and plan. *Radecki v. Barela*, 146 F.3d 1227, 1231-32 (10th Cir. 1998). Accordingly, the standard that the Tenth Circuit applies in non-emergency situations when plaintiffs allege danger creation is "deliberate indifference." *Id*. at 1232 ("Where the state actor has the luxury to truly deliberate about the decisions he or she is making, something less than unjustifiable intent to harm, such as calculated indifference, may suffice to shock the conscience.

Defendant Sewing had ample time to deliberate concerning how to respond to the allegations of sexual abuse, including whether to notify the proper authorities, or whether to keep the entire sordid affair an internal matter. Defendant Sewing's deliberate decision to keep the investigation internal and not to notify law enforcement authorities, and to provide Defendant Gregor with a recommendation to future employers that would in no way indicate the extraordinary danger he would pose to young female students, suffices to shock the conscience and more than amounts to deliberate indifference towards Defendant Gregor's future female students, such as Plaintiff KS.

Plaintiffs KS's complaint, which identifies a plausible substantive due process danger creation claim against Defendant SFPS and Sewing, is a complaint that survives a motion to dismiss. Within the four corners of Plaintiff KS's complaint, facts satisfying the elements of danger creation claims are identified. Defendants' *Motion to Dismiss* fails because Plaintiff KS is not required to do more under a Rule 12(b)(6) analysis.

## V.     DEFENDANT SEWING IS NOT ENTITLED TO QUALIFIED IMMUNITY

Defendant Sewing summarily states within the *Motion to Dismiss* that she is entitled to Qualified Immunity. *See* Doc. 19 at p. 8. The circumstances in which dismissal for qualified

immunity are appropriate based solely upon the allegations within initial pleadings are very narrow, however. In fact, concerning 12(b)(6) motions to dismiss asserting an entitlement to qualified immunity, the Tenth Circuit has observed that a complaint should not be dismissed "for failure to state a claim unless it appears beyond doubt that the plaintiff can prove *no set of facts* in support of his claim which would entitle him to relief." *Peterson v. Jensen*, 371 F.3d 1199, 1201 (10th Cir. 2004) (internal citation omitted) (emphasis added).[7] *See also id.* at 1201-02 (noting that Rule 12(b)(6) motions are viewed with disfavor and rarely granted, and that "summary judgment provides the typical vehicle for asserting a qualified immunity defense," and "[a]sserting a qualified immunity defense via a Rule 12(b)(6) motion . . . subjects the defendant to a more challenging standard of review than would apply on summary judgment.") (internal quotation marks and citation omitted).

"Qualified immunity under § 1983 shields officials from civil liability unless their actions violated 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Sanders v. Bd. of Cnty. Com'rs of Cnty. of Jefferson, Colorado*, 192 F. Supp. 2d 1094, 1105 (D. Colo. 2001) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)). The "linchpin of qualified immunity is objective reasonableness." *Id.* When considering the assertion of qualified immunity in the context of a substantive due process claim, the Court must first determine whether the plaintiff has asserted the violation of a constitutional right. *Siegert v. Gilley,* 500 U.S. 226, 231–33 (1991). The Court must then determine whether the constitutional

---

[7]      Some courts have altogether held that qualified immunity is inappropriately challenged with 12(b)(6) motions to dismiss, as the inquiry into immunity necessarily relies on the facts of the case. *See, e.g.*, *Alvarado v. Litscher*, 267 F.3d 648, 651-52 (7th Cir. 2001) (noting that at the pleading stage, the "plaintiff is not required initially to plead factual allegations that anticipate and overcome a defense of qualified immunity" and that "Rule 12(b)(6) is a mismatch for immunity and almost always a bad ground for dismissal")(internal citation omitted).

right was clearly established at the time of incident, so that the state actor could reasonably understand that her conduct violated that established right. *See id.*

A. **Plaintiff KS has asserted a violation of her substantive due process right to be free from intrusion upon her bodily integrity.**

