IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

K. S.
*by and through her parents and
next friend*
T.S.
*next friend*
A.R.
    Plaintiffs,

v.                                                  Case No. 14-cv-385 SCY/KBM

SANTA FE PUBLIC SCHOOLS *et al.*

    Defendants.

## ORDER

THIS MATTER is before the Court on Defendants Santa Fe Public School District and Vickie L. Sewing's Motion to Dismiss. *Doc. 19.* Having reviewed Defendants' Motion, and being fully advised, the Court finds that the Motion should be **GRANTED** in part and **DENIED** in part.

**I.    BACKGROUND**

Plaintiff K.S. was, during the 2007-8 school year, a fourth-grade student at Fairview Elementary School in Defendant Gary F. Gregor's class. *Doc. 7,* First Amended Complaint (FAC) ¶¶ 7, 72, 133, 174. Plaintiffs allege that throughout the school year, Defendant Gregor repeatedly molested K.S. and other female students. *Id.* ¶¶ 133, 139, 153, 155, 158, 175, 178-187, 191-2. Plaintiffs contend that Defendant Gregor has a long history of sexually molesting his female students, of which Defendant Montoya, the principal at Fairview during the relevant time period, and Defendants Santa Fe Public School District (SFPS) and Espanola Public School District (EPSD) were, or should have been, aware. *Id.* ¶¶ 3, 5, 6, 34, 44, 50-53, 57-72, 214.

Defendant Gregor was first licensed to teach in Utah in 1984, where he taught fourth, fifth, and sixth-grade students, until 1996. *Id.* ¶¶11, 12, 28. In January and October, 1994, he was accused of sexual misconduct with several of his female students. *Id.* ¶¶ 12-25. Defendant Gregor was charged in January 1995 with two felony counts of aggravated sexual abuse of a child and one misdemeanor count of lewdness involving a child. *Id.* ¶ 26. The trial judge dismissed these charges, stating "not[ing] that even assuming the truthfulness of the allegations against [Defendant] Gregor, the conduct did not rise to the level of a criminal act." *Id.* ¶ 27. The Utah Professional Practices Advisory Commission reprimanded Defendant Gregor for "exhibiting a lack of professional judgment in some of [his] teaching activities. . .", Plaintiff does not allege that any entity explicitly determined that he engaged in the sexual misconduct with which he was accused. *Id.* ¶ 28.

After a brief stint teaching on a reservation in Montana, from which he was apparently terminated for improperly engaging in unspecified after school activities with students, he applied for a job with Defendant SFPS, for which he was hired either in 1998 or 2000. *Id.* ¶¶ 30, 32-33. He first worked under a Certified School Instructor Contract for the 2000-01 school year, teaching sixth grade special education at Ortiz Middle School. *Id.* ¶¶ 36-37. Defendant Gregor acquired licenses to teach Grades Kindergarten through 8 and Special Education Grades Kindergarten through 12 in July 2001. *Id.* ¶¶ 31. After his year at Ortiz Middle School, Defendant Gregor was not recommended for rehiring, but was hired as a fourth grade teacher by Defendant Vickie Sewing at Agua Fria Elementary School in August 2001. *Id.* ¶¶ 38-39.

In 2002 and 2003 Defendant Gregor received positive evaluations, including a positive evaluation from Defendant Sewing. *Id.* ¶¶ 41-42. On January 27, 2004, Defendant Gregor took his class on a field trip to the Museum of International Folk Art. *Id.* ¶¶ 43-44. Docents working

at the museum observed Defendant Gregor engaging in "inappropriate" behavior with some of his female students. *Id.* These reports were conveyed to the Director of Education at the museum, who then notified Defendant Sewing of the incident on January 28, 2004. *Id.* ¶ 43. Defendant Sewing first contacted the docents directly and then notified Defendant SFPS's Chief Human Resources Officer, who placed Defendant Gregor on administrative leave on February 3, 2004. *Id.* ¶¶ 45-46. Subsequent interviews of Defendant Gregor's students by both Ms. Sewing and SFPS human resources staff member indicated that Defendant Gregor had engaged in a pattern of inappropriate behavior with his female students. *Id.* 47-48. On February 26, 2004, Defendant SFPS sent a written report to the New Mexico Public Education Department stating that their investigation led to the finding that Defendant Gregor engaged in inappropriate physical contact with his female students. *Id.* ¶ 60.

