# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

K. S.
*by and through her parents and*
*next friend*
T.S.
*next friend*
A.R.

      Plaintiffs,

v.                                   Case No. 14-cv-385 SCY/KBM

SANTA FE PUBLIC SCHOOLS *et al.*

      Defendants.

## ORDER

      THIS MATTER is before the Court on Defendant Vickie L. Sewing's Motion to Dismiss Count X of Plaintiffs' Complaint, Plaintiffs' Motion for Leave to Amend, Defendant Montoya's Second Motion to Dismiss Count X, and Defendant Gregor's Motion to Dismiss. *Docs. 64, 83, 117, 122.*[1] Having reviewed the Motions and being fully advised, the Court holds that Defendant Sewing's Motion to Dismiss is **GRANTED**, Plaintiffs' Motion to Amend is **GRANTED IN PART AND DENIED IN PART**, Defendant Montoya's Second Motion to Dismiss is **DENIED**, and Defendant Gregor's Motion to Dismiss is **GRANTED**.

## I.    BACKGROUND

      Plaintiffs allege the following in their Complaint: Plaintiff K.S. was, during the 2007-8 school year, a fourth-grade student at Fairview Elementary School in Defendant Gary F. Gregor's class. *Doc. 7,* First Amended Complaint (FAC) ¶¶ 7, 72, 133, 174. Throughout the school year, Defendant Gregor repeatedly molested K.S. and other female students. *Id.* ¶¶ 133, 139, 153, 155, 158, 175, 178-187, 191-2. Defendant Gregor has a long history of sexually

---

[1] Because the Court will allow Plaintiffs to amend their Complaint to allow a new Count X cause of action against Defendant Montoya, her first Motion to Dismiss (*doc. 118*) addressing the prior Count X, is moot.

molesting his female students, of which Defendant Montoya, the principal at Fairview during the relevant time period, and Defendants Santa Fe Public School District (SFPS) and Espanola Public School District (EPSD) were, or should have been, aware. *Id.* ¶¶ 3, 5, 6, 34, 44, 50-53, 57-72, 214.

Defendant Gregor was first licensed to teach in Utah in 1984, where he taught fourth, fifth, and sixth-grade students, until 1996. *Id.* ¶¶11, 12, 28. In January and October 1994, he was accused of sexual misconduct with several of his female students. *Id.* ¶¶ 12-25. Defendant Gregor was charged in January 1995 with two felony counts of aggravated sexual abuse of a child and one misdemeanor count of lewdness involving a child. *Id.* ¶ 26. The charges were ultimately dismissed, but he was reprimanded by the Utah Professional Practices Advisory Commission. *Id.* ¶¶ 27-28.

After a brief stint teaching on a reservation in Montana, from which he was apparently terminated for improperly engaging in unspecified after school activities with students, he applied for a job with Defendant SFPS, for which he was hired either in 1998 or 2000. Defendant Vickie Sewing hired him as a fourth grade teacher at Agua Fria Elementary School in August 2001. *Id.* ¶¶ 38-39. On January 27, 2004, Defendant Gregor took his class on a field trip to the Museum of International Folk Art. *Id.* ¶¶ 43-44. Docents working at the museum observed Defendant Gregor engaging in "inappropriate" behavior with some of his female students. *Id.* Subsequent interviews of Defendant Gregor's students by both Ms. Sewing and SFPS human resources staff member indicated that Defendant Gregor had engaged in a pattern of inappropriate behavior with his female students. *Id.* 47-48. On February 26, 2004, Defendant

SFPS sent a written report to the New Mexico Public Education Department stating that their investigation led to the finding that Defendant Gregor engaged in inappropriate physical contact with his female students. *Id.* ¶ 60.