Plantiff KS has clearly asserted the violation of a constitutional right. It is well established that "[s]exual assault or molestation by a school teacher violates a student's substantive due process rights," and that "a teacher's sexual molestation of a student is an intrusion of the student's bodily integrity." *Abeyta v. Chama Valley Indep. Sch. Dist., No. 19*, 77 F.3d 1253, 1255 (10th Cir. 1996) (internal quotation marks and citations omitted). *See also Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 450-51 (5th Cir. 1994) ("Jane Doe's substantive due process claim is grounded upon the premise that schoolchildren have a liberty interest in their bodily integrity that is protected by the Due Process Clause of the Fourteenth Amendment and upon the premise that physical sexual abuse by a school employee violates that right. This circuit held as early as 1981 that the right to be free of state-occasioned damage to a person's bodily integrity is protected by the fourteenth amendment guarantee of due process.")(internal quotations, citations, and alterations omitted). It is also well established, as discussed above, that state actors, like Defendant Sewing, can be held liable for this harm when they create or increase the underlying danger leading to harm. *See Christiansen*, 332 F.3d at 1279.

Unlike cases involving the punitive or disciplinary goals of law enforcement or correctional facilities, for example, "there is never any justification for sexually molesting a schoolchild, and thus, no state interest, analogous to the punitive and disciplinary objectives attendant to corporal punishment, which might support it. *See Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d at 451-52.

**B.** **Plaintiff KS's substantive due process right to bodily integrity was clearly established during the timeframe in question.**

"A right is 'clearly established' if Supreme Court or Tenth Circuit case law exists on point or if the 'clearly established weight of authority from other circuits' found a constitutional violation from similar actions." *Peterson v. Jensen*, 371 F.3d 1199, 1202 (10th Cir. 2004) (quoting *Murrell v. School Dist. No. 1*, 186 F.3d 1238, 1251 (10th Cir. 1999). Plaintiff KS's right to be free from the sexual abuse of a school teacher, as described above, was a constitutional right clearly established at the time of this incident. *See generally Abeyta*, 77 F.3d at 1255. It was further clearly established at the time that "state officials can be liable for the acts of third parties where those officials created the danger that caused the harm." *Armijo By & Through Chavez v. Wagon Mound Pub. Sch.*, 159 F.3d 1253, 1262 (10th Cir. 1998) (internal quotation marks, citation, and alteration omitted).

**C.** **Defendant Sewing is not entitled to Qualified Immunity.**

As discussed above, a 12(b)(6) motion asserting qualified immunity should not be granted unless "it appears beyond doubt that the plaintiff can prove *no set of facts* in support of his claim which would entitle him to relief." *Peterson v. Jensen*, 371 F.3d 1199, 1201 (10th Cir. 2004) (emphasis added). Defendant Sewing cannot meet her burden to establish that Plaintiff KS can prove "no set of facts" that would entitle her to relief, as the facts described above and as alleged within the Complaint support the fact that a reasonable elementary school principal at the time would have understand that her actions, which created the danger leading to the sexual abuse of an elementary school student, violated that student's substantive due process rights.

A reasonable principal would understand that hiring a teacher who she knew or should have known sexually assaulted young female students at a previous school, who then proceeds to sexually assault young female students at her school, and then goes on to sexually assault young

female students at another school, due to that principal's affirmative steps to both keep this teacher from being investigated by law enforcement and to keep him eligible to find a different teaching job, is liable for the created danger and subsequent sexual abuse of those young female students.

Plaintiff KS has set forth sufficient facts within her Complaint to establish Defendant Sewing's violation of KS's substantive due process rights under a danger creation theory, and Defendant Sewing is therefore not entitled to qualified immunity at this time. Discovery should accordingly proceed in this case, with Defendant Sewing able to raise qualified immunity by summary judgment after further development of the facts.

## VI.    THE COMPLAINT CONTAINS SUFFICIENT FACTUAL ALLEGATIONS TO SUPPORT A 42 U.S.C. § 1983 CLAIM AGAINST DEFENDANT SFPS

Defendant Sewing argues that Plaintiff has failed to establish a Section 1983 claim against SFPS. Section 1983 liability extends to SFPS for the "failure to train and for official de facto policies that arise from failing to adopt various policies to adequately protect a class of persons." *Coffey v. United States*, 2011 WL 6013611, at * 33 (D.N.M. Nov. 28, 2011) (unreported decision), *aff'd sub nom. Coffey v. McKinley Cnty.*, 504 F. Appx. 715 (10th Cir. 2012) (internal quotation marks and citation omitted).