On April 13 and 27, 2004, Helen Nakdimen of the Santa Fe Rape Crisis center conducted "Project Aware" presentations with Defendant Gregor's students, the point of which were to "help students understand good touch/bad touch, and about boundaries and their bodies." *Id.* ¶¶ 56-57. During these presentations, Defendant Gregor's students relayed numerous reports of inappropriate conduct on the part of Defendant Gregor, which Ms. Nakdimen disclosed to Defendant Sewing on May 6, 2004. *Id.* ¶¶ 57. Defendant SFPS ultimately decided to discharge Defendant Gregor. *Id.* ¶ 51. As an apparent result of Ms. Nakdimen's report, Defendant Gregor declined to participate in a discharge hearing. *Id.* ¶¶ 63, 66. In an agreement signed June 15, 2004, Defendant Gregor agreed to resign, not apply for any other position with SFPS, and release Defendant SFPS from any civil liability, in exchange for a neutral reference. *Id.* ¶¶ 64-66. On May 13, 2005, the New Mexico Department of Education issued a formal written reprimand that was permanently attached to his New Mexico teaching licensure file documenting an

investigation by the Educators Ethics Bureau that found Defendant Gregor had engaged in inappropriate sexual contact with his female students. *Id.* ¶ 68-70. Further, information about Defendant Gregor's reprimand was posted on the National Association of State Directors of Teacher Eduction and Certification (NASDTEC) Clearinghouse. *Id.* ¶ 71.

Defendant EPSD hired him in January 2005, and there, Plaintiffs allege, he continued to molest students, including Plaintiff. ¶¶ 72, 133, 139, 153, 155, 158, 175, 178-187, 191-2. K.S.'s parents reported Defendant Gregor's conduct to the Espanola Police Department on April 14, 2009. *Id.* ¶¶ 205-206. After interviewing K.S. on May 12, 2009, Detective Bryan Martinez reported her allegations to Superintendent Cockerham and Assistant Superintendent Valdez of Defendant EPSD. *Id.* ¶ 206. On May 15, 2009, EPSD placed Defendant Gregor on administrative leave. *Id.* ¶ 207. In May 2010, Defendant EPSD began to investigate Defendant Gregor. *Id.* ¶ 213. Defendant Gregor applied for teaching licensure renewal on May 27, 2010. Although he received recommendations for renewal from Defendant Montoya and Defendant EPSD, his request for renewal was denied. *Id.* ¶¶ 208-210, 218. Defendant Gregor currently is not licensed to teach in New Mexico. *Id.* ¶ 218.

Plaintiffs originally brought this action in First Judicial District Court of New Mexico on February 27, 2014, and Defendants removed the action to this Court on April 25, 2014. *Doc. 1*, Ex. F. Plaintiffs amended their Complaint on May 5, 2014. *Doc. 7*. In the FAC, Plaintiffs bring ten counts, alleging violations of both federal and state law. *Id.* On June 5, 2014 Defendants SFPSD and Vickie Sewing filed their Motion to Dismiss Counts II, III, and X (which comprise all the Counts against them) under Federal Rule of Civil Procedure 12(b)(6) and for qualified immunity. *Doc. 19*. The Motion was fully briefed on August 18, 2014. *Doc. 42*.