On April 13 and 27, 2004, Helen Nakdimen of the Santa Fe Rape Crisis center conducted "Project Aware" presentations with Defendant Gregor's students, the point of which was to "help students understand good touch/bad touch, and about boundaries and their bodies." *Id.* ¶¶ 56-57. During these presentations, Defendant Gregor's students relayed numerous reports of inappropriate conduct on the part of Defendant Gregor, which Ms. Nakdimen disclosed to Defendant Sewing on May 6, 2004. *Id.* ¶¶ 57. Defendant SFPS ultimately decided to discharge Defendant Gregor. *Id.* ¶ 51. As an apparent result of Ms. Nakdimen's report, Defendant Gregor declined to participate in a discharge hearing. *Id.* ¶¶ 63, 66. In an agreement signed June 15, 2004, Defendant Gregor agreed to resign, not apply for any other position with SFPS, and release Defendant SFPS from any civil liability, in exchange for a neutral reference. *Id.* ¶¶ 64-66. On May 13, 2005, the New Mexico Department of Education issued a formal written reprimand that it permanently attached to his New Mexico teaching licensure file. This reprimand documented an investigation by the Educators Ethics Bureau that found Defendant Gregor had engaged in inappropriate sexual contact with his female students. *Id.* ¶ 68-70. Further, information about Defendant Gregor's reprimand was posted on the National Association of State Directors of Teacher Education and Certification (NASDTEC) Clearinghouse. *Id.* ¶ 71.

Defendant EPSD hired him in January 2005, where he continued to molest students, including Plaintiff K.S.. ¶¶ 72, 133, 139, 153, 155, 158, 175, 178-187, 191-2. K.S.'s parents

reported Defendant Gregor's conduct to the Espanola Police Department on April 14, 2009. *Id.*

¶¶ 205-206. After interviewing K.S. on May 12, 2009, Detective Bryan Martinez reported her

allegations to Superintendent Cockerham and Assistant Superintendent Valdez, employees of

Defendant EPSD. *Id.* ¶ 206. On May 15, 2009, EPSD placed Defendant Gregor on

administrative leave. *Id.* ¶ 207. In May 2010, Defendant EPSD began to investigate Defendant

Gregor. *Id.* ¶ 213. Defendant Gregor applied for teaching licensure renewal on May 27, 2010.

Although he received recommendations for renewal from Defendant Montoya and Defendant

EPSD, his request for renewal was denied. *Id.* ¶¶ 208-210, 218. Defendant Gregor currently is

not licensed to teach in New Mexico. *Id.* ¶ 218.

On June 5, 2014, Defendant Sewing and former Defendant SFPS moved to dismiss all

claims against them. *Doc. 19*. The Court dismissed Plaintiffs' federal claims against Defendant

Sewing and former Defendant SFPS on October 31, 2014, but did not dismiss the remaining state

law claim for negligence per se against Defendant Sewing. *Doc. 46*. Defendant Sewing now

moves to dismiss this negligence claim, identified as Count X in the FAC. *Doc. 7* ¶¶ 303-306. In

response, Plaintiffs seek to amend their complaint in a variety of ways, including withdrawing

their negligence per se claim in favor of a negligent premises operation claim against Defendants

Sewing, Montoya, and former Defendant SFPS, as well as adding respondeat superior claims

against Defendant EPSD for Defendant Gregor's alleged torts of battery, criminal child abuse,

and intentional infliction of emotional distress. *Doc. 83 at 2-4*. In response to the proposed

amendment, Defendant Montoya has filed two motions to dismiss (*docs. 118, 122*) in which she

argues that the amendments are untimely, prejudicial, and barred by New Mexico's statute of

4

limitation as well as notice provisions of the New Mexico Tort Claims Act. Defendant Gregor has also filed a motion to dismiss Plaintiffs' New Mexico Tort Claims Act cause of action against him. *Doc. 117*. The Court finds that Plaintiffs' proposed amendments regarding Sewing, SFPS, and EPSD are futile and will not be permitted. Plaintiffs will be permitted to amend the complaint to add a premises liability claim against Defendant Montoya. Plaintiffs' New Mexico Tort Claims Act causes of action against Defendant Gregor will be dismissed.