In order to establish a claim against SFPS, Plaintiff KS must demonstrate the occurrence of a constitutional injury inflicted pursuant to SFPS's policies or customs. *Monell v. Dept. of Social Servc's of City of NY*, 436 U.S. 658, 691. "[A] causal connection between the unconstitutional act and the authorized decisionmakers may be established when the governing body has exercised its decisionmaking authority with deliberate indifference to the constitutional rights of those affected by its decisions." *Ware v. Unified Sch. Dist. No. 492*, 902 F.2d 815, 819 (10th Cir. 1990). *See also Coffey v. United States*, 2011 WL 6013611, at * 33 ("When the

municipality has actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm, it is liable.")(internal quotation marks, citation, and alterations omitted). *See also Williams ex rel. Hart v. Paint Valley Local Sch. Dist.,* 400 F.3d 360, 369 (6th Cir.2005) ("The evidence must show that the need to act is so obvious that the School Board's conscious decision not to act can be said to amount to a policy of deliberate indifference to Doe's constitutional rights.") (internal quotation marks, citation, and alterations omitted).

> With respect to the "deliberate indifference" standard, it
>
> > may be satisfied when the municipality has actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm. In most instances, notice can be established by proving the existence of a pattern of tortious conduct. In a narrow range of circumstances, however, deliberate indifference may be found absent a pattern of unconstitutional behavior if a violation of federal rights is a highly predictable or plainly obvious consequence of a municipality's action or inaction, such as when a municipality fails to train an employee in specific skills needed to handle recurring situations, thus presenting an obvious potential for constitutional violations.

*Lovelace v. County of Lincoln*, 2011 WL 2731179, at * 8 (D.N.M. June 30, 2011) (quoting *Carr v. Castle,* 337 F.3d 1221, 1229 (10th Cir. 2003)). *See also Barnes v. District of Columbia,* 793 F. Supp. 2d 260 (D.D.C. 2011) (discussing the policy or custom of "inaction" and noting that "plaintiffs must demonstrate that the District failed to respond to a need in a manner that amounts to deliberate indifference towards the constitutional rights of persons in its domain. . . . [T]he question is whether the District knew or should have known of the risk of constitutional violations, an objective standard. Deliberate indifference means that, faced with actual or constructive knowledge that its agents will *probably* violate constitutional rights, *the city may not adopt a policy of inaction*.") (internal quotation marks, citation, and alteration omitted) (emphasis added).

**A.    SFPS has created or condoned poor screening, licensing, hiring, monitoring, and supervising practices and policies.**

Plaintiff KS alleges that SFPS is responsible for properly screening, hiring, monitoring, supervising, and disciplining staff and employees.  As discussed in more detail below, and within the Complaint, SFPS has created a policy or custom whereby teachers and administrators are hired without adequate screening and are not properly trained, monitored or disciplined.  These policies or customs have, in turn, violated the students' constitutionally protected rights.  *See generally Barnes v. District of Columbia*, 793 F. Supp. 2d at 283 ("[T]he question is whether the District knew or should have known of the risk of constitutional violations, an objective standard.  Deliberate indifference means that, *faced with actual or constructive knowledge that its agents will probably violate constitutional rights, the city may not adopt a policy of inaction. . . .* [I]t was highly predictable that the District's indifference led directly to the very consequence that was so predictable.")(internal quotation marks, citation, and alteration omitted) (emphasis added).

Defendant SFPS hired Defendant Gregor soon after he was formally terminated from a teaching position in Utah. Doc. 7 at ¶ 32. This hire occurred without inquiry into Gregor's criminal background or employment history, which would have uncovered the fact that he was fired for, and criminally charged with, sexually assaulting his young female students in Utah. Doc. 7 at ¶ 35.  Defendant Gregor received negative evaluations during his first position as a classroom teacher at Ortiz Middle School, an SFPS school, yet Defendant Sewing, the principal of Agua Fria Elementary School, also within SFPS, hired Gregor in 2001.  Doc. 7 at ¶ 37-40.