## II.   ANALYSIS

Plaintiffs contend that Defendant SFPS, a municipal entity, is liable for violating K.S.'s Fourteenth Amendment substantive due process rights pursuant to 42 U.S.C. Section 1983 for "defective licensing and hiring, defective supervision, and [maintaining a] custom or policy" that permitted or condoned Defendant Gregor's sexual predation. FAC ¶¶ 235-236. Likewise, they argue that Defendant Sewing, in her capacity as a state actor employed by SFPS, violated K.S.'s Fourteenth Amendment rights pursuant to Section 1983 by failing to report Defendant Gregor's misconduct to state or local authorities. *Id.* ¶¶ 238-248. In addition to the Section 1983 claim, Plaintiffs also assert that Defendant Sewing is liable under a negligence per se theory for failing to follow her statutory duty to report Defendant Gregor's misconduct.

Defendants respond that Plaintiff K.S.'s Fourteenth Amendment claims against SFPS and Sewing fail because she cannot state a claim under a "danger-creation" theory, she has not demonstrated municipal liability, and Defendant Sewing is protected by qualified immunity. They further argue that Plaintiff lacks standing to bring her state law claim, either because she has not demonstrated an actual injury and has failed to demonstrate causation.

The Court finds that Plaintiffs have not stated a plausible claim for relief under the "danger creation" theory because Plaintiffs fail to establish the necessary precondition of affirmative conduct on the part of Defendants. Because Plaintiffs cannot meet a necessary precondition a of the "danger creation" test, their substantive due process claims against Defendants SFPS and Sewing are dismissed with prejudice. With regard to their Count X per se negligence claim, Plaintiffs have pled sufficient facts to demonstrate standing, and Defendant Sewing's motion to dismiss this claim is denied.

5

Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss a complaint for failure to state a claim upon which the court can grant relief. Under this Rule, a motion to dismiss "admits all well-pleaded facts in the complaint as distinguished from conclusory allegations." *Mitchell v. King*, 537 F.2d 385, 386 (10th Cir. 1976) (citing *Jones v. Hopper*, 410 F.2d 1323 (10th Cir. 1969)). While a complaint does not require detailed factual allegations to survive a Rule 12(b)(6) motion to dismiss, it "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Once the court must accepts as true well-pleaded factual allegations, it must then consider whether "they plausibly give rise to an entitlement to relief." *Barrett v. Orman*, 373 F. App'x 823, 825 (10th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009)). The court's consideration, therefore, is limited to determining whether the complaint states a legally sufficient claim upon which the court can grant relief. *See Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999). The court is not required to accept conclusions of law or the asserted application of law to the alleged facts. *See Hackford v. Babbitt*, 14 F.3d 1457, 1465 (10th Cir. 1994). Nor is the Court required to accept as true legal conclusions that are presented as factual allegations. *See Brooks v. Sauceda*, 85 F. Supp. 2d 1115, 1123 (D. Kan. 2000). The Court must, however, view a plaintiff's allegations in the light most favorable to her. *Schrock v. Wyeth, Inc.*, 727 F.3d 1273, 1280 (10th Cir. 2013).

### A. Plaintiffs' Substantive Due Process Claims Against Defendants SFPS and Sewing Fail to State a Claim Under the "Danger Creation" Theory

Generally speaking, the state cannot be held liable when a third party violates an individual's substantive due process rights. *Liebsen v. New Mexico Corr. Dept.*, 73 F.3d 274, 276 (10th Cir. 1996); *Deshaney v. Winnebago Cty. of Social Serv.* 489 U.S. 189, 197 (1989) ("As

a general matter, then, we conclude that a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause.") There are two widely recognized exceptions to this doctrine, the second growing out of the first: the "special relationship" theory and the "danger creation" theory. *Montoya ex rel. S.M. v. Espanola Pub. Sch. Dist.*, 904 F.Supp.2d 1173, 1178 (D.N.M. 2012). Plaintiffs proceed under the "danger creation" theory. *Doc. 34* at 7 n.3.