## II.    TIMELINESS OF PLAINTIFFS' MOTION TO AMEND

In their response to Defendant Sewing's Motion to Dismiss, Plaintiffs request leave to amend the Complaint. The standard for granting leave to amend varies depending on the timing of the request. The more lenient Rule 15(a)(2) standard applies if a party moves to amend prior to the amendment deadline set by the Court's scheduling order. A party seeking leave to amend the pleadings after the amendment deadline set in the Court's scheduling order must both demonstrate good cause to amend the scheduling order pursuant to Federal Rule of Civil Procedure 16(b)(4) and satisfy the requirements for amendment under Federal Rule of Civil Procedure 15(a). *See, e.g., Gorsuch Ltd., B.C. v. Wells Fargo Nat. Bank Ass'n*, 771 F.3d 1230, 1240 (10th Cir. 2014).  Thus, the first step in deciding whether to grant a motion to amend is to determine whether Plaintiffs filed their motion before or after the amendment deadline.

In this case, the Court set no amendment deadline in the scheduling order. *See doc. 50.* This is apparently because the parties stated in the Joint Status Report that they did not anticipate any further amendments. *Doc. 26* at 2, *doc. 51.* In the absence of an amendment deadline,

Plaintiffs' motion to amend does not request the Court to modify a Rule 16 scheduling order.[2] As a result, the Court will consider Plaintiffs' motion to amend under the more lenient Rule 15(a) standard.

Under this Rule, the "decision to grant leave to amend a complaint . . . is within the trial court's discretion." *Pallottino v. City of Rio Rancho*, 31 F.3d 1023, 1027 (10th Cir. 1994). Leave to amend shall be freely given "when justice so requires," but need not be given where amendment would be futile. Fed. R. Civ. P. 15(a)(2); *Foman v. Davis*, 371 U.S. 178, 182 (1962). "[W]hen a cross-motion for leave to file an amended complaint is made in response to a motion to dismiss under Fed.R.Civ.P. 12(b)(6), leave to amend will be denied as futile only if the proposed new claim cannot withstand a 12(b)(6) motion to dismiss for failure to state a claim, *i.e.,* if it appears beyond doubt that the plaintiff can plead no set of facts that would entitle him to relief." *Milanese v. Rust-Oleum Corp.*, 244 F.3d 104, 110 (2d Cir. 2001); *see also, Jefferson County Sch. Dist. No. R-1 v. Moody's Investor's Serv., Inc.*, 175 F.3d 848, 859 (10th Cir. 1999) ("A proposed amendment is futile if the complaint, as amended, would be subject to dismissal.)"

A complaint is subject to dismissal under Federal Rule of Civil Procedure 12(b)(6) if the plaintiff fails to allege facts that would "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To avoid a finding of futility, therefore, the amended complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *See Iqbal*, 556

---

[2] It is true that Plaintiff's request to amend the Complaint, made on February 23, 2015 (*doc. 83*) occurred over three months after the Court issued its Scheduling Order, a time period during which an amendment deadline assigned would have typically lapsed. However, because the Court did not set any such deadline, the Court is reluctant to impose the Rule 16 "good cause" standard.

U.S. at 678 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint

fails to state a claim when it makes conclusory allegations of liability without supporting factual

content. *See Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678–79. While the court must accept

all the factual allegations in the complaint as true, it is "not bound to accept as true a legal

conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678. Because the Court

determines, as immediately set forth below, that Plaintiffs' proposed amendments with respect to

Defendants Sewing and SFPS would be futile, it need not determine whether, under Rule 15(a),

the interests of justice would permit the amendments. In section V of this Order, however, the

Court addresses the interest of justice standard as it applies to Plaintiffs' motion to amend a

claim against Defendant Montoya.

### III. PLAINTIFFS' PROPOSED PREMISES LIABILITY AMENDMENT AGAINST DEFENDANTS SEWING AND SFPS IS FUTILE

Plaintiffs seek to replace their negligence per se claim in Count X with a premises

liability claim in what would become, post-amendment, Count IX. Because this claim would be

futile, the Court denies Plaintiffs' motion to amend as it pertains to proposed Count IX and

proposed factual allegations concerning Defendants Sewing and SFPS.