Not surprisingly, during Defendant Gregor's time at Agua Fria Elementary School, Defendant Gregor sexually abused multiple young female students.  Nobody within the SFPS

school system, including school principal Defendant Sewing, reported the sexual abuse to CYFD or law enforcement, contrary to statutory requirements to do so. Doc. 7 at ¶ 49-50.

Rather, Defendant SFPS negotiated a settlement with Defendant Gregor allowing him to resign as long as he did not reapply or accept another position from SFPS, so that SFPS would be released from future civil liability arising from his position with SFPS. Doc. 7 at 66. As part of this agreement, Defendant SFPS agreed to provide Defendant Gregor with a neutral reference for future prospective employers, and would not provide the prospective employer with any information concerning Defendant Gregor's sexual abuse of students. *Id.*

Due to its policies and customs, as described above and within the Complaint, Defendant SFPS hired a sexual predator with a documented history to teach in two of its schools, and had actual knowledge that the manner in which it released Defendant Gregor from employment was substantially certain to result in additional constitutional violations, namely the sexual abuse of other young female students such as Plaintiff KS. These actions, consistent with flawed policies and customs, establish a conscious disregard for the risk of future harm.

**B.      Plaintiff KS has suffered constitutional injuries causally connected to SFPS's policies and customs.**

As a result of the SFPS's failure to properly screen, hire, monitor and supervise and discipline its staff and employees, the principal of Agua Fria Elementary School, Defendant Sewing, hired Defendant Gregor, a teacher with a strong history of sexual abuse against students. Defendant Gregor sexually abused Agua Fria students. Then SFPS and Defendant Sewing released him with every ability to reoffend within another school district. Plaintiff KS's injuries, namely her sexual abuse at the hands of Defendant Gregor, occurring in the very next district where Defendant Gregor would teach, are directly connected to the policies and customs of SFPS.

Defendant SFPS's argument that Plaintiff KS has failed to state a claim against SFPS is groundless. Rule 12(b)(6) requires a legal rather than a factual analysis, and when considering and addressing a Rule 12(b)(6) motion, the court must accept as true *all* factual allegations pled in the entire complaint, view those allegations in the light most favorable to the plaintiff, and draw all reasonable inferences in the plaintiff's favor. *See Smith v. United States*, 561 F.3d 1090, 1097 (10th Cir. 2009). Thus, Plaintiff KS respectfully requests that this Court consider the four corners of the Complaint (Doc. 7) and deny SFPS's *Motion to Dismiss*.

## VII. PLAINTIFF HAS STANDING TO MAKE A CLAIM FOR COMMON LAW NEGLIGENCE PER SE AGAINST DEFENDANT SEWING

### A. Plaintiff KS clearly has standing to sue Defendant Sewing for Negligence Per Se.

Finally, and confusingly, Defendants argue that Plaintiff KS lacks standing to assert a claim for common law negligence per se against Defendant Sewing. Doc. 19, at p. 10. "Article III of the Constitution limits federal courts' jurisdiction to certain 'Cases' and 'Controversies.'" *Clapper v. Amnesty Int'l USA*, __ U.S. __, 133 S.Ct. 1138, 1146 (2013). One element of Article III's case or controversy requirement is the establishment of standing to sue. *See id.*

The standing inquiry focuses on the existence of injury-in-fact, requiring that an injury "be concrete, particularized, and actual or imminent; fairly traceable to the challenged action and redressable by a favorable ruling." *Id.* (quoting *Monsanto Co. v. Geerston Seed Farms*, 561 U.S. 139 (2010). The case upon which Defendant Sewing primarily relies, *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 562-63 (1992), identifies that the "injury-in-fact" test requires more than a speculative injury in order to file suit. In *Lujan*, petitioners challenged certain activities that increased the rate of extinction of some endangered species. *Id.* at 562 The Supreme Court held that the "desire to use or observe an animal species, even for purely esthetic purposes, is

undeniably a cognizable interest for purpose of standing . . . [b]ut the 'injury in fact' test requires more than an injury to a cognizable interest. It requires that the party seeking review be himself among the injured." *Id.*

To argue that Plaintiff KS has not suffered actual injury from being repeatedly sexually abused by her fourth grade teacher (in large part due to the fact that SFPS failed to take reasonable steps to avoid hiring Defendant Gregor, or to keep Defendant Gregor from going on to reoffend at another school), or to argue that this lawsuit cannot possibly redress these injuries, is not only illogical, it is callous. *See* Doc. 19 at p. 11("Plaintiff has failed to allege the kind of concrete and particularized injures that may satisfy constitutional standing requirements.").