"The state-created danger theory is a means by which a state actor might be held liable for an act of private violence absent a custodial relationship between the victim and the State, under narrowly prescribed circumstances bearing upon conduct, causation, and state of mind, provided the danger the state actor created, or rendered the victim more vulnerable to, precipitated a deprivation of life, liberty, or property in the constitutional sense." *Gray v. Univ. of Colo. Hosp. Auth.*, 672 F.3d 909, 922 (10th Cir. 2012).

As the Tenth Circuit elucidated in *Uhlrig v. Harder*, in order for liability to attach under this theory, "it is not enough to show that the state increased the danger of harm from third persons; the [§] 1983 plaintiff must also show that the state acted with the requisite degree of culpability in failing to protect the plaintiff." 64 F.3d 567, 573 (10th Cir. 1995) (quoting *Leffall v. Dallas Indep. Sch. Dist.*, 28 F.3d 521, 531 (5th Cir. 1994)). Since *Uhlrig*, the Tenth Circuit has developed two preconditions and a six-part test for establishing a danger creation claim. The two preconditions are "a showing of affirmative conduct" and "private violence." *Estate of B.I.C. v. Gillen*, 710 F.3d 1168, 1173 (10th Cir. 2013). [1] Affirmative conduct is "directed at a discrete

---

[1] As the Tenth Circuit explained in *Gray* "a precondition to our application of the state-created danger theory is an act of 'private violence.'" *Id.* at 927. The Court notes that in Paragraph 224, Plaintiffs allege that Defendant Gregor is a state official who acted under color of state law. In theory, accepting the allegations in Plaintiffs' complaint as true, Plaintiffs' due process claims against Defendants SFPS and Sewing should necessarily fail because they have alleged that a public, not private, actor harmed K.S. However, Defendants have failed to raise that argument, and the Court will therefore proceed as if Defendant Gregor was a private actor.

plaintiff rather than at the public at large." *Ruiz v. McDonnell*, 299 F.3d 1173, 1183 (10th Cir. 2002). Once those preconditions are met, the plaintiff must then establish each of the following six elements: (1) the state entity and individual actors must have created, or increased, the plaintiff's vulnerability to the danger; (2) plaintiff was a member of a limited and specifically definable group; (3) defendant's conduct put plaintiff at substantial risk of serious, immediate, and proximate harm; (4) the risk was obvious and known; (5) defendants acted recklessly in conscious disregard of that risk; and (6) such conduct, when viewed in total, shocks the conscience. *Rost ex rel. K.C. v. Steamboat Springs RE-2 Sch. Dist.*, 511 F.3d 1114, 1126 (10th Cir. 2008)(citing *Christiansen v. City of Tulsa,* 332 F.3d 1270, 1281 (10th Cir. 2003)). The Court need not analyze these six elements, however, because Plaintiffs have failed to plead facts that could constitute affirmative conduct under Tenth Circuit precedent.[2]

Defendants assert that Plaintiffs have not shown they committed any affirmative danger creating action against Plaintiff K.S., nor can they demonstrate immediate harm since her injury arose two to three years after Defendant Gregor's conduct at SFPS. *Doc. 19* at 8-9. Plaintiff counters with three examples of affirmative conduct creating a danger to Plaintiff: (1) Defendants' failure to report Defendant Gregor's numerous instances of inappropriate conduct to authorities other than the New Mexico Department of Education, (2) the creation of the appearance of a proactive investigation that Defendants would ultimately not act on, and (3)

---

[2] The Tenth Circuit has also indicated that these pre-conditions are incorporated into analysis of the six factors. *See Briggs v. Johnson*, 274 F. App'x 730, 734 (10th Cir. 2008) (noting the six factors and then stating, "[a]s to the first element, Defendants' actions must involve affirmative conduct; the failure to act, even in the face of a known risk, is insufficient."); *see also Gray.* 672 F.3d at 922 ("We made nary a mention that the harm to the child in no sense involved (at least on a fair reading of the opinion) affirmative conduct on the part of state actors or private violence—factors that Graham and Uhlrig established as preconditions to the state-created danger theory's application in the Tenth Circuit. Instead of inquiring into the presence of these necessary preconditions as an initial matter, we proceeded directly to a six-factor test originating with *Uhlrig* and revised in *Armijo* . . .."). Whether the questions of "private violence" and "affirmative conduct" are analyzed as part of the six factors or as separate pre-conditions, however, is irrelevant: all decisions agree that they must both exist. In this opinion, the Court analyzes them as separate pre-conditions.