In response to the New Mexico Supreme Court's rejection of common law sovereign

immunity, New Mexico enacted the Tort Claims Act (NMTCA), NMSA 1978, §§ 41-4-1 to 29,

which grants all government entities and their employees general immunity from actions in tort,

except when the immunity is waived in certain specified circumstances. *Upton*, 2006-NMSC-

040, ¶ 8; 140 N.M. 205 (2006). Among these waivers is a waiver for so-called "premises

liability" claims, defined as arising from "the negligence of public employees while acting within

the scope of their duties in the operation or maintenance of any building, public park, machinery, equipment or furnishings." NMSA 1978 § 41-4-6; *Encinias v. Whitener Law Firm*, 2013-NMSC-045 ¶ 9, 310 P.3d 611. The bases for Plaintiffs' premises liability claim against Defendants SFPS and Sewing can be broken down into two categories: (1) allegations that relate to their failure to appropriately hire, supervise and monitor Defendant Gregor (*doc. 83-2*, ¶¶ 303-11, 317) which, among other things, "foreseeably created a broader zone of risk that posed a general threat to others beyond property borders" (*id.* ¶ 314); and (2) allegations that relate to their action or inaction once they decided to terminate Defendant Gregor, specifically that Defendants failed "to report allegations of sexual misconduct against Defendant Gregor to law enforcement or the Department of Children, Youth, and Families" (*id.* ¶ 312) and failed to use reasonable care in providing him with "a neutral recommendation, which enabled him to secure employment at Fairview Elementary School" (*id.* ¶ 313).

With regard to Plaintiffs' first category of allegations, Plaintiffs must overcome the fact that none of the injuries complained of occurred on or near the premises Defendants SFPS and Sewing controlled. Instead, the injuries alleged in the complaint occurred on premises located within a different school district in a different city. Plaintiffs primarily rely on two cases to support their argument that a § 41-4-6 waiver is not limited to injuries occurring on the defendant's property. (*Doc. 125* at 11). In the first case, *Bober v. New Mexico State Fair*, 1991-NMSC-031 ¶¶ 18, 30, 111 N.M. 644, the New Mexico Supreme Court held that when the State Fair hosts a concert that it should know will create dangerous traffic issues, it can be held liable to a motorist injured on a road adjacent to the property. In the second case, *Encinias v. Whitener*

*Law Firm, P.A.*, 2013-NMSC-045 ¶¶ 1-2, 310 P.3d 611 the New Mexico Supreme Court held that a school could be held liable for an attack on a student that occurred outside of school property, on a street the school had cordoned off so that students could patronize food vendors there.

While these cases do recognize premises liability for injuries that occur outside the boundaries of the premises in question, both cases involve injuries that occurred on property immediately adjacent to the premises.  The accident in *Brober* occurred when a motorist tried to make a left hand turn out of the premises in question. 1991-NMSC-031 ¶ 2. The assault in *Encinias* occurred on a street next to the school and that the school exercised some control over by cordoning the area off so that students could patronize the food vendors there. 2013-NMSC-045 ¶¶ 1-2. Plaintiff has cited no New Mexico case, and the Court is aware of none, that extends premises liability to injuries that occurred in a different city located miles away.  This does not necessarily mean that premises liability is limited to adjacent property; the Court could envision a scenario, such as a public entity's failure to contain nuclear waste, that could lead to liability beyond immediately adjacent property.  But the farther away the premises in question is from the site where the injury occurred, the less likely that causation will exist and premises liability will attach.