**B.  Within her Complaint, Plaintiff sets forth facts establishing a prima face case for Negligence Per Se.**

A prima facie case for negligence per se requires that (1) there is a "statute which proscribes certain actions or defines a standard of conduct, either explicitly or implicitly; (2) the defendant must violate the statute; (3) the plaintiff must be in the class of persons sought to be protected by the statute; and (4) the harm or injury to the plaintiff must be of the type the legislature through the statute sought to prevent." *Health v. La Mariana Apartments*, 2007-NMCA-003, ¶ 7, 11 N.M. 131, 151 P.3d 903 (quoting *Archibeque v. Homrich*, 88 N.M. 527, 532, 543 P.2d 820, 825 (1975) (internal alterations omitted).

NMSA 1978, §32A-4-3 places a mandatory reporting requirement on ten specific categories of people "who are likely to come into contact with abused and neglected children during the course of their professional work." *State v. Strauch*, 2014-NMCA-020, ¶ 19. School teachers and school officials are included within this grouping. Section 32A-4-3 requires that school teachers or officials "who know[ ] or ha[ve] a reasonable suspicion that a child is an abused or a neglected child shall report the matter immediately" to law enforcement or CYFD.

Section 32A-4-3 imposes this mandatory requirement to "ensure prompt investigation" and "ensure that immediate steps are taken to protect the health or welfare of the alleged abused or neglected child, as well as that of any other child under the same care who may be in danger of abuse or neglect." Section 32A-4-3(C). A violation of this statute may lead to criminal sanctions.

Defendant Sewing explicitly violated this statute, which placed an absolute duty on her to report known or suspected child abuse to CYFD or to the police. Plaintiff KS, as a child, was clearly within the class of persons Section 32A-4-3 sought to protect, and the sexual abuse Plaintiff KS endured was clearly the type of harm or injury the statute seeks to protect. Thus, within the four corners of Plaintiff KS's complaint, she has stated a prima facie case for negligence per se. Defendant Sewing failed to comply with this statutory reporting requirement, aimed to prevent any continued or future harm caused to children, like Plaintiff KS. Defendant Sewing's *Motion to Dismiss* should accordingly be denied.

## VIII. CONCLUSION

For the reasons above, Plaintiff KS provided sufficient factual allegations within her May 5, 2014 *First Amended Complaint for Civil Rights Violations* to state claims for relief under 42 U.S.C. § 1983 against Defendants SFPS and Sewing, and common law negligence per se against Sewing. Additionally, for the reasons above, Defendant Sewing is not entitled to qualified immunity. Plaintiff KS respectfully requests that the Court deny Defendants' *Motion to Dismiss*.

Respectfully submitted,

ROTHSTEIN, DONATELLI, HUGHES,
 DAHLSTROM, SCHOENBURG & BIENVENU, LLP

/s/ Carolyn M. "Cammie" Nichols 7/21/14
CAROLYN M. "CAMMIE" NICHOLS
BRENDAN K. EGAN
MAGGIE H. LANE
500 Fourth Street NW, Suite 400
Albuquerque, NM 87102
(505) 243 1443
cmnichols@rothsteinlaw.com
bkegan@rothsteinlaw.com
mhlane@rothsteinlaw.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 21st day of July, 2014, I filed the foregoing pleading electronically through the CM/ECF system, which caused all parties or counsel to be served by electronic means.

/s/ Carolyn M. "Cammie" Nichols 7/21/14
ROTHSTEIN, DONATELLI, HUGHES, DAHLSTROM,
SCHOENBURG & BIENVENU, LLP