failure to provide a negative, rather than neutral reference for future employment. *Doc. 34* at 8-11. Each of these alleged affirmative acts, however, fails to clear the high bar set to state a claim under the danger creation theory. *See Gray*, 672 F.3d at 915 (characterizing the "state-created danger theory of constitutional liability" as a "dicey theory").

For a plaintiff to successfully allege the existence of an affirmative act under a danger creation theory, she must establish that the act was affirmative; that it was directed toward the plaintiff rather than the public at large; and that the act threatened some immediate harm. *Briggs v. Johnson*, 274 F. App'x 730, 735 (10th Cir. 2008) ("[n]ot all affirmative conduct is sufficient to support a substantive due process claim. . .[it] should typically involve conduct that imposes an immediate threat of harm, which by its nature has a limited range and duration. Additionally, the conduct must be directed at the plaintiff, not the public in general."); *see also Hernandez v. Ridley*, 734 F.3d 1254, 1260 (10th Cir. 2013) (noting that inaction will not typically be considered affirmative conduct).

Plaintiff's first example fails because a failure to report does not constitute an affirmative act. Indeed, in *Briggs*, a case on which Plaintiff relies, the district court dismissed six claims of failure to act including a failure to report claim, and these rulings were left undisturbed. *Briggs*, 274 F. App'x at 733. In contrast, the claim that survived Defendants' motion to dismiss in *Briggs* involved "alleged affirmative conduct on the part of Defendants by asserting they discouraged the reporting of additional incidents of abuse against Kelsey." *Id*. at 736. No doubt realizing the difficulty of characterizing failures to act as affirmative acts, Plaintiffs argue that Defendants SFPS and Sewing had a duty to report Defendant Granger's alleged conduct to the Children, Youth and Family Department ("CYFD") and law enforcement, implying that that

9

their failure to do so should be treated as affirmative conduct . *Doc. 34* at 5, 9. Plaintiffs' argument is unavailing. First, as the Supreme Court explained in *DeShaney*:

> The people. . .may well prefer a system of liability which would place upon the State and its officials the responsibility for failure to act in situations such as the present one. They may create such a system, if they do not have it already, by changing the tort law of the State in accordance with the regular lawmaking process. But they should not have it thrust upon them by this Court's expansion of the Due Process Clause of the Fourteenth Amendment.

*DeShaney*, 489 U.S. at 203; *accord. Stevens v. Umsted*, 131 F.3d 697, 706 (7th Cir. 1997)(rejecting plaintiff's argument that a superintendent's failure to report sexual assaults suffered by a student as required by an state statute was an affirmative act.)

Nor does duty imposed by the state statute Plaintiffs cite appear to apply to Defendants. Plaintiffs allege that Defendant Sewing was required to report Defendant Gregor's 2004 conduct pursuant to New Mexico Statute Section 32A-4-3(A). *Doc. 34* at 5, 9. This section of the New Mexico Abuse and Neglect Act, titled "Duty to report child abuse and child neglect; responsibility to investigate child abuse or neglect; penalty" requires that "[e]very person, including…a school official...who knows or has a reasonable suspicion that a child is an abused or a neglected child" immediately report the matter either to a local law enforcement agency, the children, youth and families department, or tribal authorities. The definitions section of this statute, 32A-4-2, further defines abused and neglected in relation to the child's treatment by her parent, guardian, or custodian. The terms parent, guardian, and custodian are in turn defined as "a biological or adoptive parent if the biological or adoptive parent has a constitutionally protected liberty interest in the care and custody of the child"; "a person appointed as a guardian by a court or Indian tribal authority or a person authorized to care for the child by a parental power of attorney as permitted by law"; and "an adult with whom the child lives who is not a