More importantly, the injuries at EPS cannot be seen as emanating from the alleged negligent operation of Agua Fria Elementary School.  The unsafe condition at issue, Defendant Gregor's alleged sexual abuse, occurred at a different school, in a different city, more than three years later.  Thus, it is unlike the situation in *Castillo v. County of Santa Fe* where a loose

roaming dog bit a child on the premises being negligently maintained; unlike *Leithead v. City of Santa Fe* where a child nearly drowned in the very pool that was being negligently operated; unlike *Callaway v. New Mexico Department of Corrections* where a prisoner was assaulted within the prison that was being negligently operated; unlike *Upton* where a student's injuries occurred on the premises being negligently operated; and unlike any other case in which liability has been found under § 41-4-6. 1988-NMSC-037 ¶ 2, 107 N.M. 204; 1997-NMCA-041 ¶¶ 2-3, 123 N.M. 353; 1994-NMCA-049 ¶ 4, 117 N.M. 637; 2006-NMSC-040 ¶¶ 2-5, 140 N.M. 205.

To the extent Defendants Sewing and SFPS failed to adequately supervise and monitor Defendant Gregor, the endangered public consisted of students at Agua Fria Elementary School, not Fairview Elementary School. Indeed, keeping Defendant Gregor at Agua Fria Elementary School actually kept him away from students at Fairview Elementary School. Not until Defendant Sewing and SFPS terminated Defendant Gregor did Defendant Gregor become available to work at Defendant EPSD. And Plaintiffs do not claim, and could not credibly claim, that Defendants Sewing and SFPS are liable to them because they terminated Defendant Gregor.[3] Plaintiffs' first category of allegations, that relate to the hiring, supervising, and monitoring of Defendant Gregor *in connection with his employment at Agua Fria Elementary School*, cannot serve as a basis to hold Defendants Sewing and SFPS liable for conduct Defendant Gregor committed on different premises, in a different school district, in a different city, with considerable temporal separation.

---

[3] The Complaint alleged that Defendants Sewing and SFPS decided to fire Defendant Gregor, but then negotiated his resignation. *Doc. 7* ¶ 66. Whether Defendant Gregor was fired or forced to resign, however, Defendants Sewing and SFPS terminated his employment.

Plaintiffs' second set of allegations, relating to the neutral reference and failure to report Defendant Gregor to law enforcement and CYFD, do attempt to draw a connection between what Defendants Sewing and SFPS did or did not do, and what Defendant Gregor allegedly did at Fairview Elementary School. The problem for Plaintiffs, however, is that these allegations have nothing to do with the operation of the premises over which Defendants Sewing and SFPS had control and responsibility: Agua Fria Elementary. Plaintiffs' argument is that Defendants Sewing and SFPS should not have given Defendant Gregor a neutral reference because they should have known that this could allow him to obtain a job at another elementary school where he might molest other children. Plaintiffs assert that Defendant Sewing herself agrees that it is unethical to give a teacher terminated in connection with molestation allegations a neutral reference.[4] *Doc. 83* at 5-6. But whether something is socially unconscionable is a different question than whether something is legally actionable. In this case, the neutral reference is only legally actionable if a waiver exists under the NMTCA and, because agreeing to give Defendant Gregor a neutral reference upon his departure from the school has nothing to do with how Defendants Sewing and SFPS operated Agua Fria Elementary, the NMTCA does not provide for a cause of action. *See Archibeque v. Moya*, 1993-NMSC-079 ¶¶ 6-8 (holding that prison employee who negligently misclassified a prisoner could not be held liable for ensuing harm to prisoner because employee performed administrative function and did not operate or maintain the prison's physical premises.). *Id* ¶¶ 8.

---

[4] According to Plaintiff, Defendant Sewing testified in her deposition that she opposed giving Defendant Gregor a neutral reference. *Doc. 83* at 5.