parent or guardian of the child" respectively. NMSA 1978 § 32A-1-4. It would appear, therefore, that this statute mandates the reporting of parental abuse or neglect, not abuse by a school employee. *See State ex rel. Children, Youth, and Families Dept*., 999 P.2d 1045, 1052-53 (N.M. Ct. App. 2000)(" Under the Act, an abused child is one who has suffered abuse or other harm by the child's parent, guardian, or custodian. . . A neglected child is one who has been neglected by the child's parent, guardian, or custodian."). Plaintiffs have not anywhere in their briefing pled that Defendant Gregor stood in the capacity of parent, guardian, or custodian to any of the alleged victims at Defendant SFPS. Therefore, Defendant Sewing cannot be said to have had a mandatory duty to report his conduct the New Mexico Abuse and Neglect Act.

Plaintiffs' second example of affirmative conduct, the creation of the appearance of a proactive investigation that Defendants would ultimately not act on, is essentially a lulling allegation. The Court notes first that in *Robbins v. Oklahoma*, the Tenth Circuit made clear that "allegations of 'lulling' and 'doing nothing' do not give rise to a reasonable expectation of relief given that *DeShaney* requires an affirmative act before imposing liability." 519 F.3d 1242, 1252 (10th Cir. 2008). In addition, this conduct was not directed at Plaintiffs, but rather, as Plaintiffs explain, at the parents of the children attending SFPS. Defendants' alleged misrepresentation that they would undertake an investigation into Defendant Gregor in this case did not result in any affirmation that the state would provide care or protection of K.S., and therefore cannot be considered "affirmative conduct."

As to the third example, the provision of a neutral reference, Plaintiffs essentially assert that this conduct was an affirmative misrepresentation and therefore affirmative conduct. The Court disagrees. First, the Court doubts that the reference could, based on the content, be treated as any affirmative misrepresentation about his conduct as a teacher. *Doc. 1* ¶ 66. But, even

assuming that the reference was, in fact, affirmative conduct, there is again the problem of whom that conduct was directed. Here, the neutral reference would not have been provided to K.S. or her parents, but to Defendant EPSD and thus created a danger for all potential students, not K.S. specifically. Further, this type of "misrepresentation" also does not constitute affirmative conduct, as the Tenth Circuit explained in *Gray.* There, defendant medical care providers assured a patient's family that the patient would receive twenty-four hour care. *Gray,* 672 F.3d at 912. The patient later died, allegedly as a result of having been left unattended. *Id.* Plaintiffs argued that the defendant hospital's policy of allowing patients to be left unattended for periods of time, despite assurances otherwise to families, constituted a substantive due process violation under the danger creation theory. *Id*. at 913. . The Tenth Circuit rejected this theory, however, and stated:

> To be sure, Defendants' policies and customs did not increase the danger to the public at large in any real sense, but rather to a defined group, namely, patients in the EMU. . . [But] Defendants' adoption of policies and customs generally applicable to all EMU patients, even if done in reckless disregard of a generalized risk, did not constitute affirmative conduct sufficient to impose § 1983 liability on Defendants under the state-created danger theory.

*Id.* at 927. *Gray* also cites to numerous other Tenth Circuit decisions that reaffirm the principle that policies and customs directed at a broad populace as opposed to a discrete plaintiff do not suffice under a danger creation theory. *See id.* at 927. The genesis of this principle is the Supreme Court's proclamation in *DeShaney* that, "[a]s a general matter, then, we conclude that a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." *DeShaney,* 489 U.S. at 197.