That Plaintiffs' cause of action must fit within a NMTCA waiver distinguishes it from cases such as *Herrera v. Quality Pontiac*. 2003-NMSC-018, 134 N.M 43, 73 P.3d 181. In *Herrera,* the New Mexico Supreme Court addressed whether the defendants, who had left the keys in the ignition of a vehicle, *owed a common law duty* to the plaintiffs who had been injured when the car was stolen and the plaintiffs were involved in an accident with the thief. *Id.* In deciding whether public policy supports the existence of a duty, the court was not limited by the NMTCA. Unlike in *Herrera*, the duty at issue in this case is created by statute and the New Mexico Supreme Court has recently articulated the policy behind it:

> Just as businesses must exercise reasonable care to discover and prevent dangerous conditions caused by people *on their premises*, so must the government. The question is not about general supervision; the question under a premises liability theory of recovery involving third-party conduct is whether the government exercised reasonable care to discover and prevent dangerous conditions caused by people *on its premises*. . . it can be liable for the violent acts of a third party if the government reasonably should have discovered and could have prevented the incident. Like businesses, the government's duty to protect visitors arises from a foreseeable risk that a third person *will injure a visitor* and, as the risk of danger increases, the amount of care to be exercised ... also increases.

*Encinias*, 2013-NMSC-045 ¶ 17 (citations and quotations omitted) (emphasis added). Thus, while the waiver of immunity encompasses a broad range of conduct (see *id.* ¶¶ 10-11), the negligence at issue must still be connected to the premises at issue. *Id.* ¶ 10; *see also Upton* 2006–NMSC–040 ¶ 10. In other words, the person against whom the negligence is alleged must have some responsibility to operate or maintain the property on which the alleged injury occurred.

Plaintiffs' request for leave to add this claim, as well as any factual allegations related to this claim, is denied as futile. Because no claims remain against Defendant Sewing, she is dismissed from this action. Former Defendant SFPS remains dismissed from this action.

## IV.     DEFENDANT SEWING'S MOTION TO DISMISS COUNT X IS GRANTED

Plaintiffs' original Count X was a negligence *per se* claim premised on Defendants Sewing and Montoya's failure to report Defendant Gregor's abuse of K.S. and other students as the New Mexico Abuse and Neglect Act requires.  As the Court explained in its order regarding Plaintiffs' federal claims against Defendant Sewing, however, the relevant section of the Act, § 32A-4-3(A), requires school officials (among others) to report suspected child abuse by a *child's parent*, *custodian*, or *guardian*, to law enforcement. *Doc. 46* at 5. But it does not contemplate a duty to report abuse by school officials. *Id.*  Rather than responding to Defendants' motion to dismiss the negligence per se claim, Plaintiffs moved to amend their complaint by replacing the negligence per se claim with a premises liability claim. *Doc. 83* at 2 ("Plaintiff now clarifies that she does not press suit under § 41-4-12. Rather, Plaintiff is empowered to bring a claim for negligence against Sewing under the [NM]TCA's § 41-4-6.").  Plaintiffs, therefore, have provided no basis for denying Defendants' motion to dismiss the negligence *per se* claim, and the Court finds that Plaintiffs' negligence per se claim fails as a matter of law.  Defendants Sewing's motion to dismiss Count X of the complaint is granted.

## V.     THE COURT WILL ALLOW PLAINTIFF TO AMEND THE COMPLAINT TO ADD A PREMISES LIABILITY CLAIM AGAINST DEFENDANT MONTOYA

Plaintiffs seek to add Defendant Montoya to their existing count against EPSD for negligent operation of Fairview Elementary School.  Specifically, they allege that, as principal of

Fairview, she had a duty to operate the premises at issue in a safe manner. *Doc. 83* Ex. 2 ¶ 269. They further allege that she breached her duty in failing to prevent Defendant Gregor's assaults, even though she was aware of his pattern of tortious conduct. *See, e.g., id.* ¶¶ 82-89, 93-95, 109-113, 115-116; *Encinias*, 2013-NMSC-045 ¶ 13 ("a school's failure to address a pattern of . . . violence . . . might create an unsafe condition on the premises.").

Plaintiffs have alleged a sufficient factual predicate to sustain this theory of liability under New Mexico law. And unsurprisingly, Defendant Montoya contests this amendment not on the basis of futility, but because of prejudice and untimeliness in seeking amendment. She contends that the claim does not arise from any new facts but would require significant new effort on her part to defend, and has been raised relatively late in the litigation. *Doc. 112* at 3. Further, she alleges that even if this claim could be permitted, it is barred by the statute of limitations andthe notice provisions of the NMTCA. *See generally doc. 122*.