Plaintiffs have failed to present facts that demonstrate the alleged conduct of Defendants SFPS and Sewing created a danger to K.S. as opposed to the public in general. They did not fail to report Defendant Gregor's alleged abuse of Plaintiff K.S., nor fail to investigate it, nor

12

reassure K.S.'s parents that they would protect K.S. from Defendant Gregor. Instead, according to Plaintiffs' own averments, at most they failed to report to the correct entities, or somehow concealed, Defendant Gregor's conduct with regard to students at SFPS from the public at large. Because Plaintiffs have failed to allege actions directed at them, as opposed to a generalized group, they do not sufficiently allege affirmative acts by Defendants SFPS or Sewing. *Martinez v. California*, 444 U.S. 277, 100 S.Ct. 553 (1980) (state officials' decision to parole an inmate five months early might have created a danger to the public at large, but did not create a specific danger to the individual he murdered when released); *Ruiz*, 299 F.3d at 1183 (explaining that the failure to properly license a daycare center where a child was abused and ultimately died from his injuries not affirmative conduct because "[u]nlike the direct placement of a child into an abusive home, the mere licensure. . .was not an act directed at [the victim] which, in and of itself, placed [the victim] in danger" but rather posed an indefinite danger to any child placed in the center.). Further, Plaintiffs' § 1983 claims against Defendants SFPS and Sewing fail because they do not "impose an immediate threat of harm, *which by its nature has a limited range and duration*." *Briggs*, 274 F. App'x at 735 (emphasis added). Under Plaintiffs' theory, Defendants SFPS and Sewing would violate the substantive due process rights of any unspecified Plaintiff Defendant Gregor harmed at any point in the future. The parameters of a § 1983 claim under substantive due process simply do not extend this far, and the Supreme Court has indicated a general reluctance to broaden its reach. *See District Attorney's Office v. Osborne*, 557 U.S. 52, 72 (2009); *Albright v. Oliver,* 510 U.S. 266, 272 (1994); *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992).

### B. Defendant Sewing is entitled to qualified immunity

Qualified immunity protects public officials from liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). When a defendant raises this defense, the burden shifts to the plaintiff to show both that the defendant's alleged conduct violated the law and that that law was clearly established when the alleged violation occurred. *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). A right is clearly established "if [t]he contours of the right are sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* The action at issue need not have been previously declared unlawful, but its unlawfulness must be obvious in light of preexisting law. *Beedle v. Wilson*, 422 F.3d 1059 (10th Cir. 2005). Apparent unlawfulness is generally demonstrated when there is controlling authority on point or when the clearly established weight of authority from other courts supports plaintiff's interpretation of the law. *Id.* As with other motions to dismiss, in a motion to dismiss in qualified immunity case a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. *Iqbal*, 556 U.S. at 677 (quotation omitted).

Plaintiffs contend that Defendant Sewing's intentional refusal to affirmatively inform either local authorities or Defendant EPSD about Defendant Gregor's conduct at SFPS enhanced the danger to K.S. and made her vulnerable to Defendant Gregor's predations. *Doc. 34* at 18-19. Plaintiffs rely on numerous cases that stand for the proposition that the law was clearly established that K.S.'s Fourteenth Amendment substantive due process rights were violated when Defendant Gregor allegedly abused her. *See doc. 34* at 17-18. But that is not the issue before this Court: the issue is whether Defendant Sewing's conduct violated clearly established

law such that a reasonable official in her position, in 2004-5, would have known that to be so. *Currier*, 242 F.3d at 923. Plaintiffs cite no law for this proposition, and based on the Court's discussion above, the Court cannot otherwise find that there would have been clearly established law in 2004-5 that Defendant Sewing's conduct would violate Plaintiff K.S.'s due process rights. *See id.* (a demonstration of clearly established law generally requires "a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains.") Defendant Sewing is granted qualified immunity from Plaintiff's Section 1983 claim based on the violation of her Fourteenth Amendment right to substantive due process.