Under Rule 15(a), leave to amend must be freely given where "justice so requires." And the Court does not believe that permitting the proposed amendment would lead to unjust results. With regard to prejudice and untimeliness, it is true that Plaintiffs raised this claim against Defendant Montoya in February of this year – but they had raised the same claim against Defendant EPSD at the beginning of the litigation. *See doc. 7* at 41-42. Therefore, discovery about the supervision and maintenance of Fairview Elementary School would necessarily be a subject covered in discovery. Plaintiffs' § 1983 claim against Defendant Montoya also addresses many of the same factual issues of supervision and control relevant to the new premises liability claim. *Id.* at 37-39. Further, as of February 23, 2015, well prior to the close of discovery,

Defendant Montoya was at least on notice that this claim could be raised, and therefore she would have had the opportunity to address it during discovery. And, even she had failed to do so, she is still free to move the Court to reopen discovery for the limited purpose of addressing this claim and/or to move the Court to move the trial date, as well as any other remedies (such as cost-shifting of required discovery) that Defendant Montoya wishes to address.

Defendant Montoya also asserts that Plaintiffs failed to provide proper notice to the school district within 90 days as required by NMSA 1978 § 41-4-16 and failed to file the action within two years as required by § 41-4-15. *Doc. 122* at 3-4. Plaintiffs respond that under New Mexico law, neither limitation can be imposed on minors because New Mexico courts have held that these provisions, if strictly applied, would violate their due process rights. *See generally doc. 130.* The Court agrees with Plaintiffs.

As the New Mexico Court of Appeals has explained, in considering whether the application of these provisions would intrude on the rights of minor children, "our cases do not distinguish notice and limitations provisions for due process purposes." *Jaramillo v. Bd. of Rgts. of Unv. of New Mexico Health and Sciences Ctr.*, 2001-NMCA-024 ¶ 6, 130 N.M. 256. The analysis centers on the specific facts of each case and whether a reasonable person in that child's position would be capable of meeting the notice or limitations requirements. *Rider v. Albuquerque Pub. Schs.*, 1996-NMCA-090 ¶ 9, 122 N.M. 237. K.S. was in fourth grade at the time the alleged incident occurred. *Doc. 7* ¶ 7. The Court will therefore assume she was, or was close to, ten years old, an age at which this Court has held she would be incapable of meeting the statutory requirements. *Coffey v. United States*, 2011 WL 2729068 at *9 (D.N.M. July 7, 2011)

(in discussing the application of the 90 day notice provision, stated "[t]he eldest . . . children were ten-year old twins at the time of his death. There is no question that these children could not act on their own behalf"); *see also Campos v. Murray*, 2006-NMSC-020 ¶ 11, 139 N.M. 454 (". . . an eleven-year-old, [is] . . . unable to comply with the statute of limitations requirement at such a young age.")

Of course, age is not the sole consideration, although it is the primary one. *Campos*, 2006-NMSC-020 ¶ 14. And the Court can see no other basis on which to infer that K.S. was reasonably capable of complying with the statutory limitations. Therefore, the Court will also deny Defendant Montoya's Motion to Dismiss this cause of action on the basis of NMSA 1978 §§ 41-4-15 or 41-4-16.  Plaintiffs may amend their complaint to add their proposed premises liability claim against Defendant Montoya as well as any proposed factual allegations that directly bear on this claim.