    **C.**    **Plaintiffs Have Standing to Bring Count X**

Defendant Sewing also moves to dismiss Plaintiffs' Count X, a common law *per se* negligence claim, as it pertains to her,[3] on the basis that Plaintiff K.S. lacks standing.[4] *Doc. 19* at 10-11. Plaintiffs allege that Defendant Sewing was required to report Defendant Gregor's 2004 conduct pursuant to New Mexico Statute Section 32A-4-3(A) and that they have pled a prima facie case demonstrating that her failure to do so constitutes negligence *per se*. *Doc. 1* at ¶¶ 62, 303-306, *doc. 34* at 23-25.

In order to invoke federal jurisdiction, Plaintiffs must demonstrate that there is a case or controversy amenable to adjudication by this Court. *Lujan v. Defendants of Wildlife*, 504 U.S. 555, 560 (1992). A case or controversy exists where a plaintiff can show: (1) injury in fact, (2) causation, and (3) redressability of that injury. *Steel Company v. Citizens for a Better Env't*, 523 U.S. 83, 103 (1998).

---

[3] Plaintiffs also bring this claim against Defendant Montoya.
[4] Defendants summarily assert that Plaintiff has failed to state a claim with regard to Count X. Because Defendants' entire argument is devoted to the issue of standing, however, the Court will address only that issue.

Defendants first contend that Plaintiffs have not demonstrated that K.S. has suffered a "concrete and particularized injur[y]" that would satisfy this prong of the standing test. *Doc. 19* at 11; *see Lujan* 504 U.S. at 560. Defendants, however, do not explain why they believe Plaintiff K.S.'s alleged injuries are not concrete and particularized. Of course, each element of Article III standing "must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation" and therefore, "[a]t the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice." *Id.* at 561. Here, the Court agrees with Plaintiffs' assertion that they have pled that Plaintiff K.S. suffered actual injury from Defendant Gregor's conduct and Defendant Sewing's inaction that permitted that conduct to take place. FAC ¶¶ 133, 139, 153, 155, 158, 175, 178-187, 191-2.

Defendants also argue that Plaintiffs have not demonstrated that K.S.'s injury is not "fairly traceable" to Defendant Sewing's failure to report Defendant Gregor because her injuries are separated from Defendant Sewing's conduct by three years. *Doc. 19* at 11; *Lujan*, 504 U.S. at 560. It is true that where the injury alleged is indirect, "it may [be, for plaintiff] substantially more difficult ... to establish that, in fact, the asserted injury was the consequence of the defendants' actions." *Habecker v. Town of Estes Park, Colo.*, 518 F.3d 1217, 1225 (10th Cir. 2008) (quotation omitted). However, at this stage of the proceedings, all Plaintiffs must do is establish through their pleadings that the injury is fairly traceable to Defendant Sewing. This they have done by alleging that her failure to report Defendant Gregor to authorities in 2004 directly led to his access to K.S. (and therefore, her injury) in 2007. FAC ¶¶ 238-248.

Finally, Defendants appear to concede that if Plaintiffs have demonstrated the first two prongs of standing, that the injury would be redressable by this Court. *Doc. 19* at 11 ("the fact

that Plaintiff can possibly satisfy one prong, does not confer standing.") The Court therefore finds that Plaintiffs have demonstrated Article III standing.

## IV. CONCLUSION

For the forgoing reasons, the Court finds that Plaintiffs have failed to plead a substantive due process claim under the danger-creation theory against Defendants SFPS and Sewing. The Court further finds that Defendant Sewing is entitled to qualified immunity because no federal law that required her to report Defendant Gregor's conduct was established in 2004-5. Finally, the Court finds that Plaintiffs demonstrated they have standing to bring a claim of negligence per se against Defendant Sewing under the New Mexico Abuse and Neglect Act.

Therefore, Plaintiffs' Section 1983 claims against Defendants SFPS and Sewing are dismissed WITH PREJUDICE. As no cause of action remains against Defendant SFPS, it is hereby dismissed from this action. Defendant Sewing's Motion to Dismiss Count X is DENIED.

**IT IS SO ORDERED.**

/s/ Steven C. Yarbrough
STEVEN C. YARBROUGH
UNITED STATES MAGISTRATE JUDGE