## VI.    PLAINTIFFS' TORT CLAIMS AGAINST DEFENDANT GREGOR AND PROPOSED RESPONDEAT SUPERIOR CLAIMS AGAINST DEFENDANT EPSD ARE FUTILE

Finally, Plaintiffs bring state law claims against Defendant Gregor for alleged torts of battery, intentional infliction of emotional distress, and negligence per se, and in the proposed amended complaint also against ESPD under the theory of respondeat superior. *Doc. 7* ¶¶ 290, 295, 300; *doc. 83-2* ¶¶ 290, 295, 300. Defendant Gregor moves to dismiss these claims on the basis that there is no waiver of immunity for them under the NMTCA. *See generally doc. 117.* Further, while Defendant EPSD has not argued that this amendment would be futile, the Court may still deny leave to amend if it assesses that a proposed amendment would not survive a motion to dismiss. *Ketchum v. Cruz*, 961 F.2d 916, 920 (10th Cir. 1992). The NMTCA does not

waive immunity for either Defendant Gregor or his employer with regard to these torts. Thus, the claims against Defendant Gregor are subject to dismissal and the requested amendments against EPSD are futile.

As a government employee, Defendant Gregor  is only liable for actions taken in the course of his employment to the extent the NMTCA creates a waiver.  *See Celaya v. Hall*, 135, 85 P.3d 239, 242 (2004) (the NMTCA "delimits the scope of liability for government entities and their employees by: (1) retaining immunity for torts not waived by the TCA; and (2) waiving immunity and recognizing liability, subject to certain protections, for employees acting within their scope of duty."); NMSA 1978 § 41-4-17(A).  Further, "[a] governmental entity is not immune from liability for any tort of its employee acting within the course of duties for which immunity is waived." *Silva v. New Mexico*, 106 N.M. 472, 477, 745 P.2d 380, 385 (1987).  Thus, if Plaintiffs have no valid cause of action against Defendant Gregor, neither do they have a valid cause of action against his employer, Defendant EPSD.

With regard to battery, as this Court explained in *Gerald v. Locksley*, "[t]hat the New Mexico Legislature expressly allows assault and battery claims against law enforcement officers suggests that they are not otherwise allowed under § 41–4–4." 785 F.Supp.2d 1074, 1135 (D.N.M. 2011).  Plaintiff has not asserted any statutory basis for a waiver and the Court knows of no authority that suggests a waiver exists for this claim. Likewise, as the Court observed in *Williams v. Bd. of Regents of the Univ. of New Mexico*, 20 F.Supp.3d 1177, 1194 (D.N.M. 2014), negligence per se and intentional infliction of emotional distress are not torts for which immunity has been waived under the NMTCA.

Because no waiver exists as to the torts alleged against Defendant Gregor, these claims must be dismissed. Further, because these claims do not survive against Defendant Gregor, they cannot survive against Defendant EPSD. Therefore, Defendant Gregor's Motion to Dismiss Plaintiffs' causes of action for battery, intentional infliction of emotional distress, and negligence per se is granted. Plaintiffs' motion to amend the complaint to add to vicarious liability claims as against Defendant EPSD for these same claims, as well as proposed factual allegations that bear on those claims, is denied as futile.

**VII.    CONCLUSION**

Therefore, the Court orders the following:

1. Plaintiffs' Motion to Amend (*doc. 83*) to add a state law premises liability claim against Defendant Sewing and former Defendant SFPS is **DENIED** and no amended factual allegations regarding either Defendant are permitted and Defendant Sewing is dismissed from this action.

2. Defendant Sewing's Motion to Dismiss Count X (*doc. 64*) is **GRANTED**.

3. Defendant Montoya's First Motion to Dismiss (*doc. 118*) is denied as **MOOT**, her Second Motion to Dismiss (*doc. 122*) is **DENIED** and Plaintiffs' Motion to Amend to add a state law premises liability claim against Defendant Montoya (*doc. 83*) is **GRANTED**. The factual amendments regarding this claim are also permitted.

4. Defendant Gregor's Motion to Dismiss (*doc. 117*) is **GRANTED**.

5. Plaintiff's Motion to Amend to add respondeat superior claims against Defendant EPSD (*doc. 83*) is **DENIED**.

6. The factual allegation regarding Defendant Gregor at *doc. 83-2* ¶ 136 will also be permitted.

/s/ Steven C. Yarbrough
STEVEN C. YARBROUGH
UNITED STATES MAGISTRATE JUDGE
**Presiding by Consent**

18